UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

GUAJARDO, STEPHEN                            Chapter 13
GUAJARDO-GARCIA, ROBERTA              19-10540-t13

    Debtors,

---

ARLENE SANCHEZ,                                Adversary No.
in her capacity as Conservator of the Estate of Joel Garcia,     18-_____-t

ALICIA GARCIA, individually and
in her capacity as Trustee for the J & A Garcia Trust,

    Plaintiffs,

vs.

GUAJARDO, STEPHEN,
GARCIA-GUAJARDO, ROBERTA,
 and

TIFFANY M. CORNEJO,
 in her capacity as United States Chapter 13 Trustee.

**VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF, A DECLARATORY JUDGMENT, DAMAGES FOR SLANDER OF TITLE, POSSESSION OF REAL PROPERTY OR ALTERNATIVELY, FORECLOSURE OF DEBTORS' INTEREST IN REAL PROPERTY**

      The Plaintiffs, Arlene Sanchez in her capacity as conservator for the estate of Joel Garcia (the "Conservator") and Alicia Garcia, individually, and in her capacity as trustee of the J & A

Page | 1

Garcia Trust ("Alicia"), by and through their undersigned counsel, Sommer, Udall, Hardwick & Jones, PA, for their complaint against Debtors Roberta Garcia-Guajardo and Stephen Guajardo (collectively the "Debtors") and Tiffany Cornejo, as trustee of the Debtors' Estate, state as follows.

**Parties and Jurisdiction**

1. Creditor Alicia is a resident of Belen, New Mexico. Alicia is married to Joel Garcia ("Joel") (collectively the "Garcias").

2. The Conservator of the estate of Joel Garcia was duly appointed in Case No. D-1314-PQ-2018-00058 ("the Conservator").

3. Roberta Garcia-Guajardo and Stephen Guajardo ("Debtor Roberta", individually, and "Debtor Stephen", individually) are the natural daughter and son-in-law of Joel, and are also residents of Belen, New Mexico.

4. Tiffany Cornejo is the Chapter 13 Trustee ("the Trustee") and may be, or is an interested party.

5. This cause of action is a core proceeding under 28 U.S.C. 157.

6. This Court has jurisdiction over the parties and the subjective matter pursuant to 11 U.S.C. 1334.

7. The request for injunctive relief is brought under Rule 65 (a) and (b) of the Federal Rules of Court Procedure, made applicable by Rule 706T of the Federal Rules of Court Procedure.

8. This Court has subject matter and personal jurisdiction over the parties.

**Factual Background**

9. Alicia is 85 years old and Joel is 87. They have been married for 39 years.

10. Until late September 2018, Alicia and Joel had lived at their residence at 1905 Nancy Lopez Rd., Rio Communities, New Mexico (the "Nancy Lopez Residence").

Page | 2

11. Alicia was diagnosed with Parkinson's disease many years ago. Joel has some health problems, including a heart condition, Type 2 Diabetes and suffers from short-term memory disorder and dementia.

12. Prior to July 2018, Alicia and Joel were managing their care at home with help from friends, family, paid caregivers and Debtors.

13. Prior to late 2014 or early 2015, Debtors lived in Virginia and were largely absent and never close to Joel.

14. In 2014, while Debtors were living in Virginia, Debtors and Alicia and Joel agreed that Debtors should move to New Mexico to lend assistance to Alicia and Joel.

15. Upon information and belief, during this time, there were multiple unpaid money judgments against Debtors in Virginia as a result of 20 or more cases filed against them.

16. Upon information and belief, to mitigate their financial troubles, Debtors came to a mutual agreement with Alicia and Joel that, in return for Alicia and Joel buying Debtors a house in New Mexico, they would move to New Mexico and assist Alicia and Joel as they aged.

17. Alicia and Joel withdrew a substantial part of their savings and bought Debtors a house located at 2017 Embarcadero Ct., Belen, New Mexico (the "Embarcadero Residence") in the hopes that Debtors would assist as promised. Alicia and Joel entered into a Contract for Deed/Purchase Agreement (the "Embarcadero Contract") (similar to a Real Estate Contract ("REC")) drafted by Debtor Roberta. A copy of the Embarcadero Contract is attached hereto as **Exhibit A**, and incorporated herein by reference.

18. To purchase the house from its previous owners for the purchase price of $161,000.00, the Debtors contributed $48,000.00 for the purchase and Alicia and Joel paid the remaining balance.

19. Under the Embarcadero Contract, Debtors agreed to make a monthly mortgage payments of $1,429.30 to Alicia and Joel until January 1, 2020, at which time, the remaining unpaid principal and interest would be due in full.

20. The monthly mortgage payments are essential income for Alicia and Joel who have sparse resources and limited liquidity because of the house purchase.

21. Debtors moved to New Mexico. Debtor Roberta provided help to Joel and Alicia in preparation of meals, dispensing medications and assistance with some medical appointments, but by 2018, the help provided proved to be deficient.

22. In 2017, Joel and Alicia completed exhaustive estate planning documents such as a Durable Power of Attorney for Healthcare; Statutory Form Power of Attorney; a Right to Die and Directive to Physicians; and J&A Garcia Trust dated October 2, 2017 ("Trust"). A copy of the Trust is attached hereto as **Exhibit B**.

23. As part of their estate planning, Joel and Alicia assigned all right, title and interest in the Embarcadero Residence and Nancy Lopez Residence, by virtue of an Assignment to the Trust.

24. Following Joel and Alicia's completion of the Estate Planning Documents, which included setting up the Trust (which devised one-half of Joel and Alicia's Estate to Roberta and the other half to Alicia's side of the family), Debtor Roberta became increasingly hostile and antagonistic.

25. Debtor Roberta attempted to intimidate and control Alicia, including publicly humiliating her.

26. Debtor Roberta threatened to sue Alicia for transactions that were made 10 and 30 years ago with assets that allegedly were given away by Alicia and Joel to Alicia's sister and brother-in-law.

27. During this time, Debtor Roberta stopped bringing three meals per day to Alicia and Joel and began bringing food in timings highly unsuitable for Joel's health condition (Type 2 Diabetes), with longtime gaps between meals exceeding 12 hours. Debtor Roberta deliberately neglected assisting Joel (such as picking Joel up from the hospital when he was discharged).

28. In July 2018, Debtors defaulted on the monthly payment due from them under the Embarcadero Contract.

29. On July 10, 2018, Debtors visited Joel at his residence, and stated they were taking Joel for the day without an indication of when they would return.

30. On or about July 10, 2018, Debtors took Joel to the Valencia County Courthouse and filed a guardianship and conservatorship proceeding to have themselves appointed as his temporary guardian and conservator in No. D-1314-PQ-2018-00058 in the District Court for Valencia County, State of New Mexico ("the Conservatorship Proceeding").

31. There was no communication of such to Alicia.

32. Debtors appointed themselves as Joel's emergency guardian and conservator, even though no emergency (irreparable harm to Joel's person or finances) existed.

33. Almost immediately, using their power as temporary guardian, Petitioners began making decisions that Joel would never have approved: filing a divorce action against Joel's wife Alicia, removing Joel from his Nancy Lopez Residence, and refusing to permit Alicia to visit Joel or communicate with him.

34. Debtors failed to provide prior notice of the incapacity petition and/or divorce petition to Alicia who had been Joel's legal wife for over 38 years and was his lawful agent.

35. The Court in the Conservatorship Proceeding (the "State Court") held a hearing on August 17, 2018, and ruled that Debtors' appointments as temporary guardian and temporary conservator were suspended until further ordered by the Court.

36. The State Court stayed the divorce proceedings, and Joel was sent home with Alicia to his residence. Debtors were allowed to visit with him every day for two hours.

37. The State Court specifically directed Debtors to coordinate and communicate with Alicia regarding all health care matters concerning Joel.

38. Debtors almost immediately violated the State Court's order by failing to provide Joel's medications to Alicia and not responding to the family members' communications and being unresponsive on the issue of delivery of the medications.

39. The State Court ordered Debtors to pay the July, August, and September 2018 monthly payments due under the Embarcadero Contract which Debtors refused to pay.

40. On November 21, 2018, the State Court appointed Alicia Sanchez as Joel's permanent guardian and Arlene Sanchez as Joel's permanent conservator.

41. On December 13, 2018, the State Court entered a supplemental order (the "Supplemental Order"), appointing Arlene Sanchez as Joel's permanent conservator.

42. The Supplemental Order included, inter alia, the following:

### *Sale of Residence*

*8.     Joel and his wife Alicia own the residential real estate located at 1905 Nancy Lopez Rd, Rio Communities, Belen, NM 87002 (the "Residence"). The Residence was transferred by Joel and Alicia to the Trust. Joel and Alicia are beneficiaries of the Trust, Alicia is the sole trustee of the Trust and has the power to convey title upon the sale of the residence.*

> 9. Joel and Alicia's declining health will likely require their move to a long-term care facility and, as such, maintaining the Residence is unnecessary.
>
> 10. The Estate of Joel and Alicia also lack funds to meet necessary caregiving expenses, other living expenses and Joel's long-term care needs.
>
> 11. The proposal for the sale of the Residence is prudent and should be approved in all respects.
>
> ***IT IS FURTHER ORDER, ADJUDICATED AND DECREED*** *that the sale of the Residence is hereby approved without reservation. Alicia shall proceed with the sale of the Residence upon terms as she shall determine in consultation with the Conservator.*

43. Since the entry of the Supplemental Order, the Garcias have moved into BeeHive Homes of Albuquerque, an assisted living facility ("BeeHive") which provides the appropriate necessary care, shelter and medical needs for the Garcias.

44. To finance their stay at BeeHive, the Garcias borrowed approximately $25,000.00 from Garcia's sister and brother-in-law to pay BeeHive's monthly charges. The monthly cost of BeeHive is approximately $7,650.00 per month. The Garcias do not have the money to pay for BeeHive's expenses for March 2019 and the months thereafter.

45. The Nancy Lopez Residence is listed with a real estate broker, namely John Woods ("Woods"). The Nancy Lopez Residence is under contract, pursuant to a purchase agreement dated February 25, 2019 (the "Purchase Agreement"). Attached as **Exhibit C** is a copy of the Purchase Agreement with the names and addresses of the buyers, their broker and title company redacted[1].

46. The closing is scheduled for March 28, 2019. The net proceeds after closing costs and broker commission will be approximately $163,127.00.

47. The sale included a refrigerator, a dishwasher and window coverings.

---

[1] For the reasons stated hereafter, the Garcias and the Conservator are concerned that Debtor Roberta, given her past behavior and conduct, will contact the buyer, buyer's agent and/or title company if their identity is revealed.

Page | 7

48. The Garcias do not currently have the cash reserves to make the monthly payments due to BeeHive, and a payment of approximately $7,650.00 is past due for March 2019 expenses.

49. The Garcias desperately need to sell the Residence in order to pay BeeHive now and in the future.

50. On March 3, 2019, Woods received an email from Debtor Roberta stating the following:

> *Hi are you the person liston [sic] this property? If so I have property inside this home and I have a default judgment.. I own the fridge. dishwasher and gold curtains in the master bedroom.. I have a list of other items too.. therefore I need the name of the new owner **as I will be filing suit against you and them for my property.. Thank you and sorry your in the middle**.* (Emphasis added)

The residence is scheduled to close on or before March 28, 2019.

51. Debtor Roberta also left Woods a voicemail on March 3, 2019, stating the following:

> *Hi Mr. Woods, you just hung up on me. I am just going to let you know I am sure that you didn't disclose in any buyer's agreement or seller's agreement. Thank you. Bye.* ***that this house is in litigation and therefore I am going to go ahead and go to the realty board about this and I am going to report you and I will be knocking at the new owner's door to get my items and I am going to add you to the litigation.*** *(Emphasis added).*

52. Since the actions of Debtor Roberta threatened to derail the pending sale of the Nancy Lopez Residence, the Conservator and Alicia filed an Application for a Temporary Restraining Order on March 6, 2019.

53. On March 14, 2019 the State Court held a hearing on whether to make the restraining order permanent.

54. During the hearing, the Conservator and Alicia agreed to remove the Refrigerator and Dishwasher from the Nancy Lopez Residence. As a result, the State Court directed the parties

to cooperate to arrange for a mutually convenient time for Debtors (or their representatives) to pick up the two appliances from the street curb of the Nancy Lopez Residence.

55. Since the hearing, the Conservator and Alicia have informed Debtor Roberta, through counsel, that the refrigerator and dishwasher can be picked up and retrieved from the Nancy Lopez Residence at a mutually agreed upon time. The gold curtains were delivered to Debtors' home on March 1, 2019.

56. The Conservator and Alicia make no claim to the fridge, dishwasher and gold curtains.

57. In light of the automatic stay, the State Court continued the hearing on the preliminary injunction, and until the future hearing, kept the restraining order in place, ordering that Debtor Roberta or any person under her direction and control, is prohibited from:

> *(a) communicating, directly or indirectly, in writing, in person, or through electronic means, about the Residence, about Alicia Garcia, about Joel Garcia, about the Conservator, or about the Guardian, with any of the following persons:*
> *(i) any person who is under contract to purchase the Residence;*
> *(ii) any other person(s) who is (are) interested in purchasing the Residence;*
> *(iii) any real estate professional(s) who market(s), show(s) or otherwise advertise(s) the Residence; and*
> *(iv) any other person(s) involved in the and sale of the Residence, including any title insurance company or agent.*
> *(b) recording any document with the Valencia County Clerk's Office, wherein R. Guajardo purports to have a claim, a right, or interest in the Residence;*
> *(c) recording any document, with any Court or the Valencia County Clerk's office, which purports to state that the Residence is the subject matter of any litigation, including a notice of lis pendens;*
> *(d) entering the Residence (and its surrounding property) for any reason; and*
> *(e) posting on any social media platform or website anything about the Residence or her claims to any personal property currently located in the residence, including the refrigerator, dishwasher and gold curtains.*

58. On March 15, 2019, the title company ("Title Company"), informed the Conservator that Debtor Roberta had filed with the Valencia County Clerk's Office a Memorandum of Lis Pendens ("lis pendens"), attached hereto as **Exhibit D**.

Page | 9

59. The lis pendens incorrectly states that the Nancy Lopez Residence is the subject of the Debtor's lawsuit pending as Cause No. D-1314-CV-2018-1550 (the "lawsuit"), a copy of which is attached as **Exhibit E**.

60. The lawsuit concerns, among other claims, the property located at the Embarcadero Residence.

61. The lawsuit contains no claims of any nature that Debtors have any claim, right and title to Nancy Lopez Residence.

62. In order to insure the title for the buyers and their lender, the Title Company is requiring the release of the lis pendens in so far as it purports to affect the Nancy Lopez Residence.

63. If not released, the sale is not going to close because the Title Company will not provide the required title insurance to the buyer, or buyer's lender.

64. The lis pendens is a slander on the title of the Nancy Lopez Residence.

65. The Conservator and Alicia have requested that the Debtors execute an Amended Notice of Lis Pendens (the "proposed Amended Lis Pendens") that will satisfy the requirements of the Title Company. A copy of the proposed Amended Lis Pendens is attached hereto as **Exhibit F**.

66. The proposed Amended Lis Pendens amends the lis pendens to accurately reflect that it only applies to the Embarcadero Residence, which is the subject of the other lawsuit.

67. The Debtors refuse to execute the proposed Amended Lis Pendens.

68. At the March 14, 2019 hearing, Debtors' counsel informed the State Court that Debtor Roberta claims to have an interest in the Nancy Lopez Residence by virtue of the fact that she is a contingent beneficiary under the Trust.

69. Under the Trust, Roberta is not entitled to anything until such time as both Joel and Alicia die.

70. Until the Garcias both die, Alicia, as the sole trustee, has the power and authority to spend Trust assets for their benefit as, 'shall be necessary or advisable from time–to-time for the health, support, maintenance, and best interests of' Joel and Alicia. (*See* Trust, Art. I, ¶¶ 1, 2).

71. In addition, the Trust has a spendthrift provision which provides:

> *"To the maximum extent allowed by governing law, the interests of any beneficiary in the principal and/or income of a trust and/or of any share of any trust established by or pursuant to the Trust Instrument shall not be subject to the claims of any creditor, to the claims of any spouse for alimony or support or any other amount, or to the claims of any other third party, nor subject to any legal process whatsoever affecting said beneficiary (including, without limitation, levy, execution, garnishment, bankruptcy, and/or liens), and further, may not be voluntarily or involuntarily alienated, assigned, transferred, conveyed, leased, disposed of, sold or encumbered, pledged, or hypothecated by said beneficiary. This provision, however, shall not limit the due exercise of any power of appointment granted in this Trust Agreement. This provision is a material provision of this Trust Agreement, and the provision of spendthrift protection is a material purpose for the creation of all trusts hereunder". (See Trust, Art. 6, ¶ 6).*

72. None of the contingent beneficiaries under the Trust are entitled to any Trust assets, including Debtor Roberta, until both the Garcias die.

73. Under New Mexico's Uniform Trust Code, NMSA Section 46A-5-502(C) "[A] beneficiary may not transfer an interest in a trust in violation of a valid spendthrift provision and, except as otherwise provided in this article, a creditor or assignee of the beneficiary may not reach the interest."

74. In addition, Section 46A-5-502(B) provides that "[A] term of a trust providing that the interest of a beneficiary is held subject to a "spendthrift trust", or words of similar import, is sufficient to restrain both voluntary and involuntary transfer of the beneficiary's interest".

75. The Trust is an intervivos trust, coupled with spendthrift provisions. The Trust assets are not "property" of the debtor's "estate" and not subject to creditor's claims because of the exclusion contained in section 541(c)(2), for valid spendthrift trusts; and because the property has not passed to the Debtor Roberta, as required by Section 541(a)(5)(A).

### Count I – Immediate Injunctive Relief

76. The allegations of paragraphs 1 through 75 are incorporated herein as part of this Count I.

77. If the lis pendens is not released, the Conservator and Alicia will not be able to pay BeeHive the charges that are due for March 2019 and that are due in the future.

78. Joel and Alicia will have to find housing with family that will not have the ability to provide the twenty four (24) hour care, medication administration, monitoring, medical treatment, food, shelter and supervision that Joel requires and which is essential to his health and well-being.

79. The estate of Joel Garcia (through the Conservator) and Alicia will suffer irreparable injury if the Court does not grant an immediate restraining order that requires Debtors to execute the proposed Amended Lis Pendens so that the sale of the Nancy Lopez Residence can take place.

### Count II- Declaratory Relief

80. The allegations of paragraphs 1 through 79 are incorporated herein as part of this Count II.

81. Upon information and belief, Debtor Roberta contends she has an interest in, right to, or claim to the Nancy Lopez Residence.

82. Upon information and belief, Debtors contend Debtor Roberta has an interest, right, or claim to all property in the Trust that would constitute property of the Estate under §541(a)(1) of the Bankruptcy Code.

83. Upon information and belief, Debtor Roberta contends that contingent benefits under the Trust are property of the Estate under §541(a)(1) of the Bankruptcy Code.

84. The Conservator and Alicia dispute the contentions of Debtor Roberta and maintain that Debtor Roberta has no claim, interest, right, or title in the Nancy Lopez Residence nor the proceeds from any sale of the Nancy Lopez Residence.

85. The Conservator and Alicia dispute the contentions of Debtor Roberta and maintain that the trust is not property of the Estate under §541(a)(5)(A) of the Bankruptcy Code.

86. If the Trustee contends that the Nancy Lopez Residence and/or the Trust are part of the Estate under the Bankruptcy Code, the Conservator and Alicia dispute and deny such contentions.

87. There exists a controversy between Debtors (and possibly the Trustee).

88. Pursuant to 28 U.S.C. § 2201, the Conservator and Alicia are entitled to a declaration as follows:

> a. That the Nancy Lopez Residence is not an asset of the Estate subject to creditors under §541(a)(5)(A) and is exempt under 541(c)(2) of the Bankruptcy Code and is not subject to creditors;
>
> b. That the Trust is not an asset of the Estate subject to creditors by reason of the aforesaid sections of the Bankruptcy Code and is not subject to creditors.

### Count III - Slander of Title

89. The allegations of paragraphs 1 through 88 are incorporated herein as part of this Count III.

90. Debtor Roberta filed the lis pendens without cause while knowing that the lawsuit did not concern, affect or implicate the title to the Nancy Lopez Residence.

91. Debtor Roberta has refused to release the lis pendens.

92. Debtor Roberta's filing of the lis pendens was done without privilege or right to do so.

93. The lis pendens was and is untrue.

94. The lis pendens disparages the Trust's rights in the Nancy Lopez Residence.

95. After having been informed that the lis pendens has jeopardized the sale of the Nancy Lopez Residence, Debtors have been on notice of the harm and injury to the Trust, Alicia and the Conservatory.

96. Debtor Roberta's acts in this regard are willful and malicious.

97. The Conservator and Alicia have incurred special damages resulting from the recording of lis pendens and the Debtors refusal to release the lis pendens.

98. Debtor Stephen has ratified, condoned and approved of Debtor Roberta's conduct.

99. The Conservator and Alicia are entitled to punitive damages from Debtors.

### Count IV. Termination of the Embarcadero Contract

100. The allegations of paragraphs 1 through 99 are incorporated herein as part of this Count IV.

101. On August 30, 2018, the Debtors were sent the attached notice of default requiring that they pay within thirty (30) days the then outstanding monthly payments that were due. (*See* **Exhibit G**).

102. The Embarcadero Contract provides for the following:

> ***Remedies On Default***. *In addition to any and all other rights available according to law, if either party defaults by failing to substantially perform any material provision, term or condition of this Contract (including without limitation the failure to make a monetary payment when due) the other party may elect to cancel this Contract if the default is not cured within 30 days after providing written notice to the defaulting party. The notice shall describe with sufficient detail the nature of the default.* ***The Seller maintains the right and authority to reclaim the Property or to foreclose on the property if the default is not cured within 30 days***. *(emphasis added.)*

103. The Debtors failed to cure the default and have made no further payments, thereby breaching the Embarcadero Contract.

104. On November 19, 2018, the Debtors were sent a letter, terminating the Embarcadero Contract. (*See* **Exhibit H**).

105. The Debtors refuse to vacate the Embarcadero Residence.

106. The Embarcadero Contract being lawfully terminated, Alicia, as Trustee of the Trust is entitled to "reclaim the property", meaning she is entitled to immediate exclusive possession of the Embarcadero Residence.

107. The Debtors have forfeited any interest in the Embarcadero Residence.

108. The Trust holds title to the Embarcadero Residence.

109. The Trust is entitled to judgment, **inter alia**, requiring the Debtors to vacate the Embarcadero Residence, thereby entitling the Trust to a writ of possession.

## Count V. Alternatively, Debtors Interest in the Embarcadero Residence Should be Foreclosed

110.    The allegations of paragraphs 1 through 109 are incorporated herein as part of this Count V.

111.    Assuming the Court views the Embarcadero Contract as a real estate contract as defined and considered under New Mexico common law,[2] and the Court further finds that a forfeiture would "shock the conscience of the Court" as defined under New Mexico common law, then Trust is entitled to foreclose the Debtors interest and have it sold through foreclosure.

112.    In that event, the Debtors owe the Trust the following, exclusive of attorney's fees and costs:

        Principal balance due on 6/1/2018:        $73,778.38
        Outstanding interest from 6/1/2018 to 3/1/2019:        $3,462.56[3]

Interest is accruing at the rate of $12.73 per day after March 1, 2019.

113.    The Embarcadero contract provides for late fees of $25.00 for each late payment. From June 2019 through the date the Court enters the liquidated sums due, The Trust is entitled of late payments, which as of March 1, 2019 equals $200.00.

114.    The Embarcadero Contract also provides for reasonable attorney's fees for collection, whether a lawsuit has been filed or not, as part of the collection process. The Trust is therefore entitled to attorney's fees.

115.    The Embarcadero Contract also provides that Debtors are liable for "the early withdraw of money from their annuity", a penalty which was incurred by the Garcias when the

---

[2] See: Eiferle v. Toppino, 90 N.M. 469, 565 P.2d 340 (1977), and Hale v. Whitlock, 1979 -NMSC-028, ¶ 5, 593 P.2d 754, 92 N.M. 657 (N.M., 1979)

[3] Daily rate: $12.73 June 2, 2018 to March 1, 2019 = 272 days; 272 x 12.73 per day = $3,462.56

Page | 16

Embarcadero Residence was purchased from the prior owners. The penalty for early withdrawal of the annuity was $1,396.68.

116. The Trust is entitled to judgment in a sum equal to the unpaid principal, accrued interest, late fees, reasonable attorney's fees, and the penalty for early withdraw of the Garcia's annuity.

117. The Trust's interest in the subject property is prior and superior to the interests of the Debtors and Trustee.

WHEREFORE, the Trust requests that the Court enter Findings of Fact and Conclusions of Law and a Judgment as follows:

A. Finding and concluding that all obligations, debts and liabilities of Debtors to the Trust are secured by the Embarcadero Residence;

B. Finding and concluding that the Trust is entitled to any interest of Debtors and the Trustee;

C. Finding and concluding that Trust interest in the Embarcadero Residence is prior and superior to any interests asserted by the Debtors and Trustee;

D. Finding and concluding that all persons not a party in this case claiming any interest in the subject property after the filing of a Notice of Lis Pendens in the records of Valencia County, New Mexico, and having failed to intervene in this action prior to entry of Judgment herein shall be bound by such Judgment pursuant to § 38-1-14 NMSA 1978 and shall have no interest in the subject property or the proceeds of any Special Master's Sale of the subject property;

E. Foreclosing the Debtor's interest and ordering that the subject property be sold at a Special Master's Sale with the net proceeds of sale to be applied in reduction of the indebtedness

owed to the Trust under the Judgment entered in this case, free and clear of all right, title and interest of each and every one of the defendants and intervenors in this case;

F. Appointing a Special Master for the purpose of selling the subject property and transferring title to the purchaser at a Special Master's Sale;

G. Ordering that the Trust shall be allowed to bid the full amount awarded by the Judgment in this case, or any portion thereof, for credit at a Special Master's Sale;

H. Ordering that the redemption period shall for the time required by New Mexico law.

I. Ordering the Sheriff of Valencia County, New Mexico, to assist the purchaser at the Special Master's Sale in obtaining exclusive possession of the Embarcadero property after sale; and

J. For such other and further relief as may be appropriate.

Respectfully submitted,

SOMMER, UDALL, HARDWICK, & JONES, P.A.

By: _____
Eric Sommer, Esq.
P.O. Box 1984
Santa Fe, New Mexico
87504-1984
erics@sommerudall.com
*Attorney for Alicia I. Garcia and Arlene Sanchez in her capacity as Conservator for the Estate of Joel Garcia*

**CERTIFICATE OF SERVICE**

    In accordance with Federal Rules of Court Procedure 9036, NM LBR 9036-1(b) and Federal Rules of Court Procedure 5(b)(3), I certify that service of this document was made on March 25, 2019, the notice transmission facilities of the case management and electronic filing system of the United States Bankruptcy Court for the District of New Mexico to all entities listed on the Notice of Electronic Filing.

*/s/ Eric Sommer*
Eric Sommer

## VERIFICATION

I, Arlene Sanchez, being first duly sworn and under oath, do hereby verify that I have read the Verified Complaint for Injunctive Relief, a Declaratory Judgment, Damages for Slander of Title, Possession of Real Property, or Alternatively, Foreclosure of Debtor's Interest in Real Property and verify that the factual allegations therein are true and correct.

_____
Arlene Sanchez

STATE OF NEW MEXICO )
                    )
COUNTY OF Bernalillo )

The foregoing Verification was subscribed, sworn, to and acknowledged on this 25 day of March, 2019, by Arlene Sanchez, to me personally known.

My Commission Expires: 8-5-21

_____
Notary

OFFICIAL SEAL
VIRGINIA M SEDILLO
Notary Public
State of New Mexico
My Commission Expires 8-5-21

Page | 1