Case 19-01040-t · Doc 1-1   Filed 03/25/19   Entered 03/25/19 17:46:50 Page 1 of 72

THIS SPACE PROVIDED FOR RECORDER'S USE

WHEN RECORDED RETURN TO:

## CONTRACT FOR DEED/PURCHASE AGREEMENT

This Contract ("Contract") is effective and scheduled to close as of December 02, 2014 by and between

-- Joel M. Garcia and Alicia I. Garcia, a married couple,
hereinafter referred to as "SELLER," whether one or more, and

- Stephen D. Guajardo and Roberta L. Garcia-Guajardo, a married couple,
hereinafter referred to as "BUYER," whether one or more, on the terms and conditions and for the purposes hereinafter set forth.

**PROPERTY.** The property sold under this contract is located at 2017 Embarcadero Court, Belen, New Mexico 87002 in Valencia County County and is legally described as

Lot numbered five (5), of tract B as shown on the plat of Country Club Estates, a replat of a portion of Playa Verde, Unit 2, and subdivision of a portion of the Tome Grant, Valencia County, New Mexico, filed of record February 5, 1982, and recorded in cabinet D, Page 22, in the office of the County Clerk of Valencia County, New Mexico, and now known as Embarcadero, a replat of tract B, Country Club Estates, as such replat is filed in BK. E, PG. 173.

hereinafter referred to as "the Property."

**PURCHASE PRICE.** The agreed upon sales price for the Property is $161,000.00 with interest


**EXHIBIT**
A

from January 01, 2015, on the unpaid principal at the rate of 6% per annum. The Seller hereby requires a down payment or earnest money totaling $50,000.00 which shall be deducted from the total purchase price indicated above.

**TERMS OF PAYMENT.** Payments under this contract should be submitted to Joel M. and Alicia I. Garcia at 1905 Nancy Lopez Blvd, Belen, New Mexico 87002.

Unpaid principal after the Due Date shown below shall accrue interest at a rate of 6% annually until paid.

The unpaid principal and accrued interest shall be payable in monthly installments of $1,429.30, beginning on February 1, 2015, and continuing until January 1, 2020 (the "Due Date"), at which time the remaining unpaid principal and interest shall be due in full.

All payments on this Contract shall be applied first in payment of accrued interest, if applicable, and any remainder in payment of principal.

If any payment obligation under this Contract is not paid when due, the remaining unpaid principal balance and any accrued interest, if applicable, shall become due immediately at the option of the Seller.

THE BORROWER UNDERSTANDS THAT THE PAYMENT OF THE ABOVE INSTALLMENT PAYMENTS MAY NOT FULLY AMORTIZE THE PRINCIPAL BALANCE OF THE CONTRACT, AND THEREFORE, A BALLOON PAYMENT MAY BE DUE ON THE DUE DATE.

**LATE PAYMENT CHARGE.** The Buyer promises to pay a late charge of $25.00 for each installment that remains unpaid more than 7 day(s) after its Due Date. This late charge shall be paid as liquidated damages in lieu of actual damages, and not as a penalty.

**NON-SUFFICIENT FUNDS.** The Buyer shall be charged the maximum amount allowable under applicable law for each check that is returned to Seller for lack of sufficient funds in addition to any late payment charges allowable under this Contract.

**PREPAYMENT.** The Buyer reserves the right to prepay this Contract (in whole or in part) prior to the Due Date with no prepayment penalty.

**ENCUMBRANCES.** The Seller guarantees the Property is not currently encumbered and further agrees to take no action causing the Property to become encumbered so long as this Contract is in effect.

**MAINTENANCE AND IMPROVEMENTS.** Buyer agrees that any and all buildings, permanent fixtures and improvements currently on or subsequently added to the land or Property may not be removed, but will remain on the Property until the contract is fully performed. In the event of default by the Buyer under this Contract, any and all permanent fixtures and improvements made on the Property will remain with the Property.

**POSSESSION.** Buyer will maintain possession of the Property upon execution of this Contract.

**CONDITION OF PREMISES.** The Buyer recognizes the Property is being sold as is and the Seller is under no obligation to make any improvements or repairs during the time of this Contract.

**INSURANCE.** Buyer agrees to maintain adequate property insurance on the Property equal to the assessed value of the Property from the date of signing this agreement. The Buyer shall immediately notify the Seller of any lapse in coverage. The Buyer is responsible for maintaining insurance on any personal property or other items the Buyer places inside or on the Property.

**TAXES AND ASSESSMENTS.** Buyer agrees to pay all taxes including but not limited to federal, state, and municipal, that arise as a result of this sale, excluding income taxes.

Buyer shall pay all real estate taxes and assessments that may be levied against the Property. Buyer shall be responsible for all personal taxes or assessments that result from the Buyer's use of the Property.

**REMEDIES ON DEFAULT.** In addition to any and all other rights available according to law, if either party defaults by failing to substantially perform any material provision, term or condition of this Contract (including without limitation the failure to make a monetary payment when due), the other party may elect to cancel this Contract if the default is not cured within 30 days after providing written notice to the defaulting party. The notice shall describe with sufficient detail the nature of the default. The Seller maintains the right and authority to reclaim the Property or to foreclose on the property if the default is not cured within 30 days.

**DEED.** Upon receipt of all payments required under this Contract, the Seller will furnish the Buyer with a Warranty Deed wherein the Seller conveys all of their interest in the Property to the Buyer. The Buyer shall be responsible for cost of recording the deed.

**ABSTRACT/TITLE POLICY.** The Seller will provide the Buyer with an updated abstract evidencing clear title or other accepted title documents upon receipt of all payments under this Contract.

**NOTICES.** Any notice or communication required or permitted under this Contract shall be sufficiently given if delivered in person or by certified mail, return receipt requested, to the addresses listed above or to such other address as one party may have furnished to the other in writing. The notice shall be deemed received when delivered or signed for, or on the third day after mailing if not signed for.

**ASSIGNMENT.** Neither party may assign or transfer this Contract without prior written consent of the other party, which consent shall not be unreasonably withheld.

**ATTORNEY FEES.** If any payment obligation under this Contract is not paid when due, the Buyer promises to pay all costs of collection, including reasonable attorney fees, whether or not a lawsuit is commenced as part of the collection process.

Case 19-01040-t   Doc 1-1   Filed 03/25/19   Entered 03/25/19 17:46:50 Page 3 of 72

**ENTIRE CONTRACT/AMENDMENT.** This Contract for Deed contains the entire agreement of the parties and there are no other promises, conditions, understandings or other agreements, whether oral or written, relating to the subject matter of this Contract for Deed. This Contract for Deed may be modified or amended in writing, so long as all parties obligated under this Contract sign the agreement.

**SEVERABILITY.** If any portion of this Contract for Deed shall be held to be invalid or unenforceable for any reason, the remaining provisions shall continue to be valid and enforceable. If a court finds that any provision of this Contract for Deed is invalid or unenforceable, but that by limiting such provision it would become valid and enforceable, then such provision shall be deemed to be written, construed, and enforced as so limited.

**INDEMNITY REGARDING USE OF PREMISES.** To the extent permitted by law, Buyer agrees to indemnify, hold harmless, and defend Seller from and against any and all losses, claims, liabilities and expenses, including reasonable attorney fees, if any, which Buyer may suffer or incur in connection with Buyer's possession, use or misuse of the Property, except due to Seller's negligent acts or omissions.

**GOVERNING LAW.** This Contract for Deed shall be construed in accordance with the laws of the State of New Mexico.

**WAIVER.** The failure of either party to enforce any provisions of this Contract shall not be construed as a waiver or limitation of that party's right to subsequently enforce and compel strict compliance with every provision of this Contract for Deed.

**OTHER PROVISIONS.**
1. Will pay Joel M. & Alicia I. Garcia "early withdraw" fee associated with the withdraw of money from their annuity for purchase of 2017     Embarcadero Blvd, Belen, NM 87002.
2. Will pay Joel M. & Alicia I. Garcia any additional fees associated with closing, such as survey and title insurance.
3. Attached addendum for additional land/mineral rights.

**TAX EXEMPTION.** Buyer will be entitled to claim the property for the Federal Homestead Property Tax Exemption and any other exemption, should the property be eligible for such an exemption.

**RECORDING.** This Contract will be recorded by the Seller. The Buyer shall be responsible for the recording fees associated with recording the Contract.

Deed Drafted By:

Roberta L. Garcia-Guajardo

P. O. Box 5400
Suffolk, Virginia, 23435
757-913-0933

Case 19-01040-t Doc 1-1 Filed 03/25/19 Entered 03/25/19 17:46:50 Page 5 of 72

SELLER

DATED: _10/17/2014_                          DATED: _10-17-2014_

_Joel M. Garcia_                             _Alicia I. Garcia_
Joel M. Garcia                               Alicia I. Garcia

Joel M. Garcia and Alicia I. Garcia
1905 Nancy Lopez Blvd.
Belen, New Mexico, 87002

STATE OF NEW MEXICO, COUNTY OF VALENCIA,

This instrument was acknowledged before me on this ☐ day of OCTOBER
2014 by Joel M. Garcia and Alicia I. Garcia.

_____
Notary Public

_Universal Broker_
Title (and Rank)

My commission expires  12/11/17

OFFICIAL SEAL
LISA HALTERMAN
Notary Public
State of New Mexico
My Comm. Expires 12/11/17

Case 19-01040-t    Doc 1-1    Filed 03/25/19    Entered 03/25/19 17:46:50    Page 6 of 72

**USbank**                                            All of US serving you®

## Confidential FAX

To: R. Garcia                          From: Lisa Halteman
Date:                                  Company:
FAX: 757-216-9281                      Phone: 505-966-0400
Re:                                    FAX:
CC:                                    Email:
Pages:

☐ Urgent      ☐ For Review    ☐ Please Comment    ☐ Please Reply    ☐ Please Recycle

Additional Comments:          2

Electronic Privacy Notice. This facsimile, and any attachments, contains information that is, or may be, covered by electronic communications privacy laws, and is also confidential and proprietary in nature. If you are not the intended recipient, please be advised that you are legally prohibited from retaining, using, copying, distributing, or otherwise disclosing this information in any manner. Instead, please reply to the sender that you have received the communication in error, and then securely discard it. Thank you in advance for your cooperation.

02/2013
_ L.17-A

Case 19-01040-t   Doc 1-1   Filed 03/25/19   Entered 03/25/19 17:46:50 Page 7 of 72

**BUYER:**

DATED: 3/6/15                                    DATED: 3/06/15



Stephen D. Guajardo                              Roberta L. Garcia-Guajardo

Stephen D. & Roberta L. Garcia-Guajardo
109 Settlers Landing Rd
Suffolk, Virginia, 23435

STATE OF VIRGINIA, :COUNTY OF INDEPENDENT CITY OF SUFFOLK, :

This instrument was acknowledged before me on this 6 day of March,
2015 by Stephen D. Guajardo and Roberta L. Garcia-Guajardo.

Notary Public

Member Specialist
Title (and Rank)

My commission expires Feb 28, 2017

ASHLEY L. PORTER
Notary Public
Commonwealth of Virginia
Registration No. 7538773
My Commission Expires Feb. 28, 2017

TRUST AGREEMENT FOR THE

J & A GARCIA TRUST

DATED OCTOBER 2, 2017



EXHIBIT

B

# TABLE OF CONTENTS

Conveyance................................................................................1
Property...................................................................................1
Family.....................................................................................1
ARTICLE I................................................................................1
ADMINISTRATION DURING JOINT LIVES ...................................1
Income....................................................................................2
Principal..................................................................................2
Additions; Withdrawals ..............................................................2
Disability..................................................................................2
Determination by Physicians: In General ...................................2
Consent to Disclosure of Information ........................................3
Release for Trustee and Physician ...........................................3
ARTICLE II...............................................................................3
AMENDMENT ..........................................................................3
ARTICLE III..............................................................................4
DEALING WITH A DECEASED GRANTOR'S ESTATE ...................4
Expenses, Claims, Taxes ..........................................................4
Evidence of Amounts Due ..........................................................5
ARTICLE IV.............................................................................5
DISTRIBUTION OF PERSONAL EFFECTS; DIVISION OF TRUST .......5
Personal Effects .......................................................................5
In General; Grantor's List .........................................................5
Cars, Etc. ..............................................................................5
Unappointed Personal Effects...................................................6
Division ..................................................................................6
ARTICLE V..............................................................................6
DISPOSITION UPON THE DEATH OF THE SURVIVING GRANTOR.......6
Payment of Expenses; Distribution of Personal Effects...................6
Disposition of Trust Assets .........................................................6
Specific Distributions.................................................................6
Distribution of the Residue .........................................................6
Joel's Share............................................................................7
Administration of Trust for Roberta Guajardo's Grandchild............7
Alicia's Share...........................................................................8
Postponement of Possession .....................................................8
Perpetuities.............................................................................8
Failsafe...................................................................................9
Spendthrift Protection ...............................................................9
Disabled Beneficiary .................................................................9
In General ..............................................................................9
Distributions to Disabled Beneficiary Due to Another's Death............9

Case 19-01040-t    Doc 1-1    Filed 03/25/19    Entered 03/25/19 17:46:50    Page 10 of 72

**ARTICLE VI**......................................................................................................10

   <u>TRUSTEE</u> .......................................................................................................10

      Successor Trustee.......................................................................................10

         Joel's Successor Co-Trustee ....................................................................10

         Alicia's Successor Co-Trustee ..................................................................10

         Latest List..................................................................................................10

      Trustee's Powers and Rights In General .....................................................11

      Co-Trustee..................................................................................................11

      Delegation of Trustee's Rights and Powers.................................................11

      Co-Trustee Decisions .................................................................................11

      Financial Advisor .......................................................................................11

**ARTICLE VII**.....................................................................................................12

   <u>POWERS OF TRUSTEE</u>.................................................................................12

      Distributions...............................................................................................12

      Tax Elections .............................................................................................12

      Bond, Etc. ..................................................................................................12

      Commingling...............................................................................................13

      Principal and Income .................................................................................13

      Annuity Decisions ......................................................................................13

      Ancillary Administration .............................................................................13

      Partial or Total Resignation .......................................................................14

      Removal of Situs of Trust ...........................................................................14

      General Powers..........................................................................................14

      Restrictions on Investments........................................................................16

      Budget Income and Expenses.....................................................................16

      Trustee's Discretions .................................................................................16

      Termination of Powers ...............................................................................16

      Dealing With The Grantors' Estates............................................................17

      Withholding Distributions ...........................................................................17

      Investment Authority ..................................................................................17

      Liability for Predecessor Fiduciary .............................................................18

      Compensation ...........................................................................................18

      Trustee as Agent for Medical Purposes......................................................18

**ARTICLE VIII**....................................................................................................19

   <u>PROTECTION OF PERSONS DEALING WITH FIDUCIARIES</u> .......................19

**ARTICLE IX**......................................................................................................19

   <u>DEFINITIONS</u> ...............................................................................................19

      Gender/Plural/Trust...................................................................................19

      Fiduciaries ................................................................................................19

      Descendants/Heirs ....................................................................................20

      Code Sections ...........................................................................................20

      Name of Trust............................................................................................20

**ARTICLE X** ....................................................................................................20

   <u>**MISCELLANEOUS**</u> ....................................................................................20

     Survivorship ..............................................................................................20

     Governing Law ..........................................................................................20

     Paragraph Headings; Incorporation by Reference ...................................21

     Uniform Trust Code ..................................................................................21

     Incontestability ..........................................................................................21

     Limitation of Liability of Trustee ...............................................................21

     Accounting ................................................................................................22

**Trust Agreement for the**

**J & A GARCIA TRUST**

This Trust Agreement is effective as of the 2nd day of October, 2017, and is executed by and between Joel M. Garcia and Alicia I. Garcia, husband and wife, currently residents of Belen, Valencia County, New Mexico (hereinafter referred to as the "Grantors"), and Joel M. Garcia and Alicia I. Garcia, husband and wife, currently residents of Belen, Valencia County, New Mexico (hereinafter together, along with any duly appointed Co-Trustee(s) and/or Successor Trustee(s), referred to as the "Trustee").

    1.    **Conveyance.**  The Grantors have paid over, assigned, granted, conveyed, transferred, and/or delivered to the Trustee certain property, and the Grantors may in the future pay over, assign, grant, convey, transfer, and/or deliver to the Trustee further property (documents of title, documents of transfer, and the like which show that property is owned by the trust shall be best evidence that the trust owns such property); all property which is owned by the trust and/or received by the Trustee for the benefit of the trust, as invested and reinvested, and all rents, issues, proceeds, profits, appreciation, replacements, exchanges, substitutions, and the like derived from or related to said property (all of the foregoing property may hereinafter be referred to as the "Trust Estate"), shall be held, administered, and distributed by the Trustee as hereinafter set forth. The Trustee, in the Trustee's sole and absolute discretion, shall have the authority to refuse or accept any property any individual, other than a Grantor, attempts to convey to the Trustee.

    2.    **Property.**  The Grantors declare, avow, and affirm that, unless specifically and explicitly provided otherwise, all property now or hereafter paid over, assigned, granted, conveyed, transferred and/or delivered to the Trustee for the benefit of the trust is intended by each of them to be, and is declared to be, their community property, and it shall remain their community property, in trust and subject to the terms, conditions, and provisions of this Agreement. Therefore, said community property shall retain its character as community property during the joint lifetimes of the Grantors, unless and until the Grantors shall clearly and convincingly provide otherwise in a written and signed document.

    3.    **Family.**  Joel M. Garcia has one (1) daughter, Roberta Guajardo. Alicia I. Garcia has no children.

## ARTICLE I
## ADMINISTRATION DURING THE GRANTORS' LIFETIMES

The Trustee shall hold, manage, invest, and reinvest the Trust Estate and shall collect the income therefrom and shall dispose of the net income and principal during the lifetime of the Grantors and/or the Surviving Grantor as follows.

1.   **Income.**  The Trustee may pay to or apply for the benefit of the Grantors or the Surviving Grantor, the trust income, in quarterly installments or at more frequent intervals, or in any manner as the Grantors together or the Surviving Grantor may from time-to-time specify in writing to the Trustee.  Net income not paid or applied for the benefit of the Grantors or the Surviving Grantor may be accumulated and may, from time-to-time, and at any time, be added to principal by the Trustee, in the sole discretion of the Trustee.

2.   **Principal.**  The Trustee may pay to or apply for the benefit of the Grantors, as community property, or the Surviving Grantor, the trust principal, in the sole discretion of the Trustee, as shall be necessary or advisable from time-to-time for the health, support, maintenance, and best interests of the Grantors or the Surviving Grantor, taking into consideration, to the extent deemed advisable by the Trustee, any other income or resources of the Grantors or the Surviving Grantor known to the Trustee.

3.   **Additions; Withdrawals.**  Either Grantor (if not then disabled, as defined below) or both Grantors together (if not then disabled) may at any time, and from time-to-time, during the joint lives of the Grantors or the life of the Surviving Grantor, add property to the trust or withdraw all or any part of the principal (and/or accumulated but undistributed income) of the Trust Estate, free of trust, by delivering an instrument in writing duly signed by him or her or them to the Trustee (and, if applicable, to the other Grantor), describing the property or portion thereof desired to be withdrawn.  Upon receipt of such instrument, the Trustee shall thereupon convey and deliver to the Grantors jointly, as community property, or to the Surviving Grantor, free of trust, the property described in such instrument.  The powers set forth in this, Section 3, shall not be exercisable by a Grantor if disabled (as hereinafter defined).

4.   **Disability.**

     (a)   **Determination by Physicians: In General.**  If, in the written signed opinion of either a Grantor's attending physician or a consulting physician (specifically engaged for this purpose), that because of physical and/or mental functional impairment, said Grantor (a) is incapable of caring for the Grantor's person and understanding the Grantor's medical needs and care, and/or (b) is incapable of managing the Grantor's own financial affairs (which means that the Grantor is then unable to give prompt and intelligent attention to said financial affairs) (clauses (a) and (b) are hereinafter referred to as "Capacity Functions"), the Trustee shall, in absolute reliance on said written opinion, without any liability whatsoever therefor, from time-to-time, while said Grantor's incapacity continues, make prudent sale and investment decisions and apply all or any part of the net income or principal of the Grantor's share of the trust estate for the benefit of the Grantor, for any person who has been supported by said Grantor, or for any purpose the Trustee deems to be in the Grantor's best interest, in such amount or amounts and in such manner as the Trustee may determine without regard to other financial resources of the Grantor or any person supported by the Grantor.  Provided, however, in any single year any non-Grantor Trustee may not make distributions to himself or herself in excess of the annual gift tax exclusion

TRUST AGREEMENT FOR THE J & A GARCIA TRUST - PAGE 2

amount, unless as payment for services as Trustee, or for the Trustee/Beneficiary's health, support, maintenance, or education. The Trustee shall be able to rely absolutely on said physician's written opinion until the Trustee shall have received the written signed opinion from both said Grantor's attending physician and a consulting physician (specifically engaged for this purpose) that the Grantor has regained the Grantor's Capacity Functions, in which event, unless otherwise agreed in writing by the Grantor, the Grantor shall thereafter resume the Grantor's (Co-)Trustee position.

(b) **Consent to Disclosure of Information.** As further described in Article VII, Section 20, below, the Grantors waive any physician-patient privacy, or other privilege which otherwise would protect the Grantors against the disclosure of confidential information, and authorize the release of medical information to the extent reasonably necessary for purposes of determining whether or not a Grantor has Capacity Functions.

(c) **Release for Trustee and Physician.** No physician or health care provider shall have any liability for any (i) decision made, (ii) action taken, or (iii) information released by the physician or health care provider, with respect to the Grantors, if said physician or health care provider acted in good faith in reliance on the terms of this Trust Agreement. Further, said physician or health care provider shall be entitled to be held harmless and be indemnified by the Trust against any claim, cost, or expense (including reasonable professionals' fees) ("claims"), which claims may be made against the physician or health care provider for any (i) decision made, (ii) action taken, or (iii) information released by the physician or health care provider, if said physician or health care provider acted in good faith in reliance on the terms of this Trust Agreement. In addition, a Trustee who relies in good faith on a determination of incapacity (i.e., a determination that a Grantor does (not) have Capacity Functions) shall not be liable for acts or omissions resulting from that determination.

## ARTICLE II
## AMENDMENT

Either Grantor may, during the joint lives of both Grantors, by signed instrument delivered to the Trustee, either revoke this Agreement or amend this Agreement as it pertains to his or her share of the community property, and his or her separate property, if any, in its entirety, or any provision therein. After the death of the Predeceased Grantor, the Surviving Grantor may revoke or amend the Agreement as it pertains to all of the assets in the trust; provided, however, that, with respect to any amendment, the duties or responsibilities of the Trustee shall not be enlarged without the consent of the Trustee nor without satisfactory adjustment of the compensation of the Trustee, if any. The powers set forth in this, Article II, shall not be exercisable by a Grantor if disabled.

**Notwithstanding the foregoing, the Grantors agree that neither Grantor shall amend or revoke this Trust Agreement without the consent of the individuals then-named as Joel's Successor Co-Trustee (defined below) and Alicia's Successor Co-Trustee (defined below), except that either Grantor, if he or she is not incapacitated, shall have the right to amend the Trust Agreement,**

TRUST AGREEMENT FOR THE J & A GARCIA TRUST - PAGE 3

without the consent of any other person, as it relates to the designation of that Grantor's successor Co-Trustee position and as it relates to the disposition of that Grantor's share of the trust assets at the Surviving Grantor's death.

## ARTICLE III
## DEALING WITH A DECEASED GRANTOR'S ESTATE

1.      **Expenses, Claims, Taxes.**  Upon the death of each Grantor, if that Grantor has no probate estate, or to the extent that the cash and readily marketable assets in the principal of the residue of that Grantor's probate estate are insufficient, the Trustee shall make the following payments.

The Trustee shall pay the expenses of each Grantor's last illness and funeral, costs of administration including ancillary, costs of safeguarding and delivering devises and distributions, claims (including taxes) allowable against the Grantor's estate (excluding unmatured debts secured by real property or life insurance), and pre-residuary devises under the Grantor's Will if the Will contains a residuary devise to this trust. The Trustee shall also pay the estate and inheritance taxes assessed by reason of the death of each Grantor, except that the amount, if any, by which the estate and inheritance taxes shall be increased as a result of the inclusion of property in which the Grantor may have a qualifying income interest for life or over which the Grantor may have a power of appointment shall, unless otherwise specified in this Agreement, be paid by the person holding or receiving that property. Interest and penalties concerning any tax shall be paid and charged in the same manner as the tax. The Trustee may make payment directly or to the Personal Representative of the Grantor's estate, as the Trustee deems advisable.

Notwithstanding any other provision in this Trust Agreement, the first source of funds to pay or provide for estate taxes should be assets other than any qualified retirement plan benefits or IRAs (hereinafter, for convenience, qualified retirement accounts may collectively be referred to as "IRAs" and/or "Retirement Benefits") of the Grantors. In the event that insufficient non-Retirement Benefits exist to pay estate taxes, then the beneficiaries entitled to receive such Retirement Benefits shall have the opportunity to pay the estate taxes due from their private funds in lieu of using Retirement Benefits of the Grantors.

Except to the extent otherwise required by law, assets or funds otherwise excludable from the Grantor's gross estate for federal estate tax purposes shall not be used to make the forgoing payments. The selection of assets by the Trustee to be sold for that purpose or to satisfy any pecuniary gifts, and the tax effects thereof, shall not be subject to question by any beneficiary.

The Trustee shall make such elections and allocations under the tax laws as deemed advisable by the Trustee, without regard to the relative interests of the beneficiaries and without liability to any person. No adjustments shall be made between principal and income or in the relative interest of the beneficiaries to compensate for the

effect of elections or allocations under the tax laws made by the Personal Representative of a deceased Grantor's estate or by the Trustee.

The balance of the Trust Estate which remains after the foregoing payments have been made or provided for shall be held and disposed of as hereinafter provided.

2. **Evidence of Amounts Due.** Written statements by the Personal Representative of such sums due and payable by the estate shall be sufficient evidence of their amount and propriety for the protection of the Trustee, and the Trustee shall be under no duty to see to the application of any such payments.

ARTICLE IV
**DISTRIBUTION OF PERSONAL EFFECTS; DIVISION OF TRUST**

1. **Personal Effects.**

(a) **In General; Grantor's List.** With respect to a deceased Grantor's personal effects, the Trustee shall give full effect to any provisions in that Grantor's last Will relating to personal effects and/or in any List of Personal Effects Disposition signed and dated by a Grantor ("Personal Effects List") disposing of part or all of that Grantor's personal effects. The latest dated documents signed by a Grantor, which relates to the distribution of that Grantor's personal effects shall govern said distributions. Provided, however, unless clearly provided otherwise by the deceased Grantor in said deceased Grantor's Will and/or Personal Effects List, the Surviving Grantor will receive all of the Predeceased Grantor's unappointed personal effects, which shall remain in the trust unless specifically removed therefrom by the Surviving Grantor.

(b) **Cars, Etc.** The Grantors hereby direct that after the Surviving Grantor's death, the Trustee shall distribute all cars, recreational vehicles, motorcycles, boats, and other vehicles with documents of title (herein, for convenience, individually, a "Car," or collectively "Cars"), as may directed by either Grantor on either Grantor's List of Personal Effects Disposition. Provided, however, during the Surviving Grantor's lifetime, the Surviving Grantor shall have the sole and absolute discretion to keep and maintain, sell, or gift any one or more of said Car(s), regardless of whether or not said Car(s), and a beneficiary/recipient of any said Car(s), has been previously listed on either Grantor's List of Personal Effects Disposition. Provided, further, if the Surviving Grantor has sold, gifted, or otherwise transferred a Car to another person or entity, the Trustee, as of the Surviving Grantor's death, shall have the sole and absolute discretion to determine (1) if a successor Car owned by the Surviving Grantor and/or this Trust at the Surviving Grantor's date of death, shall be deemed a "replacement" of a Car which was originally designated on either Grantor's List of Personal Effects Disposition (and which said replacement Car will, therefore, be distributed to a beneficiary listed on the List of Personal Effects Disposition), or (2) if there is no replacement Car, and consequently a designation on either Grantor's List of Personal Effects Disposition shall be deemed to have lapsed, been divested, and be of no further effect. The Trustee shall have the sole and absolute discretion with respect to the interpretation and administration of the terms of this Article IV, Section 1(b).

TRUST AGREEMENT FOR THE J & A GARCIA TRUST - PAGE 5

(c) **Unappointed Personal Effects.** After the death of the Surviving Grantor, the Trustee shall distribute all of the unappointed (unlisted) personal effects in accordance with Article V, Section 2, below.

2. **Administration After the Predeceased Grantor's Death.** Upon the death of the Predeceased Grantor, all of the assets in the trust (including the Predeceased Grantor's sole and separate property and/or share of any community property) shall become the sole and separate property of the Surviving Grantor, and the Trustee shall continue to hold and administer the Trust Estate (or the remainder thereof after the distributions provided in Section 1, above) (which shall include any property which may be added to the trust from the Predeceased Grantor's estate) for the benefit of the Surviving Grantor as provided for in the foregoing Articles I-IV.

### ARTICLE V
### DISPOSITION UPON THE DEATH OF THE SURVIVING GRANTOR

1. **Payment of Expenses; Distribution of Personal Effects.** Upon the death of the Surviving Grantor, the Trustee shall provide for the Surviving Grantor's last expenses as set forth in Article III, above, and shall distribute the Surviving Grantor's personal effects as provided for in Article IV, above. After complying with those provisions, the Trustee shall administer the remaining trust assets (the "Remaining Trust Estate") pursuant to this Article V.

2. **Disposition of Trust Assets.** Upon the death of the Surviving Grantor, the remaining trust assets shall be distributed as follows.

(a) **Specific Distributions.** The Trustee shall first distribute ten thousand dollars ($10,000) to each of Roberta Guajardo and Vanessa Tapia for their service as successor Co-Trustees of the Trust. Provided, however, if either Roberta Guajardo or Vanessa Tapia is unable to serve as a Co-Trustee at the death of the Surviving Grantor, then the distribution to her shall lapse and the successor Co-Trustee acting in her stead shall receive the $10,000 distribution described in this Article V, Section 2(a).

(b) **Distribution of the Residue.** After making the distributions required by Article V, Section 2(a), above, the remaining trust assets (the "Residue"), including any amounts added thereto from the Surviving Grantor's estate, shall divided into two equal shares: Joel's Share and Alicia's Share. Once divided, Joel's Share shall be administered individually by Joel's Successor Co-Trustee and Alicia's Share shall be administered individually by Alicia's Successor Co-Trustee. If the Trust is still owed amounts from Roberta and Stephen Guajardo pursuant to the real estate contract for 2017 Embarcadero Court, Belen, New Mexico, the Trustee shall allocate, to the furthest extent possible, the Trust's right to repayment under that real estate contract to Joel's Share (provided, however, that the value of Joel's Share shall still not exceed fifty percent (50%) of all of the value of all of the trust assets). If, as a result of the value of the trust assets at the Surviving Grantor's date of death, any portion of Roberta and

TRUST AGREEMENT FOR THE J & A GARCIA TRUST – PAGE 6

Case 19-01040-t    Doc 1-1    Filed 03/25/19    Entered 03/25/19 17:46:50    Page 18 of 72

Stephen Guajardo's real estate contract becomes part of Alicia's Share, the amount to be paid to Alicia's Share by Stephen and Roberta Guajardo shall be payable in accordance with the terms of the real estate contract, with the final amounts being due and payable on the later of (1) January 1, 2020 (the Due Date under the real estate contract) or (2) six months from the death of the Surviving Grantor.

(i) **Joel's Share.** Joel's Share shall be distributed to Joel M. Garcia's daughter, Roberta Guajardo, outright and free of trust.

If Roberta Guajardo predeceases the Surviving Grantor, then Joel's Share shall be divided into three (3) equal shares: one for Roberta Guajardo's spouse, Stephen D. Guajardo, one for Roberta Guajardo's grandchild, Alexander Nathaniel Theel, and one for Roberta Guajardo's granddaughter, Skylar Capasso. If any of the foregoing individuals are deceased, his or her share will lapse and be added proportionately to the shares created for the other name individuals. If a share is created for Stephen D. Guajardo, it shall be distributed to him outright and free of trust. The shares created for Roberta Guajardo's grandchildren (namely, Alexander Nathaniel Theel and Skylar Capasso) shall be held in separate trusts, which trusts shall be administered as set forth in Article V, Section 2(b)(i)(A), below. If all of Stephen D. Guajardo, Alexander Nathaniel Theel, and Skylar Capasso predecease the Surviving Grantor, then Joel's Share shall be divided equally between the American Cancer Society and the National Parkinson's Foundation.

(A) **Administration of Trusts for Roberta Guajardo's Grandchild.** If a trust is established for a grandchild of Roberta Guajardo (hereinafter referred to as a "beneficiary"), the Trustee of that trust may distribute as much of income and principal of the trust as the Trustee determines to be necessary or advisable to provide for the beneficiary's health, support, maintenance, and education, taking into consideration all other resources available to provide for beneficiary's care that are reasonably known to the Trustee. In deciding when to make distributions to or for the benefit of Alexander, the Trustee shall consider the Grantors' desire that the assets in the beneficiary's trust be used to provide for the beneficiary's post-secondary education, and to pay for other responsible causes such as the purchase of a home or the purchase of a reasonable car. It is also the Grantors' desire that the beneficiary not receive distributions if the Trustee is concerned that the beneficiary is abusing substances. If the Trustee is concerned that the beneficiary is abusing substances, the Trustee may require the beneficiary submit to a random drug test before the beneficiary receives any further trust distributions. If they discover that the beneficiary is abusing substances, the Trustee may retain the beneficiary's assets in trust until such time as the Trustee determines that the beneficiary is no longer abusing substances.

When the beneficiary reaches age thirty (30), the Trustee shall distribute all of the assets remaining in the beneficiary's trust to the beneficiary, outright and free of trust, subject to the restrictions related to substance abuse set forth above, and to postponement of possession described below. If the beneficiary dies before receiving the beneficiary's trust share in full, then the assets remaining in the beneficiary's trust shall be distributed in the same manner as Joel's Share, but if all of

TRUST AGREEMENT FOR THE J & A GARCIA TRUST – PAGE 7

Case 19-01040-t    Doc 1-1    Filed 03/25/19    Entered 03/25/19 17:46:50 Page 19 of 72

Stephen Guajardo, Alexander Nathaniel Theel, and Skylar Capasso are deceased, then the assets remaining in a deceased beneficiary's trust shall be distributed to the beneficiary's descendants, per stirpes, but if none, then to the beneficiary's, per stirpes, but if none, then equally to the American Cancer Society and the National Parkinson's Foundation.

The Trustee for a trust established for a grandchild of Roberta Guajardo shall be Joel's Successor Co-Trustee.

(ii)    **Alicia's Share**. Alicia's Share shall be distributed in equal shares, outright and free of trust, to Alicia I. Garcia's sisters, Cecilia Sanchez and Anita Garcia.

If Cecilia Sanchez predeceases the Surviving Grantor, her share shall be distributed in equal shares to (i) Alicia Sanchez, (ii) Arlene Sanchez, (iii) Peggy Sanchez, and (iv) collectively to Teresa Muldez and Connie Vigil (or to the survivor of them if one of them is deceased). If one of these individuals is deceased, her share shall be distributed to the other named individuals.

If Anita Garcia predeceases the Surviving Grantor, then her share will be distributed in equal shares among Yolanda Garcia, Gloria Garcia, Vanessa Tapia, Leah Garcia, and Philip Garcia. If one of these individuals is deceased, his or her share shall be distributed among the other named individuals.

3.    **Postponement of Possession**.    Except as otherwise provided specifically herein, if any share of any trust is distributable to a person, the Trustee may, because of mental or physical incapacity (as reasonably determined by the Trustee), withhold making such distribution to such person until the earlier of the following dates: (i) until such person's date of death, or (ii) until the day before the applicable state's perpetuities limit is reached; and until such date of distribution, the Trustee may distribute to such person, at any time and from time to time, any part or all of the income and principal of such person's share or trust(s) as deemed necessary or advisable for said person's health, support, maintenance, and education. If such person shall die before receiving all of the property otherwise distributable to him or her, then such property, together with any accumulated income thereon, shall be delivered to such person's estate. Any property withheld by the Trustee hereunder shall be held by the Trustee in trust, in the capacity of Trustee, and, in such capacity, the Trustee shall have all the rights, powers, duties, and exemptions conferred by this Trust Agreement and by law on the Trustee hereunder.

4.    **Perpetuities**.    Notwithstanding any other provision of this Trust Agreement relating to perpetuities, no trust established hereunder or pursuant to the provisions of this Trust Agreement shall last, be in existence for, be effective longer than the day before the applicable state's perpetuities limit is reached. If any trust should terminate by reason of this perpetuities limitation, it shall as soon as is practical be distributed to the income beneficiary or beneficiaries (pro rata) thereof.

5. **Failsafe.** Unless otherwise specifically provided in this Trust Agreement, if any distributee is not living at the time a distribution from a share of any trust is to be made to that distributee, and if the distribution is not then vested or effectively appointed, the distribution shall instead be made in accordance with Article V, Section 2(b) above.

6. **Spendthrift Protection.** To the maximum extent allowed by governing law, the interests of any beneficiary in the principal and/or income of a trust and/or of any share of any trust established by or pursuant to this Trust Agreement shall not be subject to the claims of any creditor, to the claims of any spouse or former spouse for alimony or support or any other amount, or to the claims of any other third-party, nor subject to any legal process whatsoever, affecting said beneficiary (including, without limitation, levy, execution, garnishment, bankruptcy, and/or liens), and, further, may not be voluntarily or involuntarily alienated, assigned, transferred, conveyed, leased, disposed of, sold or encumbered, pledged, or hypothecated by said beneficiary. This provision, however, shall not limit the due exercise of any power of appointment granted in this Trust Agreement. This provision is a material provision of this Trust Agreement, and the provision of spendthrift protection is a material purpose for the creation of all trusts hereunder.

7. **Disabled Beneficiary.**

    (a) **In General.** Provided, however, notwithstanding the preceding terms of this Article V to the contrary, if any beneficiary has a right to receive certain forms of government aid, care or financial assistance (including but not limited to such benefits as Medicaid) (hereinafter, for convenience, referred to as a "disabled" beneficiary) the beneficiary's share shall not be used to replace or render unnecessary any such government assistance. Such share shall be interpreted to provide a supplemental fund for the benefit of the beneficiary's special needs over and above what is provided by the government assistance. For the purposes of determining the disabled beneficiary's eligibility for government assistance benefits, no part of the principal or undistributed income of the Trust estate shall be considered available to the disabled beneficiary. The Trustee shall have exclusive discretion as to the use of income or principal in providing said supplementary benefits. However, the Trustee shall be prohibited from making any distributions which would disqualify the beneficiary from receiving said benefits the beneficiary is otherwise qualified to receive (for example, if applicable, the Trustee may be prohibited from making distributions to pay or provide for said beneficiary's food or shelter). If any governmental unit seeks reimbursement for public support to any beneficiary, the Trustee shall restrict all transfers of funds from a share to or for the beneficiary, to the extent necessary, on behalf of that beneficiary, so that no funds are subject to claim by any government unit.

    (b) **Distributions to Disabled Beneficiary Due to Another's Death.** Notwithstanding any provision in this Trust Agreement to the contrary, if a disabled beneficiary (qualified to receive certain forms of government aid, as described above) is the designated beneficiary pursuant to the exercise of a power of appointment, or is the recipient of an outright distribution as a surviving heir of another beneficiary, or if said

TRUST AGREEMENT FOR THE J & A GARCIA TRUST - PAGE 9

Case 19-01040-t    Doc 1-1    Filed 03/25/19    Entered 03/25/19 17:46:50    Page 21 of 72

disabled beneficiary is to receive an outright distribution pursuant to any other term or provision of this Trust Agreement or by operation of law, said distribution shall not be made to the disabled beneficiary outright and free of trust, but shall instead be distributed to a lifetime trust, for the benefit of the disabled beneficiary, to be held and administered for said disabled beneficiary's benefit, pursuant to the preceding terms of this Article V, Section 7, et. seq. It is the Grantors' intention that a disabled beneficiary who is receiving government aid and/or assistance remain qualified to receive government benefits or assistance the disabled beneficiary is otherwise qualified to receive, notwithstanding any lifetime trust created for the disabled beneficiary's benefit, pursuant to the terms of this Trust Agreement.

## ARTICLE VI
## TRUSTEE

1.    **Successor Trustee.** The Trustee, hereunder, shall be the Grantors, together, so long as they are not disabled, and do not otherwise cease to serve. If for any reason or at any time Joel A. Garcia should fail or cease to serve, Alicia I. Garcia shall serve as the sole Trustee. If for any reason at any time or times Alicia I. Garcia should cease to serve as Trustee, the successor Co-Trustees shall be Joel's Successor Co-Trustee (defined below) and Alicia's Successor Co-Trustee (defined below).

    (a)    **Joel's Successor Co-Trustee.** As used in this Trust Agreement, "Joel's Successor Co-Trustee" shall be Roberta Guajardo. If Roberta Guajardo fails or ceases to serve, then Joel's Successor Co-Trustee shall be that person or those persons and/or that entity or those entities designated in a Latest List (defined below) by Roberta Guajardo or the last Co-Trustee serving as Joel's Successor Co-Trustee (to be used in that order of priority).

    (b)    **Alicia's Successor Co-Trustee.** As used in this Trust Agreement, "Alicia's Successor Co-Trustee" shall be Vanessa Tapia. If Vanessa Tapia fails or ceases to serve, Alicia's Successor Co-Trustee shall be that person or those persons and/or that entity or those entities designated in a Latest List (defined below) by Vanessa Tapia or the last Co-Trustee serving as Alicia's Successor Co-Trustee (to be used in that order of priority).

    (c)    **Latest List.** The latest dated written statement signed by Roberta Guajardo (for Joel's Successor Co-Trustee position), Vanessa Tapia (for Alicia's Successor Co-Trustee position), or by the last Trustee serving in a Co-Trustee position, and made part of the trust records ("Latest List") shall designate that person or those persons and/or that entity or those entities to serve as successor Co-Trustee for that position ("Successors"). The Successors on the Latest List shall be ranked in order of preference. At any time when the Co-Trustee position shall be entirely vacant, the position of successor Co-Trustee shall be promptly offered, in succession and starting from the top, to each Successor on said Latest List; the first Successor(s) in the highest rank to whom and/or to which the Co-Trustee position is so offered who and/or which accepts the offer shall become the Co-Trustee. If the Co-Trustee position should

Case 19-01040-t   Doc 1-1   Filed 03/25/19   Entered 03/25/19 17:46:50   Page 22 of 72

thereafter again become entirely vacant, the Latest List shall again be used in a like manner.

2. **Trustee's Powers and Rights In General.** Any Trustee, whether original, Co-Trustee, or Successor Trustee, may enforce the provisions of this Trust Agreement. All duties, powers, rights, privileges, authorities, discretions, and immunities, and all limitations and restrictions, hereby delegated to, conferred upon, or granted to the Trustee are hereby expressly delegated to, conferred upon, and granted to any Co-Trustee and/or Successor Trustee who duly becomes a Trustee pursuant to this Agreement (except as otherwise may be specifically and explicitly provided in the Agreement). Any Trustee may resign by filing a written resignation with the Trustee and in the trust records.

3. **Co-Trustee.** The Trustee (or a majority of the Trustees then serving) then in office shall have the right and power at any time and from time-to-time to appoint a Co-Trustee (and thereafter at any time the appointing Trustee shall have the right and power to remove said Co-Trustee), which Co-Trustee shall be a Trustee for all purposes under this Agreement. The appointment may limit, restrict, and/or completely forbid the Co-Trustee from having any right, power, and/or discretion over any trust or share.

4. **Delegation of Trustee's Rights and Powers.** To the maximum extent allowed by governing law, a Trustee may delegate ("Delegating Trustee") to another Trustee the rights and powers of the Delegating Trustee.

5. **Co-Trustee Decisions.** Except as otherwise specifically provided in this Trust Agreement, if both Grantors are serving as Co-Trustees, either Grantor Co-Trustee may make a decision and/or take any action on behalf of the trust, without the written consent of the other Grantor Co-Trustee. Provided, however, if there shall be a non-Grantor Trustee in office at any time, the Co-Trustees shall make all decisions and take all actions on behalf of the trust by majority vote.

6. **Financial Advisor.** In the Trustee's sole and absolute discretion, the Trustee may continue to use the broker or financial advisor customarily used by the Grantors or the Surviving Grantor. The Trustee may maintain brokerage accounts with said financial advisor, and may permit said financial advisor to keep any and all investment assets under the control of said financial advisor's brokerage institution.

After the Surviving Grantor's date of death, the income beneficiary (or if there be more than one, then a majority of the income beneficiaries acting together) of a trust may also recommend a financial advisor to render advice to any Trustee on investments, and such Trustee shall give due consideration to the advisor's advice but shall not be bound thereby and shall not be liable for failure to follow such advice.

TRUST AGREEMENT FOR THE J & A GARCIA TRUST - PAGE 11

## ARTICLE VII
## POWERS OF TRUSTEE

Subject to the restrictions (if any) contained elsewhere in this Agreement and/or mandatory restrictions set forth in applicable law, and in addition to the other powers conferred on a Trustee by this Agreement and by applicable law, the Trustee shall have the following rights, powers, duties, and exemptions, which may be exercised, without any order of any court, at all times until termination of the Trustee's duties.

1.  **Distributions.**  The Trustee may make any distribution or division, whether of income or principal, wholly or partially in kind, without allocating the same kind of property to different distributees, and may distribute undivided interests in any asset.  The Trustee may postpone final distribution of the property in any trust pending the final determination of all tax and other liabilities in connection therewith, but may, in said fiduciary's discretion, make partial distributions pending such final determination. In the case of any distributions, whether of principal or income, required or authorized to be made to any minor child or incompetent person, whether or not such person has a guardian, the Trustee may, in said fiduciary's discretion, make distributions directly to such person or may make such distributions to the parent, guardian or spouse of such person, or to any adult who shall reside in the household in which such person resides, or may otherwise apply the same for the benefit of such minor or incompetent in any manner which, in the Trustee's sole discretion, the Trustee may deem to be proper, whether or not such distribution or application may incidentally benefit some person other than the minor or incompetent.  In the case of any distributions made for the benefit of such minor or incompetent in any of the manners just authorized, the receipt of the person to whom the payment is made shall be full discharge therefor to the Trustee.  Unless otherwise specifically provided in this Agreement, the timing of distributions of income, accumulated but undistributed income, and/or principal shall be determined in the Trustee's sole and absolute discretion.

2.  **Tax Elections.**  The Trustee shall be authorized to make any election permitted by any tax law, including the filing of joint returns and the consenting to have gifts made by another treated as being made in part by either of the Grantors, and may agree to such apportionment of taxes and allocation of tax refunds and credits as the Trustee shall deem appropriate, subject to the express terms hereof.  Any decision made by the Trustee under the foregoing provisions of this paragraph shall be binding on all persons.

3.  **Bond, Etc.**  To the fullest extent permitted by law, the Trustee shall not be required to give any bond, surety or security or to make any returns, inventories, appraisals, or accountings of the property of any trust to any court.  Title to the entire property of any trust shall automatically vest in any Successor Trustee without the necessity of any conveyance.  No Successor Trustee shall be required to inquire into the acts or audit the books of any predecessor but may, in said fiduciary's discretion, accept the statement or rely on the books of the predecessor to establish the property and accounts.  Any decision made in good faith by the Successor Trustee on this matter shall be binding on all persons.

4. **Commingling.** The Trustee is authorized to commingle the trust property of the separate trusts created by or pursuant to this Agreement, allotting to each separate trust an undivided interest in the commingled property, which undivided interest shall always be equal to that trust's proportional contributions to the commingled property.

5. **Principal and Income.** The Trustee shall decide what is principal and income, and all questions between principal and income, and the Trustee's decisions in that regard shall be conclusive notwithstanding any provision of law providing for a different decision, unless such provision of law absolutely requires a different decision. All payments, whether in cash or other property, received by Trustee and all depletion and depreciation allowed or allowable, with respect to any interests of any kind in or to, or with respect to any agreements of any kind relating to any oil, gas, mineral or other natural resources, shall be allocated to principal or income (including, but not limited to the creation of a reserve for the Trust Estate for depletion or depreciation), or in part to each, as the Trustee shall determine, but all such determinations shall be consistent with what shall be allowable under Federal and/or State law (including statutes, regulations, and other rules) in effect at the time of the determination.

Provided, however, notwithstanding any provision in this Trust Agreement or the Grantors' Wills to the contrary, the Trustee, and the Personal Representative of a deceased Grantor's estate, shall have the discretion, in said person's and/or entity's fiduciary capacity, to pay any and all administration expenses, attributable to a deceased Grantor's estate and/or share in trust, from income and/or principal of the non-marital trust(s), as well as to use estate and/or trust income otherwise payable to the Surviving Grantor to the extent that the expenses are a proper charge to said income under traditional principal and income allocation rules, particularly those (if any) set forth in governing law. Said fiduciaries shall also require that all fees for said post-mortem work set forth separate charges for management functions (such as income tax and investment planning) and for those that relate to settlement and transmission of the deceased Grantor's estate and/or share in trust. In the exercise of the fiduciary discretion in the payment of administration expenses, the fiduciaries shall be liable only if their respective decisions are clearly and convincingly grossly negligent or an act of willful misconduct.

6. **Annuity Decisions.** The Trustee, in the Trustee's sole and absolute discretion, and without being responsible for any loss or cost occasioned thereby, may make any decision which the Trustee may deem proper with respect to the payment of, and estate and income tax treatment of, any annuity or other payment described in §2039 of the Internal Revenue Code of 1986, as amended, and any successor provisions thereto.

7. **Ancillary Administration.** In addition to the powers conferred by this Trust Agreement and by the law of any applicable jurisdiction, the Trustee shall have the rights and powers conferred by the laws of the State of New Mexico with respect to the administration of trusts. Such rights and powers may be exercised by any domestic

or foreign trustees with respect to the trust property, of whatever kind and wherever situated.

The Trustee, except to the extent that the same are inconsistent with the provisions of this Trust Agreement, in which event the provisions of this Trust Agreement shall govern (if such governance is then allowable under applicable law), shall have all of the rights, powers, and privileges, and be subject to all of the duties, responsibilities, and conditions set forth in the New Mexico trust law (or successor statutes governing the powers and responsibilities of trustees). Except as otherwise provided herein, the powers conferred upon the Trustee herein shall not be construed as in limitation of any authority conferred by law, but shall be construed as in addition thereto (if such addition is then allowable under applicable law).

8. **Partial or Total Resignation.** Any Trustee of any trust hereunder, without any order of any court, and at any time, may resign any one or more of the rights, powers, duties and exemptions held with respect to said trust. The rights, powers, duties and exemptions not specifically resigned shall be retained, and those so resigned shall be exercised by the Successor Trustee with respect to the trust with respect to which such resignation is made. Such a resignation shall be made in writing to the person who shall assume and exercise the resigned rights, powers, duties and exemptions. Such resignation may be temporary or permanent and shall be designated as such in the aforementioned writing.

9. **Removal of Situs of Trust.** The Trustee shall have the right to move and remove the situs of any trust created under this Trust Agreement to any place within the United States.

10. **General Powers.** The Trustee shall have the power to buy, sell in a public or private sale with or without advertisement, exchange, and to pledge, mortgage, or otherwise encumber, any real or personal property, or any interest therein, upon any terms and conditions which the Trustee may deem proper; to grant options to purchase or lease any property; to abandon any property, real or personal, which the Trustee considers not worthy of retention and maintenance; to pay any debt upon such evidence as is deemed sufficient; to compromise, arbitrate, rescind, adjust, sue on or defend, abandon or otherwise deal with and settle claims in favor of or against any trusts as the Trustee shall deem best; to lend money, with or without security, on such terms and conditions as the Trustee shall determine; to borrow money from anyone, including from the Trustee; to engage in transactions with other estates and trusts of which the Trustee is the fiduciary in the same manner as the Trustee would engage in such transaction with a third party; to engage in any business in which an individual might engage; to become a member of any association or joint venture or to become a general or limited partner in any partnership engaged in any business, and to do all acts and assume all liabilities which any individual might do or assume as a member of such association or joint venture or as a partner in such partnership; to incorporate any business; to remove all or any part of the trust property and make investments outside the limits of the jurisdiction of the administration of the trust; to invest in any common trust fund administered by a corporate trustee; to retain, invest in and reinvest in as the Trustee

TRUST AGREEMENT FOR THE J & A GARCIA TRUST – PAGE 14

sees fit any real or personal property whatsoever as the Trustee may deem advisable and for the best interests of the trust, even to the extent of keeping all the funds of any trust in one investment, and any investment made or retained by the Trustee in good faith shall be proper although of a kind or in an amount or proportion not considered by law as suitable for trustees; to vote or to refrain from voting stock; to act as the Trustee deems proper in any recapitalization, merger, reorganization, consolidation, partition or other transaction affecting any of the property held, and to make exchanges, pay expenses, and to delegate discretionary power with relation to such transaction; to execute contracts, mortgages, and leases, even though the performance or termination date thereof extends beyond the date of contemplated termination of the administration of the trust involved; to execute, acknowledge, and deliver all the necessary and proper contracts, deeds, or other instruments, whether or not under seal, incident to the Trustee's rights, powers and discretion; to open and maintain a margin securities account for the purposes of borrowing funds or for investing on margin, pledging or hypothecating trust assets, including securities; to pay interest on any debt; and to hold securities owned by the trust in bearer, nominee or any other form by virtue of which title to such securities may be passed solely by delivery and without endorsement by the Trustee. The Trustee shall have power to receive and administer or to refuse, as a part of any trust, property which at any time or in any manner may be added to any trust by any person; the Trustee may hold and carry real and personal property in any name, including the name of a nominee, without indication of any fiduciary capacity; the Trustee may appoint agents and attorneys in fact to act for the Trustee, in the administration of any trust; the Trustee may employ, retain, or consult accountants, investment counsel, attorneys at law, and other professional advisors, including the Trustee, to represent or advise the Trustee; the Trustee may select depositories, including a corporate personal representative or trustee, within or without the jurisdiction of administration of the funds and securities held by the Trustee; and the Trustee may pay from the funds of the trust reasonable charges for the services or facilities herein authorized.

The Trustee shall also have the authority to establish and administer one or more banking relationships for the benefit of the Trust, including (but not limited to), without limitation, the following rights and powers:

        (a)     To designate one or more banks, trust companies, savings and loans, credit unions, or other similar institutions as depositories of the funds, including, without limitation, cash and cash equivalents, of the Trust;

        (b)     To open, keep and close general and special bank accounts, including, without limitation, general deposit accounts, checking accounts, savings accounts, certificates of deposit, money market accounts, and working funds accounts, with any such banking institution;

        (c)     To cause to be deposited in such accounts with any such banking institution, from time-to-time, such funds, including, without limitation, cash and cash equivalents, of the Trust and to endorse checks, drafts, or other instruments;

TRUST AGREEMENT FOR THE J & A GARCIA TRUST - PAGE 15

(d)     To arrange for any and all wire or other electronic transfers to or from said accounts;

(e)     To maintain deposits in a foreign currency or to convert such deposits to currency of the United States;

(f)     To make and/or comply with such general and special rules and regulations with respect to such accounts; and

(g)     To complete, execute and/or certify any customary printed signature card forms to exercise the authority granted by this Trust Agreement, and any resolutions printed thereon shall be deemed adopted as a part hereof.

The Trustee shall also have the authority to act on the Trust's behalf with respect to all vehicles with documents of title.  "Vehicles" shall include but not be limited to boats, cars, motorcycles, recreational vehicles ("RVs"), trailers, and so forth.  This authority shall include, but not be limited to the authority to transfer title, acquire insurance, acquire title, etc.

11.     **Restrictions on Investments.**  Notwithstanding any other provision of this Agreement relating to investment policy, the Trustee is requested to consider in full force and effect the investment policy and philosophy followed by the Grantors.   In particular, the Trustee is requested to consider investments which are of moderate or conservative risk, and which may include conservative growth securities and tax-free income securities.

12.     **Budget Income and Expenses.**  The Trustee shall have the power to budget the estimated annual income and expenses of the trust in such a manner as to equalize, as far as possible, periodic payments to the beneficiaries.

13.     **Trustee's Discretions.**  Unless otherwise specifically stated in this Trust Agreement, all discretions, powers, decisions, choices, and/or rights granted to or vested in the Trustee by any provision of this Trust Agreement are to be exercised in the sole and absolute discretion of the Trustee (whether or not the words sole and absolute discretion are used in the context of granting the Trustee discretions, powers, decisions, choices, and/or rights).

14.     **Termination of Powers.**  Any power to appoint, designate, remove, or revoke the appointment of a Trustee granted in this Trust Agreement may be renounced, disclaimed, and released in whole or in part by the holder of such power and may be reduced by the holder of such power in such manner as to reduce or limit the objects in whose favor the power would be otherwise exercisable.  In addition to any other method of renunciation, disclaimer, release, or reduction recognized by law, any right, power, and/or discretion set forth in this Agreement may be renounced, disclaimed, released, or reduced by the holder of such right, power, and/or discretion by an instrument in writing signed by said holder and delivered to the Trustee of each trust to which such renunciation, release, or reduction relates.

TRUST AGREEMENT FOR THE J & A GARCIA TRUST - PAGE 16

15.  **Dealing With The Grantors' Estates**.  The Trustee is hereby authorized, in the Trustee's absolute discretion, without regard to whether the Trustee may also be serving as a personal representative of either estate, to purchase on behalf of any trust created by this Agreement, any property; real, personal, or mixed, tangible or intangible, and wherever situated, belonging to either estate, or to make loans or advancements, secured or unsecured, to the personal representative of either estate in order to provide funds with which to pay claims, taxes, administration expenses, or other indebtedness of such estate.

The Trustee is authorized to enter into any transaction permitted by this Trust Agreement, even though the other party to that transaction is a beneficiary; the estate of a beneficiary; a trust created by or for the benefit of a beneficiary, whether living or deceased; the estate of an executor or personal representative or administrator of any estate, including that of either Grantor; or a trustee of any trust, including the Trustee under this Trust Agreement acting individually; except to the extent that the New Mexico trust laws may expressly prohibit any Trustee serving hereunder from engaging in any such transaction.

16.  **Withholding Distributions.**  Notwithstanding any provision providing for a mandatory distribution of income and/or principal by the Trustee, and notwithstanding any right of withdrawal of income and/or principal by a beneficiary, the Trustee is authorized, in the sole and absolute discretion of the Trustee, to withhold or delay any distribution of income and/or principal (but not beyond the permissible perpetuities period as provided in this Agreement).  If the Trustee shall determine, in the sole and absolute discretion of the Trustee, that a beneficiary is physically or mentally incapacitated or disabled by reason of any form of mental impairment, including, without limitation, any form of addiction and/or chemical dependency, or, if in the Trustee's sole discretion, if the beneficiary is not able to properly manage such assets for such other reasons as bankruptcy or divorce, the Trustee may exercise this right, power, and discretion for so long as the Trustee determines that the beneficiary is disabled or otherwise unable to properly manage said assets.  Disability for purposes of this provision shall mean that, as determined by the Trustee, in the sole and absolute discretion of the Trustee, the beneficiary is not able by reason of the mental impairment, addiction, and/or chemical dependency to deal with his or her personal life in a responsible way and is not able to give prompt and intelligent consideration to financial matters.  In such event, the Trustee may distribute income and/or principal for a beneficiary's health, education, support, and maintenance, as deemed necessary or advisable by the Trustee.  If, in Trustee's sole discretion, the particular condition(s) has (have) ceased, the Trustee may, at that time, make the proposed distribution.

17.  **Investment Authority**.  In addition to the other authority granted to the Trustee pursuant to this Trust Agreement, the Trustee shall have the general authority to enter into transactions for the purchase and sale of securities and other investments, including, without limitation, stocks (preferred or common), bonds, mutual funds and certificates of deposit; to maintain a margin and short account and through such account to purchase securities on margin, sell securities which the trust does not own

TRUST AGREEMENT FOR THE J & A GARCIA TRUST - PAGE 17

Case 19-01040-t    Doc 1-1    Filed 03/25/19    Entered 03/25/19 17:46:50    Page 29 of 72

(i.e., short sales) and to borrow securities in connection therewith, to borrow money, to secure the performance of the trust's obligations to the accounts and to grant authority to a brokerage firm, acting as principal or otherwise, to pledge, repledge, hypothecate or rehypothecate assets of the trust; and to trade in all types of options, including, without limitation, the purchase of puts and calls and the writing (sale) of covered and uncovered puts and calls.

The Trustee is also authorized in its discretion to maintain illiquid assets, such as oil and gas interests, partnership interests, limited liability company membership interests, etc., in consultation with the beneficiaries, but all decisions shall be in the Trustee's sole and absolute discretion.

18. **Liability for Predecessor Fiduciary.** No Trustee hereunder whether original or successor shall be liable for the default of any prior executor, administrator, trustee, co-trustee or legal representative thereof or for failure to contest the accounting rendered by such predecessor fiduciary, unless any income Beneficiary shall have, in writing, required the Trustee to contest such accounting or rectify such default prior to acceptance. Similarly, any Trustee hereunder whether original or successor may accept the trust assets as delivered to it by such executor, administrator, co-trustee, prior trustee or the legal representative of such prior fiduciary and shall be responsible only for such assets. It is Grantors' desire that said Trustee be relieved of any duty, liability or responsibility which it may have as a successor fiduciary because of receiving assets or being entitled to receive assets from a prior fiduciary. It is the Grantors' wish and desire that these provisions expedite the succession of trusteeship hereunder. Nothing in this paragraph shall limit the power of any trustee hereunder from conditioning its acceptance of the trust or any assets upon a proper accounting or from requiring such an accounting or rectifying of a prior default from a predecessor fiduciary.

19. **Compensation.** Any Co-Trustee that receives a distribution pursuant to Article V, Section 2(a) of the Trust Agreement shall not be entitled to any further compensation from this trust. Any other Trustee or Co-Trustee in office pursuant to this Trust Agreement shall be paid reasonable compensation (either on an hourly or other reasonable basis) for all work done by that Trustee, and if the Trustee should be a corporate Trustee, then said reasonable compensation shall be in accordance with the corporate Trustee's fee schedule from time-to-time in effect for said corporate Trustee.

The Trustee shall also be authorized to adjust the Trustee's compensation, in the Trustee's sole discretion, to take into consideration unusually complex, time-consuming, and/or expedited services provided by said Trustee.

20. **Trustee as Agent for Medical Purposes.** Each Grantor hereby appoints the Trustee (or the successor Trustee) as each Grantor's attorney-in-fact ("Recipient") and authorizes the Trustee to request, review and receive (from any and all third parties who or which may have each Grantor's private health information records), medical records and information, verbal or written, of any type or manner, including but not limited to the following: (i) medical services provided, (ii) determinations and opinions regarding each Grantor's physical medical condition, mental condition, and capacity, (iii)

billing information and medical insurance information (including Medicare Part B) relating to each Grantor's membership status in an insurance program and/or government benefit program, (iv) eligibility for benefits, (v) status of claims regarding physical or mental health and (vi) financial, tax, billing, and other matters. Each Grantor is aware of each Grantor's rights of privacy and confidentiality under the Health Insurance Portability and Accountability Act and expressly waives such rights under this document and consents to the disclosure of medical information to the authorized agent. Each Grantor understands that the information to be disclosed may be protected by law and that information disclosed under this authorization may be redisclosed by the Recipient and no longer protected by federal privacy law. Each Grantor understands that each Grantor may revoke this authorization at any time in writing by delivering such writing to the Recipient and to any physician, health care professional, health care provider, and medical care facility that has received this authorization. This authorization shall expire upon the termination or revocation of this Trust Agreement.

**ARTICLE VIII**
**PROTECTION OF PERSONS DEALING WITH FIDUCIARIES**

No corporation, transfer agent or other person dealing with the Trustee shall be obliged to see to the application of any money or property delivered to such Trustee, or to examine into the terms upon which any property is held by the Trustee, or to inquire into the necessity or propriety of the Trustee exercising any of the powers conferred upon the Trustee, or to determine the existence of any fact upon which the Trustee's power to perform any act may be conditioned. No purchaser at any sale made by the Trustee or persons dealing with the Trustee hereunder shall be obliged to see to the application of any money or property paid or delivered to the Trustee. No person dealing with the Trustee shall be obliged to inquire into the expediency or propriety of any transaction or the authority of the Trustee to enter into and consummate the same upon such terms as the Trustee may deem advisable. Any such corporation, transfer agent, or other person may deal with any such property and with the Trustee, as if such Trustee were the owner thereof free of any trust or fiduciary capacity.

**ARTICLE IX**
**DEFINITIONS**

1.    **Gender/Plural/Trust.** If the context so requires, the masculine, feminine, or neuter gender shall be construed to include all genders or a corporation and words in the singular or plural number shall be deemed to include both the singular and plural numbers.

The word "share" may have the same meaning as the word "trust," and the word "instrument" shall mean the same as the words "Trust Agreement."

2.    **Fiduciaries.** "Personal Representative," "Trustee," and "Guardian" refer to one or more persons serving in such office at any time, whether original, additional, substitute, or successors.

"Guardian" of a person includes the conservator of the person's property and refers to the one or more persons serving in such office at any time, whether original, substitute, or successor.

3. **Descendants/Heirs.** Except as otherwise provided by this Trust Agreement, "Lineal descendant" or "descendants" of a person refers to that person's children, grandchildren, great grandchildren, and descendants of more remote degree in direct line of descent from that person, and those legally adopted into the line of descent.

In applying any provision of any trust created by this Agreement, which refers to a person's "child," "children," "issue," "descendants," or "lineal descendants," any person legally adopted shall, at all times thereafter, be treated as a child born to the adopting parent or parents, and not as the child of the natural parents.

Except as otherwise provided by this Trust Agreement, whenever this Agreement requires or permits a distribution to a person's "heirs," such distribution shall be to and among the individuals who would have been entitled to such person's personal property, and in the proportions to which such individuals would have been entitled, if such person, being then domiciled in New Mexico, had died intestate with respect thereto immediately following the date specified for such distribution.

4. **Code Sections.** The words "Internal Revenue Code" or "Code", or the symbol "§", shall refer to sections of the Internal Revenue Code of 1986, as amended from time-to-time, and to the comparable provisions of any later Federal tax law (including all Regulations and Rulings thereunder) which then may be applicable to any decision and/or act involving the Trust Estate.

5. **Name of Trust.** This trust shall be known as the "J & A Garcia Trust".

**ARTICLE X**
**MISCELLANEOUS**

1. **Survivorship.** If any beneficiary (other than a Grantor) and a Grantor should die under circumstances which would render it doubtful as to whether the beneficiary survived, it shall be conclusively presumed that said beneficiary predeceased such Grantor.

2. **Governing Law.** The Trustee shall have the sole and absolute discretion to determine which state's laws will govern the administration of this Trust Agreement; provided, however, that a non-Grantor Trustee may change the governing law only one time during each period of three (3) full consecutive calendar years following the date this Trust Agreement is originally signed and the Trustee shall certify such governing law by filing in the Trust records a signed and acknowledged designation of state law. The Trustee shall comply with the requirements of the law of the state chosen to govern the administration of this trust, which requirements are necessary to apply said state's laws to the governance of the administration of this trust.

3.   **Paragraph Headings; Incorporation by Reference.**  Paragraph headings are for convenience only and shall not limit the substantive interpretation of any of the provisions herein. All written lists, designations, and other documents carrying out provisions of this Trust Agreement and referred to in this Trust Agreement shall be deemed to be incorporated by reference in this Trust Agreement.

4.   **Uniform Trust Code.**  To the extent that any one or more provisions of this Trust Agreement conflict with any one or more of the provisions of the New Mexico Uniform Trust Code (Sections 46A-1-101 et seq. NMSA 1978, as amended) ("Trust Code") the provisions of this Trust Agreement shall prevail over and govern the contrary provisions of the Trust Code; provided, however, that the Mandatory Rules set forth in the Trust Code in Section 46A-1-105(B)(1) through (14) shall prevail over and govern the provisions of this Trust Agreement and are incorporated by reference in this Trust Agreement.

5.   **Incontestability.**  To the maximum extent permissible under governing law, the beneficial provisions of this Trust Agreement and of Grantors' last Wills which may make reference to this Trust Agreement, are intended to be in lieu of any other rights, claims, or interests of any nature, whether statutory or otherwise, which any beneficiary of this trust may have against or in Grantors' estates or the properties in this trust. Accordingly, if any beneficiary of this trust asserts any claim whatsoever, statutory election, or other right or interest against or in either Grantor's estate, last Will, or any properties of this trust, other than pursuant to the express terms hereof or of said Will, or directly or indirectly contests, disputes, or calls into question, before any tribunal, the validity of this Trust Agreement or of said Will, then such beneficiary shall thereby absolutely forfeit any beneficial interests which such beneficiary might otherwise have under this Trust Agreement and the interests of the other beneficiaries hereunder shall thereupon be appropriately and proportionately increased.  In addition, all of the provisions of this Trust Agreement, to the extent that they confer any benefits, powers, or rights upon such claiming, electing or contesting beneficiary, shall thereupon become absolutely void and revoked, and such claiming, electing, or contesting beneficiary, if then acting as a Trustee of this trust, shall automatically cease to be a Trustee and shall thereafter be ineligible either to select, remove, or become a Trustee of this trust.  The foregoing shall not be construed, however, to limit the appearance of any beneficiary as a witness in any proceeding involving this Trust Agreement or said Will nor to limit any beneficiary's appearance in any capacity in any proceeding solely for the construction of either of said documents, nor to limit a claim by a beneficiary for which a court determines in a final order is supported by clear and convincing evidence.

6.   **Limitation of Liability of Trustee.**  No individual (non-corporate) Trustee shall have any liability for any decision made and/or action taken by the Trustee unless such decision made and/or action taken should involve (i) willful misconduct, (ii) bad faith, or (iii) conduct with reckless indifference to the purposes of the trust or the interests of the beneficiaries (hereinafter, for convenience, collectively referred to as "Willful Misconduct") as determined in a final judgment of a court with jurisdiction, and, in addition, the individual (non-corporate) Trustee shall be entitled to be held harmless

and indemnified by the trust against any claim, loss, liability, damage, injury, costs, and expenses (including reasonable professionals' fees) ("claims"), which claims might be made against the Trustee personally for any decision made and/or action taken, but this hold-harmless and indemnification provision shall not apply in the case of Willful Misconduct of the Trustee against whom a claim may be made.

_AG+ _____ The Grantors confirm that this exculpatory provision is fair under the circumstances and said provision and its contents were adequately communicated to and discussed with the Grantors. This exculpatory provision was not inserted as the result of an abuse by the Trustee of a fiduciary or confidential relationship to the Grantors, but instead because of the Grantors' desire to indemnify and hold harmless all individual (i.e., non-corporate) Trustees for all but Willful Misconduct.

7.    **Accounting.**  If a Grantor is not serving as a Trustee, the Trustee shall render an unaudited, informal, but reasonable and responsible account of receipts and disbursements at least annually to each adult income beneficiary. The Trustee shall be reimbursed for all reasonable expenses incurred in the management and protection of the trust and shall receive fair compensation for services.   The Trustee's regular compensation shall be charged half against income and half against principal, except that the Trustee shall have full discretion at any time or times to charge a larger portion or all against income or principal.

**IN WITNESS WHEREOF**, the Grantors and the Trustee have executed this Agreement as of the day and year first above written.

GRANTORS:

_____
Joel M. Garcia

_____
Alicia I. Garcia

TRUSTEE:

_____
Joel M. Garcia

_____
Alicia I. Garcia

Case 19-01040-t   Doc 1-1   Filed 03/25/19   Entered 03/25/19 17:46:50 Page 34 of 72

STATE OF NEW MEXICO        )
                          ) ss.
COUNTY OF BERNALILLO      )

The foregoing Trust Agreement for the J & A Garcia Trust was acknowledged before me this 2nd day of October, 2017, by Joel M. Garcia and Alicia I. Garcia.

_Cinda L. Quisenberry_
Notary Public

My commission expires:

_8-21-2019_

OFFICIAL SEAL
Cinda L. Quisenberry
NOTARY PUBLIC
STATE OF NEW MEXICO
My Commission Expires _8-21-2019_

4819-8384-6732, v. 1

DocuSign ID: DEK82040-FONC40W6-A268-D7EC2ENTIBEA5



# NEW MEXICO ASSOCIATION OF REALTORS®
# PURCHASE AGREEMENT – RESIDENTIAL RESALE – 2019

**OFFER DATE:**  February  25  2019

**1. PARTIES AND AGREEMENT.**

_____ ("Buyer")
agrees to buy from Seller and _____ ("Seller")
agrees to sell and convey to Buyer, in accordance with terms of this Purchase Agreement ("Agreement"), the Property described in Para. 5 with a Settlement/Signing Date on ____March____28____2019____ (as further described in Para. 9A below).

**2. PURCHASE PRICE.**   $ _____177,500.00

  **A. APPROXIMATE CASH DOWN PAYMENT**  ☑ to be determined by lender and/or buyer  OR  $ _____

  **B. AMOUNT OF THE LOAN(S)**  ☑ to be determined by lender and/or buyer  OR  $ _____

**3. OFF MARKET/TIME OFF MARKET (TOM) FEE.**

  **A.** Unless otherwise agreed to in writing, as of Date of Acceptance, Seller shall take the Property "Off the Market", which means Seller shall not accept any other offer to sell the Property, **except a Back-Up Offer.**

  **B.** This Sub-Para. 3(B) to be used **ONLY IF Buyer will be compensating** Seller for taking the Property Off the Market in order to allow Buyer the opportunity to review Seller's Property Disclosure per Para. 18(H) and conduct inspections per Para. 21 (Collectively, "TOM Fee Inspections"), and if applicable, to resolve any objections Buyer may have to the TOM Fee Inspections. As compensation, Buyer shall deliver to Seller $ ___50.00___ ("TOM Fee"), in the form of ☑ Check  ☐ Cash  ☐ Other _____, no later than __3__ days from Date of Acceptance. In the event of Closing, the TOM Fee, **SHALL NOT** be refunded to Buyer or applied to Purchase Price, down payment, and/or closing costs. In the event Buyer terminates this Agreement for any reason, Seller shall retain the entirety of the TOM Fee. Buyer's failure to timely deliver the TOM Fee shall be considered a default of this Agreement. See RANM Form 2104(A) TOM Fee Information Sheet and 2104(B) Receipt for TOM Fee.

**4. EARNEST MONEY.** Buyer shall deliver $ _____500.00 Earnest Money in the form of ☐ Check ☐ Cash ☐ Note ☐ Wire Transfer of Funds ☑ Other to _Sellers Choice_ _____, no later than __3__ days from ☐ Date of Acceptance OR  ☑ if Buyer has no objections to TOM Fee Inspections, the Objection Deadline in Para. 21(F)(iii) or if Buyer has objections to TOM Fee Inspections, the date the parties reach Resolution to those objections OR ☐ OTHER _____. Earnest Money shall be applied to Purchase Price, down payment, and/or closing costs upon Funding Date. Buyer's failure to timely deliver Earnest Money shall be considered a default of this Agreement.

**5. PROPERTY.**

  **A. DESCRIPTION.**

    __1905  Nancy Lopez Boulevard__      __Rio Communities__  __NM__  __87002__
    Address                                      City              State/Zip
    __SUBD: COUNTRY CLUB ESTATES D-5-27 LOT: 17 BLOCK: 1 .20 ACRE__
    Legal Description

    or see metes and bounds or other legal description attached as Exhibit _n/a_, ____Valencia____ County(ies), New Mexico.

    Gross Receipts Tax (GRT) Location Code: _____14-037_____ (To be completed by Broker).

    If the legal description of the Property is incomplete or inaccurate, this Agreement shall not be invalid; the legal description shall be completed or corrected to meet the requirements of the Title Company issuing the title policy.

  **B. TYPE:** ☑ Site built  ☐ Manufactured housing  ☐ Modular  ☐ Off-site built  ☐ Other: _____. (See NMAR Form 2305 – Information Sheet-Manufactured Housing)

This form and all New Mexico Association of REALTORS® forms are for the sole use of NMAR members and those New Mexico Real Estate Licensees to whom NMAR has granted prior written authorization. Distribution of NMAR Forms to non-NMAR members or unauthorized Real Estate Licensees is strictly prohibited. NMAR makes no warranty of the legal effectiveness or validity of this form and disclaims any liability for damages resulting from its use. By use of this form the parties agree to the limitations set forth in this paragraph. The parties hereby release NMAR, the Real Estate Brokers, their Agents and employees from any liability arising out of the use of this form. You should consult your attorney with regards to the effectiveness, validity, or consequences of any use of this form. The use of this form is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by Real Estate Licensees who are members of the National Association of REALTORS® and who subscribe to the Association's strict Code of Ethics.

NMAR Form 2104 (2019 JAN) Page 1 of 15      TORS®    Buyer _____ Seller _____
    This copyright protected form was created us...    for use by Bankris Losano.

**EXHIBIT**

**C**

Case 19-01040-t  Doc 1-1  Filed 03/25/19  Entered 03/25/19 17:46:50 Page-36 of 72



# NEW MEXICO ASSOCIATION OF REALTORS®
# PURCHASE AGREEMENT – RESIDENTIAL RESALE – 2019

**C. OTHER RIGHTS.** Unless otherwise provided herein, Seller shall convey to Buyer all existing wind, solar, water and mineral rights ("Other Rights") appurtenant to the Property. Seller makes no warranties as to the existence of any of the foregoing Other Rights. NOTE TO SELLER: If Seller is retaining any or all of the foregoing Other Rights, Seller should NOT sign this offer; a counteroffer would be necessary. **NOTE TO BUYER:** Buyer should be aware that some or all of the foregoing Other Rights may have been previously severed from the Property and may be owned by third persons; those severed rights would not convey to Buyer by way of this Agreement. Buyer **SHOULD** seek legal and expert assistance to determine what rights, **IF ANY**, Buyer is acquiring with the Property, to understand how the non-conveyance of any rights or portions thereof may affect Buyer; and to ensure that all rights that will convey with the Property are properly transferred at closing.

**D. FIXTURES, APPLIANCES AND PERSONAL PROPERTY.**

    **i. FIXTURES.** The Property shall include all Fixtures, free of all liens, unless otherwise noted, including, but not limited to, the following Fixtures if such Fixture exists on the Property, unless otherwise excluded as stated in Para. 5E:

- Attached fireplace grate(s) & screen(s)
- Attached floor covering(s)
- Attached mirror(s)
- Attached outdoor lighting & fountain(s)
- Attached pot rack(s)
- Attached window covering(s) & rod(s)
- Awning(s)
- Built in/attached speaker(s) & subwoofer(s)
- Built-in Murphy bed(s)
- Ceiling fan(s)
- Central vacuum, to include all hoses & attachments

- Dishwasher(s)
- Fire Alarm(s) (if owned by Seller)
- Garbage disposal(s)
- Garage door opener(s)
- Heating system(s)
- Landscaping
- Light fixture(s)
- Mailbox(es)
- Outdoor plant(s) & tree(s) (other than those in moveable containers)
- Oven(s)
- Pellet, wood-burning or gas stove(s)
- Range(s)
- Window/door screen(s)

- Security System(s) (if owned by Seller)
- Smoke Alarm(s) (if owned by Seller)
- Solar Power System(s)/Panels (If leased by Seller, lien may exist)
- Sprinkler(s)/irrigation equipment
- Storm window(s) & door(s)
- TV antenna(s) & satellite dish(es)
- Ventilating & air conditioning system(s)
- Water conditioning/filtration /water softener/purification system(s) (if owned by Seller)

    **ii. PERSONAL PROPERTY.** The following existing personal property, if checked, shall remain with the Property:

- ☑ All window covering(s)
- ☐ Audio component(s)
- ☑ Decorative mirror(s) above bath vanities
- ☑ Dryer(s)
- ☑ Washer(s)
- ☑ Garage door remote(s)
- ☐ Freezer(s)

- ☑ Freestanding Range(s)
- ☑ Microwave(s)
- ☐ Pool & spa equipment including any mechanical or other cleaning system(s)
- ☑ Refrigerator(s)
- ☐ Satellite receiver(s) with access cards (if owned by Seller and if transferable)

- ☑ Storage Shed(s)
- ☐ TV(s)
- ☐ Unattached fireplace grate(s) & screen(s)
- ☐ Unattached outdoor fountain(s) & equipment
- ☐ Unattached outdoor lighting
- ☐ Hot Tub(s)

Other: n/a

Personal Property remaining with the Property as stated in Para. 5D, shall be the actual personal property that is present as of the date the Buyer submits this offer, shall not be considered part of the premises and shall be transferred with no monetary value, free and clear of all liens and encumbrances.

**E. EXCLUSIONS.** The following items are excluded from the sale: n/a

Authentisign ID: D61B0B10-F89C49A76-A265-BDCCB88ED3A5



**NEW MEXICO ASSOCIATION OF REALTORS®**
**PURCHASE AGREEMENT – RESIDENTIAL RESALE – 2019**

## 6. FINANCED OR CASH PURCHASE

**A.** ☑ **LOANS.** This Agreement is contingent upon Buyer's ability to obtain a loan in the amount stated above in Para. 2(B) of the following type:

☐ Conventional  ☑ FHA  ☐ VA  ☐ Other: _____

**i.** Buyer ☐ has made written application for a loan, or ☑ shall make written application for a loan no later than __2__ days after the Date of Acceptance.

**ii.** Buyer shall provide Seller with a Pre-Qualification Letter from a lender no later than _____ days after the Date of Acceptance. Pre-Qualification Letter must stipulate that:

**a)** A written loan application has been made;

**b)** A credit report has been obtained and reviewed by a lender;

**c)** A preliminary loan commitment has been secured from the same lender;

**d)** Financing equal to the loan amount provided in Para. 2(B) of this Agreement is available to complete the transaction by the Settlement/Signing Date subject to contingencies provided for in this Agreement and underwriting approval.

If Buyer does not obtain a Pre-Qualification Letter within the timeframe stipulated above, this Agreement shall terminate and the Earnest Money, if delivered, shall be refunded to Buyer.

**iii.** If Buyer changes lender after delivery of the Pre-Qualification Letter referenced in Para. 6(A)(ii), Buyer shall have the obligation to notify Seller in writing and provide a new Pre-Qualification Letter to Seller within two (2) days of changing lender. This new Pre-Qualification Letter must include the same stipulations as the original Pre-Qualification Letter as set forth in Para. 6(A)(ii). If Buyer does not obtain and deliver a new Pre-Qualification Letter within two (2) days of changing lender, the Seller has the option to terminate this Agreement. If Seller elects to terminate this Agreement, the Earnest Money, if delivered, shall be refunded to Buyer.

**iv.** Buyer shall cooperate and act in good faith in obtaining final approval for the loan as outlined in the Pre-Qualification Letter referenced in Para. 6(A)(ii). If after issuing the Pre-Qualification letter, lender makes changes to the loan conditions and/or the loan program that adversely affect Buyer's ability to obtain the loan, increase Seller's costs or delay closing, Buyer shall have the obligation to notify Seller in writing within two (2) days of such occurrence and to include a copy of the lender requirement(s) with the notification. In that event, within three (3) days of receipt of Buyer's notification, Seller shall notify Buyer in writing: (a) of Seller's approval of such changes; or (b) of Seller's decision to terminate the Agreement. If Seller terminates the Agreement per this Sub-Para. 6(A)(iv), Earnest Money, if delivered, shall be refunded to Buyer. If Seller fails to notify Buyer of Seller's position within three (3) days of receipt of Buyer's notification, Seller is deemed to have rejected such change in lender requirement(s). In this event, the Agreement shall terminate and the Earnest Money, if delivered, shall be refunded to Buyer.

**v.** In the event the lender determines Buyer does not qualify for the loan, Buyer shall provide to Seller and Seller must receive a written rejection letter from the Buyer's lender prior to 11:59 p.m. on the day before; or ☐ _____ days before Settlement/Signing Date. In the event Seller does not receive such rejection letter within the timeframe set forth in this Sub-Para. 6(A)(v), Buyer shall forfeit his Earnest Money, if delivered, to Seller. Days are calculated as calendar days; however, for purposes of this subsection only (Para. 6(A)(v)), there shall be NO extension of time when the deadline for Seller to receive the lender's written rejection letter falls on a weekend day or a legal holiday. The definition of "days" for all other provisions of this Agreement is as set forth in Para. 31.

**B.** ☐ **SELLER FINANCING.** The approximate balance of $ _____ shall be financed by Seller and shall be secured by: ☐ Real Estate Contract ☐ Mortgage ☐ Deed of Trust ☐ Other: _____. Terms and conditions of the applicable instrument shall be attached as an addendum. For a Real Estate Contract, attach NMAR Form 2402 – Real Estate Contract Addendum to Purchase Agreement. For a Mortgage or Deed of Trust, Attach NMAR Form 2507 – Addendum to Purchase Agreement – Seller Financing, Mortgage or Deed of Trust.

**C.** ☐ **CASH PURCHASE:** Buyer shall purchase the subject Property for Cash. No later than _____ days after the Date of Acceptance, Buyer shall provide Seller with verification of funds and proof satisfactory to Seller that Buyer has in Buyer's possession or control, the funds necessary to complete the transaction. This Agreement

Case 19-01040-t · Doc 1-1 · Filed 03/25/19 · Entered 03/25/19 17:46:50 Page 38 of 72



# NEW MEXICO ASSOCIATION OF REALTORS®
## PURCHASE AGREEMENT – RESIDENTIAL RESALE – 2019

shall terminate in the event Buyer fails to provide timely proof of funds and Earnest Money, if delivered,
☐ shall  ☐ shall not be refunded to Buyer.

7. ☐ **BUYER'S SALE, CLOSING AND FUNDING CONTINGENCY.** This Agreement is contingent upon the Closing and Funding of Buyer's property located at _____ on or before _____, _____, subject to any applicable Buyer's Contingency Addendum if attached as indicated below:

    **A.** ☐ Buyer represents that Buyer's property is currently under contract for sale. ☐ Check if NMAR Form 2503A, Buyer's Closing and Funding Addendum is attached; OR

    **B.** ☐ Buyer represents that Buyer's property is NOT yet under contract for sale. ☐ Check if NMAR Form 2503, Buyer's Sale Contingency Addendum is attached.

8. **APPRAISAL.**

    **A. CASH OR SELLER-FINANCED.** Buyer ☐ does ☐ does not require an appraisal. **Buyer Initials** _____ _____.
If Buyer is requiring an appraisal, the following applies:
      i. ☐ Buyer shall select the appraiser;
      ii. ☐ Buyer ☐ Seller shall pay for the appraisal; and

    **B. APPRAISAL CONTINGENCY.** It is expressly agreed that notwithstanding any other provisions of this Agreement, the Buyer shall not be obligated to complete the purchase of the Property described herein or to incur any penalty by forfeiture of Earnest Money deposits or otherwise if the Purchase Price is greater than the Appraisal. This Appraisal Contingency applies to the following:
      i. All conventional and FHA/VA loans requiring an appraisal; and
      ii. Cash and seller-financed purchases if the Buyer requires an appraisal as indicated in Para. 8(A).

    **C. OPTIONS AVAILABLE IN THE EVENT PURCHASE PRICE IS GREATER THAN APPRAISAL.**
      i. Buyer may proceed with this Agreement without regard to the amount of the appraised valuation provided Buyer delivers written notice to Seller of such election within three (3) days of receipt of said appraised valuation ("3-day Period"). If Buyer fails to notify Seller of his intent to proceed within the 3-day Period, this Agreement shall automatically terminate and Earnest Money, if delivered, shall be refunded to Buyer; OR
      ii. The parties may negotiate a new Purchase Price. If the parties cannot agree to a new Purchase Price within five (5) days of Seller's receipt of Buyer's notification of the Appraisal, this Agreement shall automatically terminate and Earnest Money, if delivered, shall be refunded to Buyer; OR
      iii. Buyer may terminate this Agreement. In this event, Earnest Money, if delivered, shall be refunded to Buyer.

9. **CLOSING.** *"Closing" is defined as a series of events by which Buyer and Seller satisfy all of their obligations in the Agreement. Closing is not completed until all parties have completed all requirements as stated below, as well as all other obligations under this Agreement. Any amendment of the following dates MUST BE in writing and unless otherwise provided for in this Agreement, signed by both parties. The parties further acknowledge that Seller shall not receive the proceeds of sale until the Funding Date Requirements are satisfied.*

    **A. SETTLEMENT/SIGNING DATE:** <u>March</u>  <u>28</u>  <u>2019</u> (as set forth in Para. 1) On or before the Settlement/Signing date the parties shall complete the following:
      i. Sign and deliver to the responsible closing officer all documents required to complete the transaction and to perform all other closing obligations of this Agreement; and
      ii. Provide for the delivery of all required funds, exclusive of lender funds, if any, using wired, certified or other "ready" funds acceptable to the closing officer;

    **B. FUNDING DATE (Completion of Closing):** <u>March</u>  <u>29</u>  <u>2019</u>. On or before the Funding Date the responsible party(ies) shall make all funds available to the title officer for disbursement in accordance with this Agreement. The Funding Date Requirements have been satisfied when:
      i. the title officer has all funds available to disburse as required by this Agreement; and
      ii. the title officer has recorded with the County Clerk all required documents.
      Seller shall provide all existing keys, security system/alarm codes, gate openers and garage door openers to Buyer once Funding Date Requirement are satisfied or as otherwise provided for in an Occupancy Agreement. If the Buyer is obtaining a loan for the purchase of the Property, it is the Buyer's responsibility to ensure that Buyer's lender makes available to the closing officer, wired, certified or other "ready" funds with written instructions to disburse funds, on or before the Funding Date. The failure of Buyer's lender to make funds available on or before the Funding Date, shall be deemed a default of this Agreement by the Buyer.

Authenticated U.S. Government Information... (illegible)

**REALTOR**

**EQUAL HOUSING OPPORTUNITY**

# NEW MEXICO ASSOCIATION OF REALTORS®
# PURCHASE AGREEMENT -- RESIDENTIAL RESALE -- 2019

10. **POSSESSION DATE.**
   A. Seller shall deliver possession of the Property to Buyer on the Possession Date as set forth below:
   ☑ At time Funding Date Requirements are satisfied
   ☐ Other:_____
   B. Unless otherwise agreed to in writing, upon Possession Date, or the date the Property is surrendered to Buyer per a Seller Occupancy Agreement, if applicable, Seller shall have all his personal belongings and all debris and garbage removed from the Property. In the event Seller fails to remove his personal property, Buyer shall not be responsible for storage of Seller's personal property, may dispose of Sellers personal property in any manner Buyer deems appropriate, in Buyer's sole discretion, and shall not be liable to Seller for the value of Seller's personal property. In the event Seller fails to remove all debris and garbage from the Property, Seller shall be liable to Buyer for all costs associated with removal of such debris and garbage.
   C. If Possession Date is other than the time the Funding Date Requirements are satisfied, then Buyer and Seller shall execute a separate written agreement outlining the terms agreed to by the parties. (See NMAR Form 2201-Occupancy Agreement -- Buyer or NMAR Form 2202 -- Occupancy Agreement - Seller)
   D. Seller shall maintain homeowners and liability insurance on Property through Possession Date, unless otherwise provided for in an Occupancy Agreement.

11. **COSTS TO BE PAID.** Buyer or Seller, as applicable, shall pay the following marked items: **DO NOT USE THIS SECTION FOR SELLER CONCESSIONS/CREDITS TO BUYER; USE AN ADDENDUM**

| LOAN RELATED COSTS AND FEES | Buyer | Seller | Not Required | TITLE COMPANY CLOSING COSTS | Buyer | Seller | Not Required |
|---|---|---|---|---|---|---|---|
| Appraisal Fee | | x | | Closing Fee | | x | |
| Appraisal Re-inspection Fee | | x | | Pro-Rata Data Search | | x | |
| Credit Report | x | | | Legal Document Preparation | | x | |
| Loan Assumption /Transfer | x | | | Special Assessment Search | | x | |
| Origination Charge: up to ☐$ ☐% | x | | | Buyer Recording Fees | x | | |
| Points -- Buydown | x | | | Seller Recording Fees | | x | |
| Points -- Discount | x | | | Other: n/a | | | |
| Tax Service Fee | | x | | | | | |
| Flood Zone Certification | | x | | Other: n/a | | | |
| Other: n/a | | | | | | | |
| Other: n/a | | | | **POLICY PREMIUMS** | | | |
| | | | | Initial Title Commitment | | x | |
| | | | | Standard Owner's Policy | | x | |
| **PREPAIDS REQUIRED BY LENDER** | | | | Mortgagee's Policy | x | | |
| Flood Insurance | x | | | Mortgagee's Policy Endorsements | x | | |
| Hazard Insurance | x | | | Other: n/a | | | |
| Interest | x | | | | | | |
| PMI or MIP | x | | | Any fees charged by the title company to revise the title commitment, shall be borne by the party who necessitated the revision. In the event a third-party document necessitates the revision (e.g. survey, appraisal, etc.), the parties agree to equally split any fee charged. | | | |
| Taxes | x | | | | | | |
| **MANUFACTURED HOME COSTS** | | | | **MISCELLANEOUS** | | | |
| Foundation Inspection | | | x | Survey (Para. 19) | | x | |
| Foundation Repairs | | | x | Impact Fees | x | | |
| Re-Inspection Fees | | | x | Transfer Fees (e.g. HOA) | | | x |
| DMV Title Transfer | | | x | Certificate Fee (e.g. HOA) | | | x |
| Deactivation Fees | | | x | Other: n/a | | | |
| Other: n/a | | | | Other: n/a | | | |
| Other: n/a | | | | Other: n/a | | | |

Buyer shall pay all other allowed direct loan costs.

NMAR Form 2104 (2019 JAN) Page 5 of 15          ©2008 New Mexico Association of REALTORS®          Buyer [CR] [DRO] Seller [ATC] [as]



This copyright protected form was created using Instanet Forms and is licensed for use by Beatriz Lozano.

Instanet FORMS



# NEW MEXICO ASSOCIATION OF REALTORS®
## PURCHASE AGREEMENT – RESIDENTIAL RESALE – 2019

**12. ☐ IRS 1031 TAX-DEFERRED EXCHANGE.** ☐ Buyer ☐ Seller intends to use this Property to accomplish a 1031 Tax-Deferred Exchange. The parties shall cooperate with one another in signing and completing any documents required. The non-exchanging party shall bear no additional expense.

**13. PRORATIONS.** Seller shall be responsible for disclosing all applicable property specific fees, or lease agreements, private memberships and/or association fees or dues, taxes and contract service agreements, all of which are to be prorated through Settlement/Signing Date. Any equipment rental or contract service agreement (e.g. alarm system, satellite system, propane tank (to include any remaining propane gas therein), private refuse collection, road maintenance, etc.) shall be handled directly between the Buyer and Seller; the title or escrow company shall not be responsible for proration thereof.

**14. ASSESSMENTS.** For all bonds, impact fees and assessments other than PID assessments (collectively "assessments"), Buyer shall have **3** days after receipt of the title commitment to object in writing to the amounts of such assessments and to terminate this Agreement ("Objection Date"). In the event Buyer submits written objections by the Objection Date, the Earnest Money, if delivered, shall be refunded to the Buyer. If Buyer fails to notify Seller of Buyer's objections by the Objection Date, Buyer shall be deemed to have accepted the amounts of any assessment and shall have waived his right to terminate this Agreement based thereon. In the event Buyer does not object, Buyer shall assume all assessments that are part of or paid with the property tax bill. If other assessments are a lien upon the Property, the current installment shall be prorated through Settlement/Signing Date. Buyer shall assume future installments. Buyer shall pay all future assessments for improvements. **NOTE:** If Property is located in a Public Improvement District (PID), Seller must provide a Public Improvement District Disclosure to Buyer PRIOR to entering into this Agreement. See Para. 18(B).

**15. EXAMINATION OF TITLE; LIENS; DEED.**

**A.** ☐ BUYER ☒ SELLER shall order a title commitment from <u>Seller's Choice of Title Company</u>
(Title Company)
within **2** days after the ☒ **Date Of Acceptance** ☐ **Date TOM Fee is Delivered** ☐ **Date Earnest Money is Delivered**. After receipt of the title commitment and all documents referred to therein, Buyer shall have **3** days ("Review Period") to review and object to title exceptions. Exceptions to the title, including the Standard Exceptions, shall be deemed approved unless Buyer delivers written objections to the Seller within the Review Period. If Seller is unwilling or unable to remove such exception(s) before the Settlement/Signing Date, Seller shall provide written notice to Buyer within **3** days after receipt of Buyer's objection and Buyer may choose to close subject to exceptions, remove the exceptions at Buyer's expense or terminate this Agreement. If Buyer terminates this Agreement, Earnest Money, if delivered, shall be refunded to Buyer.

**B.** Seller shall satisfy any judgments and liens, including but not limited to, all mechanics' and materialmen's liens of record on or before Funding Date and shall indemnify and hold Buyer harmless from any liens filed of record after Settlement/Signing Date and which arise out of any claim related to the providing of materials or services to improve the Property as authorized by Seller or Seller's agents, unless otherwise agreed to in writing.

**C.** Seller shall convey the Property by ☒ General Warranty Deed ☐ Special Warranty Deed ☐ Other Deed (describe) _____ subject only to any matters identified in the title commitment and not objected to by Buyer as provided in Para. 15A. The legal description contained in the deed shall be the same legal description contained in the title commitment and any survey required under Para. 19.

**16. FIRPTA.** The Foreign Investment in Real Property Tax Act of 1980 (FIRPTA) requires buyers who purchase real property from foreign sellers to withhold a portion of the amount realized from the sale of the real property for remittance to the Internal Revenue Service (IRS). In the event the seller(s) is **NOT** a foreign person, FIRPTA requires the buyer to obtain proof of the seller's non-foreign status in order to avoid withholding requirements. Exceptions may apply. For more information, refer to NMAR Form 2304 – Information Sheet – FIRPTA & Taxation of Foreign Persons Receiving Rental Income from U.S. Property.

FIRPTA Exception (most common): The sales price of the property is not more than $300,000 **AND** buyer warrants that buyer shall be using the property as buyer's primary residence ("Exception").

*NOTE: BOTH MUST APPLY TO QUALIFY AS AN EXCEPTION.*
**Exception** ☒ does ☐ does not apply [CR] [DRO] **Buyer(s) Initials**

This copyright protected form was created using Instanet Forms and is licensed for use by Beatriz Lozano.

Buyer [CR] [DRO] Seller A.L.G. [as]



# NEW MEXICO ASSOCIATION OF REALTORS®
## PURCHASE AGREEMENT – RESIDENTIAL RESALE – 2019

In the event the above Exception to FIRPTA does not apply, then prior to or at closing, Seller(s) shall provide to Buyer or to a Qualified Substitute (generally, the Title Company) either a Non-Foreign Seller Affidavit(s) **OR** a letter from the IRS indicating Seller(s) is exempt from withholding. In the event Seller(s) fails to do so, Buyer shall have the right to withhold the applicable percentage of the amount realized from the sale of the Property for remittance to the IRS.

**17. INSURANCE CONTINGENCY/ APPLICATION.**
   **A. APPLICATION.** Buyer shall make application for insurance within __7__ days after Date of Acceptance of this Agreement. If Buyer fails to make application to the insurance company within the agreed time, this insurance contingency shall be deemed waived.
   **B. CONTINGENCY.** Provided the Contingency Deadline as set forth below in Para. 17(C) is met, this Agreement is conditioned on the following:
   i)   Buyer's ability to obtain a homeowner's or property insurance quote on the Property at normal and customary premium rates; AND.
   ii)  Seller's claim history having no impact on the Buyer's insurance in the future.
   **Buyer understands that an insurance company may cancel or change the terms of a homeowner's insurance policy/quote for any reason prior to close of escrow or within sixty days after issuance of the homeowner's policy/quote (which generally occurs at close of escrow).**
   **C. CONTINGENCY DEADLINE.** The Insurance Contingency set forth in Para. 17(B) above shall be deemed satisfied, unless within __10__ days after Date of Acceptance of this Agreement, Buyer delivers written notice to Seller that one or more of the above insurance contingencies cannot be satisfied along with documentation from the insurance provider stating the same. ("Contingency Deadline"). In the event Buyer delivers such notice and documentation to Seller by the Contingency Deadline, the Purchase Agreement shall terminate and the Earnest Money, if delivered, shall be refunded to Buyer.

**18. DISCLOSURES AND DOCUMENTS.**
   **A. LEAD BASED PAINT (LBP).** Is any part of this Property a residence built before 1978?  ☐ Yes  ☑ No  If the answer is "Yes", attach NMAR Form 5112 LBP Addendum to Purchase Agreement. Property is subject to the LBP Renovation Repair and Painting Program. See NMAR Form 2315 – Information Sheet LBP Renovation Repair & Painting Program.
   **B. PUBLIC IMPROVEMENT DISTRICT ("PID").** Is this Property located in a PID?  ☐ Yes  ☑ No  If the answer is "Yes", SELLER MAY NOT ACCEPT AN OFFER FROM BUYER UNTIL SPECIFIC DISCLOSURES REGARDING THE PID HAVE BEEN MADE TO THE BUYER.
   _____ _____**Buyer(s) Initials.** Buyer(s) hereby acknowledge receipt of the PID Disclosure on the Property. See NMAR Form 4550 - Public Improvement District Disclosure Form and NMAR Form 4500 – Information Sheet Public Improvement District.
   **C. HOMEOWNERS' OR CONDOMINIUM (UNIT) OWNERS' ASSOCIATION ("HOA/COA").** Is the Property located in a (HOA) or (COA)?  ☐ Yes  ☑ No  If the answer is Yes", Seller shall provide Buyer with specific documents pertaining to the Property and HOA and/or COA, as applicable. For HOAs, see NMAR Form 4600 – Information Sheet HOA. NMAR Form 4650 – Seller's Disclosure of HOA Documents and NMAR Form 4700 - HOA Request for Disclosure Certificate. For COAs, see NMAR Form 2302A – Re-Sale Certificate for COAs.
   **D. PROPERTY TAX DISCLOSURE.** See NMAR Form 3275 - Information Sheet Estimated Property Tax Levy Disclosure.
   **CR** **DRW Buyer(s) Initials.** Buyer(s) hereby acknowledges receipt of the Estimated Property Tax Levy on the Property, attached as Exhibit __A__ and understands that said Estimated Property Tax Levy is based on the LISTING price of the Property; OR
   _____**Buyer(s) Initials.** Buyer(s) hereby acknowledges that the Estimated Property Tax Levy on the Property is not readily available and does hereby waive the right to receive the Estimated Property Tax Levy.
   **E. SEPTIC SYSTEM.** Does the Property include an on-site liquid waste system?  ☐ Yes  ☑ No  If the answer is "Yes", the transfer of the Property is subject to regulations of the New Mexico Environment Department governing on-site liquid waste systems which includes the requirement that Seller have an inspection conducted by a licensed septic system inspector prior to transfer. Attach NMAR Form 5120A – Septic System Contingency Addendum. See NMAR Form 2308 – Information Sheet Septic Systems.

NMAR Form 2104 (2019 JAN)  Page 7 of 15      ©2008 New Mexico Association of REALTORS®      Buyer **CR** **DRW** Seller **MG** **as**

This copyright protected form was created using Instanet Forms and is licensed for use by Beatriz Lozano.      Instanet FORMS


# NEW MEXICO ASSOCIATION OF REALTORS®
## PURCHASE AGREEMENT – RESIDENTIAL RESALE – 2019

**F. WELLS.** Does the Property include a well? ☐ Yes ☑ No  If the answer is "Yes", is the well ☐ Private Domestic Well ☐ Shared Domestic Well ☐ Other _____
Transfer of Property with a well is subject to the regulations of the New Mexico Office of the State Engineer, which includes the requirement that the State Engineer's Office be notified when a well changes ownership.  See NMAR Form 2307 – Information Sheet Water Rights & Wells.

**G. MANUFACTURED HOUSING.** Does the Property include a manufactured house? ☐ Yes ☑ No If the answer is "Yes", attach NMAR Form 2700 - Seller's Disclosure of Manufactured Housing.

**H. DOCUMENTS.** As used in this Sub-Para. 18(H), the Delivery Deadline is the date by which Seller shall provide and Buyer must receive any documents, reports or surveys specified.

| DOCUMENTS | DELIVERY DEADLINE | OBJECTION DEADLINE | RESOLUTION DEADLINE |
|---|---|---|---|
| Property Disclosure Statement | rec prior to offer | March 12, 2019 | March 15, 2019 |
| Road Documents | N/A | N/A | N/A |
| Water Rights Documents | N/A | N/A | N/A |
| Well Documents: See NMAR Form 2307 Information Sheet – Water Rights & Wells. (Including but not limited to: well permit, well log, shared well agreement and Change of Ownership Information notification.) | NA | N/A | N/A |
| Lease Agreements | N/A | N/A | N/A |
| Permits | N/A | N/A | N/A |
| Homeowner's Association (HOA) Documents | N/A | N/A | N/A |
| Homeowner's Association (HOA) Disclosure Certificate OR Condominium Re-Sale Certificate Must be delivered to Buyer no less than seven (7) days before the Settlement/Signing Date. | N/A | N/A _Date_ Buyer has no less than seven (7) days from receipt of the HOA Disclosure Certificate to object | N/A |
| CCR's – Restrictive covenants | March 11, 2019 | March 12, 2019 | March 15, 2019 |
| Solar Power System/Panels Documents – If Buyer will assume Solar Panel System Lease/Loan, use NMAR Form 5125 - DO NOT COMPLETE THIS SECTION | N/A N/A | N/A N/A | N/A N/A |
| Other: N/A | | | |
| **MANUFACTURED HOUSING** | | | |
| Manufactured Housing Documents – See NMAR Form 2700 Seller's Disclosure of Manufactured Housing | N/A | N/A | N/A |
| Structural Engineer Inspection | N/A | N/A | N/A |
| FHA Inspection | N/A | N/A | N/A |
| Foundation Installation | N/A | N/A | N/A |
| Manufactured Housing Division Permanent Foundation Permit | N/A | N/A | N/A |

**19. SURVEYS OR IMPROVEMENT LOCATION REPORT (ILR).** Buyer has the right to have performed the survey or ILR selected below or the right to accept an existing one. Unless otherwise agreed in writing, the party paying for the survey or ILR as indicated in Para. 11 shall select the surveyor and order the survey or ILR. **The party who agrees to pay for the survey or ILR is responsible for doing so, even if the transaction does not close.**
☑ Improvement Location Report ☐ Staked Boundary Survey ☐ American Land Title Association Survey (ALTA)
☐ Flood Plain Designation ☐ Other: _____

**A. DELIVERY DEADLINE:** Survey or ILR shall be delivered to Buyer(s) no later than: _____,
_____ or __14__ days from Date of Acceptance.
**B. OBJECTION DEADLINE:** Objections to be delivered to Seller(s) no later than: _____,
_____ or __17__ days from Date of Acceptance.
**C. RESOLUTION DEADLINE:** All objections to be resolved no later than: _____, _____
or __21__ days from Date of Acceptance.
**D. OBJECTION/RESOLUTION:** Para. 21(H) and (I) shall further govern Buyer's right to object to the Survey or ILR performed and resolution of Buyer's objections.

NMAR Form 2104 (2019 JAN) Page 8 of 15    ©2008 New Mexico Association of REALTORS®    Buyer [CR] [DRG] Seller [Alle] [as]
**This copyright protected form was created using Instanet Forms and is licensed for use by Beatriz Lezano.**    InstanetFORMS

# NEW MEXICO ASSOCIATION OF REALTORS®
## PURCHASE AGREEMENT – RESIDENTIAL RESALE – 2019

20. **BUYER'S REPRESENTATIONS.** Buyer warrants that prior to entering into this Agreement, he has thoroughly investigated the neighborhood and the areas surrounding the property, to include, but not be limited to investigation of the following: the existence of registered sex offenders or other persons convicted of crimes that may reside in the area; and the presence of any structures located, businesses operating or activities conducted in the area that, in Buyer's opinion, affects the value and/or desirability of the property. By entering into this Agreement, Buyer represents he is satisfied with the neighborhood and surrounding areas.

21. **INSPECTIONS. THE PARTIES ARE ENCOURAGED TO EMPLOY COMPETENT AND, WHERE APPROPRIATE, LICENSED PROFESSIONALS TO PERFORM ALL AGREED UPON INSPECTIONS OF THE PROPERTY.**
   A. **BUYER DUTIES AND RIGHTS.**
      i. **BUYER'S DILIGENCE, ATTENTION AND OBSERVATION.** The Buyer has the following affirmative duties:
         a) To conduct all due diligence necessary to confirm all material facts relevant to Buyer's purchase of the Property;
         b) To assure himself that the Property Buyer is purchasing is exactly what Buyer is intending to purchase;
         c) To make himself aware of the physical condition of the Property through his own diligent attention and observation;
         d) To investigate the legal, practical and technical implications of all disclosed, known or discovered facts regarding the Property and;
         e) To thoroughly review all written reports provided by professionals and discuss the results of such reports and inspections with the professionals who created the report and/or conducted the inspection.
      ii. **RIGHT TO CONDUCT INSPECTIONS.** The Buyer is advised to exercise all his rights under and in accordance with this Agreement to investigate the Property. Unless otherwise waived, Buyer(s) may complete any and all inspections of the Property that he deems necessary. These inspections may include, but are not limited to the following: home, electrical, heating/air conditioning, plumbing, roof, structural, lead-based paint (including risk assessment, paint inspection or both), well equipment (pumps, pressure tanks, lines), well potability tests, well water yield tests, pool/spa/hot tub equipment, wood destroying insects, dry rot, radon, mold, square foot measurement, sewer line inspections, septic inspections, ductwork, phase one environmental and soil tests. The Buyer's rights to object to inspections and terminate the Agreement based on inspections are set forth in Para. 21(H). Buyer is advised to thoroughly review those rights.
      iii. **SQUARE FOOTAGE. BUYER IS AWARE THAT ANY REFERENCE TO THE SQUARE FOOTAGE OF THE PREMISES, BOTH THE REAL PROPERTY (LAND) AND IMPROVEMENTS THEREON, IS APPROXIMATE. IF SQUARE FOOTAGE IS A MATERIAL MATTER TO THE BUYER, THE BUYER SHALL INVESTIGATE THE SQUARE FOOTAGE DURING THE INSPECTION PERIOD.** ☐ *CR* ☐ *DRO* **Buyer Initials.**
   B. **SELLER'S DUTY TO DISCLOSE.** Seller is required to disclose to Buyer any adverse material defects known to him about the Property. However, Seller does not have an obligation to inspect the Property for the Buyer's benefit or to repair, correct or otherwise cure known defects that are disclosed to Buyer or previously unknown defects that are discovered by Buyer or Buyer's inspectors. Seller shall make the Property available to Buyer for inspections.
   C. **AVAILABILITY OF UTILITIES FOR INSPECTIONS.**
      ☐ Buyer ☑ Seller shall be responsible for paying any charges required by the utility companies to have utilities turned on for inspection purposes. In no event shall Buyer be responsible for bringing the Property up to code or for paying unpaid utility bills. If utilities are on as of Date of Acceptance, Seller shall maintain utilities through Possession Date (Para. 10) or date otherwise stated in an Occupancy Agreement.
   D. **INSPECTOR SELECTION.** NOTWITHSTANDING PARA. 19, UNLESS OTHERWISE AGREED TO IN WRITING, BUYER SHALL HAVE THE RIGHT TO SELECT ALL INSPECTORS AND ORDER ALL INSPECTIONS EVEN IF SELLER HAS AGREED TO PAY FOR THE INSPECTION(S).

This copyright protected form was created using Instanet Forms and is licensed for use by Beatriz Lozano.      InstanetFORMS



# NEW MEXICO ASSOCIATION OF REALTORS®
# PURCHASE AGREEMENT – RESIDENTIAL RESALE – 2019

**E. PAYMENT OF INSPECTIONS. BUYER SHALL PAY FOR ALL INSPECTIONS EXCEPT THE FOLLOWING, WHICH SHALL BE PAID BY SELLER.**
Full home inspection, wood destroying organism (dry rot) and pest inspection
**NOTE: THE PARTY WHO AGREES TO PAY FOR THE INSPECTION IS RESPONSIBLE FOR DOING SO, EVEN IF THE TRANSACTION DOES NOT CLOSE.**

**F. INSPECTION DEADLINES.** Unless otherwise provided for in this Agreement, the following applies:

   i. **Delivery Deadline:** Inspections to be completed and reports delivered to Buyer(s) no later than: _____March_____ _11th_ , _2019_ or _____ days from Date of Acceptance.

   ii. **Objection Deadline:** Objections to be delivered to Seller(s) no later than: _____March_____ _12th_ , _2019_ or _____ days from Date of Acceptance.

   iii. **Resolution Deadline:** Written agreement for resolution of all objections to be agreed upon no later than: _____March_____ _15th_ , _2019_ or _____ days from Date of Acceptance.

**G. WAIVER OF INSPECTIONS. Buyer to initial if applicable.**

_____ Buyer waives ALL inspections unless required by law or Buyer's lender.

_____ Buyer waives ALL inspections.

_____ Buyer waives the following inspections:_____
_____

**H. BUYER'S OBJECTIONS/TERMINATION.**

   i. If Buyer has reasonable objections to any issue or condition disclosed by any document (Para. 18), survey or ILR (Para. 19) and/or inspection (Para. 21), **then no later than the applicable Objection Deadline**, Buyer may OBJECT and request that Seller cure the issue/condition (NMAR Form 5109 – OR W Agreement) or Buyer may TERMINATE this Agreement (NMAR Form 5105 – Termination Agreement). Buyer's objections or termination must be in writing. If Buyer **OBJECTS AND ASKS SELLER TO CURE**, Buyer MUST produce with his objections a copy of the document, survey and/or SECTION of the inspection report on which Buyer's objections are based; production of such document, survey or report is NOT required if Buyer **TERMINATES WITHOUT ASKING SELLER TO CURE OBJECTIONS.** If Buyer timely elects to terminate, Earnest Money, if delivered, shall be refunded to Buyer. Buyer's failure to timely deliver to Seller his objection or termination shall be deemed a waiver of Buyer's right to object or terminate and of the applicable contingency.

   ii. If Seller is responsible for ordering a report or document, and Buyer does not receive that report or document by the Delivery Deadline, Buyer and Seller may agree to extend the applicable deadlines or Buyer may terminate the Agreement. If Buyer elects to terminate, Earnest Money, if delivered, shall be refunded to Buyer.

   iii. If Buyer is responsible for ordering a report or document, and fails to do so in a timely manner, so that Buyer does not have the report or document by the Objection Deadline, Buyer may not use the failure to receive the report or document as the rationale for terminating the Agreement.

**I. RESOLUTION.** If Buyer requests a cure of his objections, Seller may agree to cure Buyer's objections as requested, provide an alternative cure, or refuse to correct/address Buyer's objections (Collectively Seller's Response). Buyer may not withdraw his objections and terminate the Agreement prior to Seller's Response. If in Seller's Response, Seller does not agree to cure all Buyer's objections in the manner requested by Buyer, then Buyer may terminate the Agreement or continue to negotiate with Seller. If negotiations continue, and Buyer and Seller are unable to reach a Resolution by the Resolution Deadline then **THIS AGREEMENT SHALL TERMINATE** and Earnest Money, if delivered, shall be refunded to Buyer.

**J. OBJECTIONS COMPLETION.** In the event Seller agrees to complete or pay for any repairs prior to closing, Seller shall complete the repairs no later than _5_ days prior to Settlement/Signing Date.

**K. BUYER'S ENTRY.** Seller shall provide reasonable access to Buyer and Buyer's inspectors. Buyer shall return the Property to the condition it was in prior to any entry, test and/or inspection by Buyer. Buyer shall be liable to Seller for any damages that occur to the Property as a result of any inspection conducted by Buyer, his Broker(s), agents, inspectors, contractors and/or employees (collectively "Buyer's Representatives") and Buyer agrees to hold Seller harmless, indemnify and defend Seller from any and all claims, liabilities, liens, losses, expenses (including reasonable attorneys' fees and costs), and/or damages arising out of or related to any entry, inspections and/or tests conducted by Buyer or Buyer's Representative. Buyer and Buyer's Representative are NOT permitted on the Property without prior notification to and approval by Seller or Seller's Broker.



This copyright protected form was created using Instanet Forms and is licensed for use by Beatriz Lozano.

AuthentiSign ID: DEXB2DFE-BA3C4AD6-A285-BF9A0E0FEBDA5



# NEW MEXICO ASSOCIATION OF REALTORS®
## PURCHASE AGREEMENT – RESIDENTIAL RESALE – 2019



22. **TERMINATION AND DISTRIBUTION OF EARNEST MONEY.** If this Agreement terminates in accordance with the terms of this Agreement, the parties shall execute a Termination Agreement (NMAR Form 5105) and in the event Earnest Money has been delivered to a Title Company/Escrow Agent, the parties shall execute an Earnest Money Distribution Form that provides for distribution of the Earnest Money in accordance with the terms of this Agreement. _____ _____ Buyer Initials. **AT G** | **aS** | Seller Initials.

23. **SERVICE PROVIDER RECOMMENDATIONS.** If Broker(s) recommends a builder, contractor, escrow company, title company, pest control service, appraiser, lender, home inspection company or home warranty company or any other person or entity to Seller or Buyer for any purpose, such recommendation shall be independently investigated and evaluated by Seller or Buyer, who hereby acknowledges that any decision to enter into any contractual arrangement with any such person or entity recommended by Broker shall be based solely upon such independent investigation and evaluation.

24. **HOME WARRANTY CONTRACT.** Buyer is advised to investigate the various home warranty plans available for purchase. The parties acknowledge that different home warranty plans have different coverage options, exclusions, limitations and service fees and most plans exclude pre-existing conditions. Neither the Seller, nor the Broker, is responsible for home warranty coverage or lack thereof. The parties acknowledge that a Home Warranty Service Contract provider may conduct an inspection of the Property but does not always do so.
    ☐ A Home Warranty Plan shall be ordered by ☐ Buyer ☐ Seller to be issued by _____
    at a cost not to exceed $ _____ , to be paid for by ☐ Buyer ☐ Seller.
    ☐ Buyer declines the purchase of a Home Warranty Plan.

25. **DISCLAIMER.** The Property is sold in its current condition including, but not limited to, the nature, location, amount, sufficiency or suitability of the following: current or future value; future income to be derived therefrom; current or future production; condition; size; location of utility lines; location of sewer and water lines; availability of utility services or the possibility of extending improvements (paving, sewer, water, utilities, access) to the Property; easements with which the Property is burdened or benefited; lot boundaries; adjacent property zoning; physical and legal access; soil conditions; permits, zoning, or code compliance; lot size or acreage; improvements or square footage of improvements; and water rights. **Broker has not investigated and is not responsible for the forgoing aspects of the Property, among which lot size, acreage, and square footage may have been approximated, but are not warranted as accurate.** Buyer shall have had full and fair opportunity to inspect and judge all aspects of the Property with professional assistance of Buyer's choosing prior to settlement Buyer and Seller acknowledge that Brokers' only role in this transaction is to provide real estate advice to Broker's respective client and/or customer and real estate information to the parties. For all other advice or information that may affect this transaction, including but not limited to financial and legal advice, the parties shall rely on other professionals. **CR** | DRO Buyer(s) Initials. **AT G** | **aS** Seller(s) Initials.

26. **MAINTENANCE.** Until the Possession Date, Seller shall maintain the Property and all aspects thereof including, but not limited to the following: heating; air conditioning; electrical; roofs; solar; septic systems; well and well equipment; gutters and downspouts; sprinklers; plumbing systems, including the water heater; pool and spa systems; appliances; and other mechanical apparatuses. **If utilities are on as of Date of Acceptance, Seller shall maintain utilities through Possession Date (Para.10) or date otherwise stated in an Occupancy Agreement. It is the Buyer's responsibility to arrange to transfer utilities into Buyer's name on Possession Date or date otherwise stated in an Occupancy Agreement.** Seller shall deliver the Property, all of the foregoing, and all other aspects thereof to Buyer in the same condition as of the Date of Acceptance, reasonable wear and tear excepted. The following items are specifically excluded from the above:
    n/a

27. **PRE-CLOSING WALK-THROUGH.** Within ___1___ days prior to Settlement/Signing Date, Seller shall allow reasonable access to conduct a walk-through of the Property for the purpose of satisfying Buyer that any corrections or repairs agreed to by the Seller have been completed, warranted items are in working condition and the Property is in the same condition as on the Date of Acceptance, reasonable wear and tear excepted. See NMAR Form 5110 - Walk-Through Statement.

This copyright protected form was created using Instanet Forms and is licensed for use by Beatriz Lozano.   InstanetFORMS



**NEW MEXICO ASSOCIATION OF REALTORS®**
**PURCHASE AGREEMENT – RESIDENTIAL RESALE – 2019**

28. **CONSENT TO THE ELECTRONIC TRANSMISSION OF DOCUMENTS AND TO THE USE OF ELECTRONIC SIGNATURES.** The parties ☑ do ☐ do not consent to conduct any business related to and/or required under this Agreement by electronic means, including, but not limited to the receipt of electronic records and the use of electronic signatures. Subject to applicable law, electronic signatures shall have the same legal validity and effect as original hand-written signatures. Nothing herein prohibits the parties from conducting business by non-electronic means. If a party has consented to receive records electronically and/or to the use of electronic signatures, that party may withdraw consent at any point in the transaction by delivering written notice to the other party.

29. **ASSIGNMENT.** Buyer ☐ may ☑ may not sell, assign or transfer the Buyer's rights or obligations under this Agreement, or any interest herein.

30. **HEIRS AND ASSIGNS.** This Agreement shall apply to, be binding upon and enforceable against and inure to the benefit of the parties hereto and their respective representatives, successors, permitted assigns, heirs and estates.

31. **DEFINITIONS.** The following terms as used herein shall have the following meanings:
    A. **APPRAISAL** means a current estimated market value of the Property as established by a licensed real estate appraiser. In the event the Buyer is obtaining a loan, the term refers to an appraisal conducted by a real estate appraiser approved by the lender.
    B. **BROKER** includes the Buyer's and Seller's brokers.
    C. If a specific **DATE** is stated as a deadline in this Agreement, then that date <u>IS</u> the **FINAL** day for performance; and if that date falls on a Saturday, Sunday or a legal Holiday, the date <u>does not</u> extend to the next business day.
    D. **DATE OF ACCEPTANCE** is the date this Agreement is fully executed and delivered.
    E. **DAY**(S) shall be determined on a "calendar day" basis and if the **FINAL** day for performance falls on a Saturday, Sunday or legal Holiday, the time therefore shall be extended to the next business day. Legal Holidays are described as New Year's Day, Martin Luther King Jr.'s Birthday, President's Day, Memorial Day, Independence Day, Labor Day, Columbus Day, Veteran's Day, Thanksgiving Day, and Christmas.
    F. **DELIVERED** means personally delivered or by any method where there is evidence of receipt. In the event the parties have agreed to electronic transmission of documents, a facsimile or e-mail transmission of a copy of this or any related document shall constitute delivery of that document. When an item is delivered to the real estate Broker who is working with or who represents the Buyer or Seller, it is considered delivered to the Buyer or Seller respectively, except if the same Broker works for or represents both Buyer and Seller, in which case, the item must be delivered to the Buyer or Seller, as applicable. **EXCEPTION: For the purposes of the TOM Fee, delivery of the TOM Fee to the Listing Broker constitutes delivery to the Seller,** *EVEN if the same Broker is working with both Buyer and Seller.*
    G. **DEADLINES.** Any "deadline(s)" can be expressed either as a calendar date (See Para. 31(C)) or as a number of days (See Para. 31(E)).
    H. **ELECTRONIC** means relating to technology having electrical, digital, magnetic, wireless, telephonic, optical, electromagnetic or similar capabilities and includes, but is not limited to, facsimile and e-mail.
    I. **ELECTRONIC RECORD** means a record created, generated, sent, communicated, received or stored by electronic means.
    J. **ELECTRONIC SIGNATURE** means an electronic sound, symbol or process attached to or logically associated with a record and executed or adopted by a person with the intent to sign the record.
    K. **FIXTURE** means an article which was once personal property, but which has now become a part of the Property because the article has been fastened or affixed to the Property.
    L. **MASCULINE** includes the feminine.
    M. **PERSONAL PROPERTY** means a moveable article that is NOT affixed or attached to the Property.
    N. **RESOLUTION** means the Buyer and Seller have a written agreement regarding how all Buyers' objections shall be resolved.
    O. **SINGULAR** includes the plural.
    P. **STANDARD EXCEPTIONS** means those common risks as set forth in the title commitment for which the title insurance policy does NOT provide coverage. These printed exceptions are matters outside the Title Company's search of the public records, and therefore special requirements must be met in order to delete them and provide the insured with the additional/extended coverage.

.uthenticaan No 05100010-79CG4G93-A785-E68590853B8A5



# NEW MEXICO ASSOCIATION OF REALTORS®
## PURCHASE AGREEMENT – RESIDENTIAL RESALE – 2019

**32. RISK OF LOSS.** Prior to Funding Date, Seller shall bear the risk of fire or other casualty, and in the event of loss, Buyer shall have the option (to be exercised by written notice to Seller within 5 days after receipt of notice of loss) of terminating this Agreement and receiving a refund of the Earnest Money, if delivered, or closing and receiving assignment of Seller's portion of the insurance proceeds, if any, at Funding Date. If Buyer fails to timely notify Seller of Buyer's election, Buyer shall be deemed to have elected to proceed to Closing.

**33. FLOOD HAZARD ZONE.** If the Property is located in an area, which is designated as a special flood hazard area, Buyer may be required to purchase flood insurance in order to obtain a loan secured by the Property from any federally regulated financial institution or a loan insured or guaranteed by an agency of the U.S. Government.

**34. MEDIATION.** If a dispute arises between the parties relating to this Agreement, the parties shall submit the dispute to mediation, jointly appoint a mediator and share equally the costs of the mediation. If a mediator cannot be agreed upon or mediation is unsuccessful, the parties may enforce their rights and obligations under this Agreement in any manner provided by New Mexico law. For more information, see NMAR Form 5118 - Information Sheet - Mediation Information for Clients and Customers.

**35. EARNEST MONEY DISPUTE.** Generally, title or escrow companies will not release Earnest Money without first receiving an Earnest Money Distribution Agreement signed by all parties to this Agreement (NMAR Form 5105B). If the parties cannot come to an agreement on the how Earnest Money shall be distributed, Para. 34 shall apply. If the parties cannot reach a resolution through mediation and proceed to litigation, at the conclusion of the litigation the court shall issue a judgment setting forth how Earnest Money shall be apportioned. Either party may present this judgment to the title or escrow company for distribution of the Earnest Money in accordance with the judgment. Parties to all Earnest Money disputes are urged to review NMAR Form 2310 – Earnest Money Dispute Information Sheet, and to consult an attorney to fully understand all their rights and remedies.

**36. DEFAULT.** Any default under this Agreement shall be treated as a material default, regardless of whether the party's action or inaction is specifically classified as a default herein. Additionally, time is of the essence and failure of a party to timely make payment, perform or satisfy any other condition of this Agreement in accordance with this Agreement shall be considered a material default. Generally, a material default relieves the non-defaulting party from further performance under this Agreement; however, the non-defaulting party may elect *not* to terminate this Agreement. If the non-defaulting party elects to terminate this Agreement, he may also elect to retain the Earnest Money, if delivered, and pursue any additional remedies allowable by law, including specific performance. In the event, however, the non-defaulting party elects to treat this Agreement as being in full force and effect, the non-defaulting party remains responsible for all obligations and retains all rights and remedies available under this Agreement.

**37. ATTORNEY FEES AND COSTS.** Should any aspect of this Agreement result in arbitration or litigation, the prevailing party of such action shall be entitled to an award of reasonable attorneys' fees and court costs.

**38. FAIR HOUSING.** Buyer and Seller understand that the Fair Housing Act and the New Mexico Human Rights Act prohibit discrimination in the sale or financing of housing on the basis of race, age (this covers protection for people with children under age 18 and pregnant women), color, religion, sex, sexual orientation, gender identity, familial status, spousal affiliation, physical or mental handicap, national origin or ancestry.

**39. COUNTERPARTS.** This agreement may be executed in one or more counterparts, each of which is deemed to be an original, and all of which shall together constitute one and the same instrument.

**40. GOVERNING LAW AND VENUE.** This Agreement is to be construed in accordance with and governed by the internal laws of the State of New Mexico without giving effect to any choice of law rule that would cause the application of the laws of any jurisdiction other than the internal laws of the State of New Mexico to the rights and duties of the parties. Each party hereby irrevocably consents to the jurisdiction and venue of the state and federal courts located in the county in which the Property or any portion of the Property is located in connection with any claim, action, suit, or proceeding relating to this Agreement and agrees that all suits or proceedings relating to this Agreement shall be brought only in such courts.

**41. SEVERABILITY.** If any portion of this Agreement is found by any court of competent jurisdiction to be invalid or unenforceable, the remainder of this Agreement shall remain in full force and effect.

**42. MULTIPLE BUYERS.** Each Buyer to this Agreement is jointly and severally liable for all obligations under this Agreement. In the event any buyer should be unable to perform under this Agreement (due to death or incapacity) the remaining Buyer(s) shall continue to be obligated under this Agreement.

NMAR Form 2104 (2019 JAN)   Page 13 of 15        ©2008 New Mexico Association of REALTORS®    Buyer _CR_ _DRW_   Seller _BTG_ _as_

This copyright protected form was created using Instanet Forms and is licensed for use by Beatrix Lozano.        InstanetFORMS





Authenticated via DocuSign Envelope ID: EF9C44B6-A236-4403BD3D82A5

## NEW MEXICO ASSOCIATION OF REALTORS®
## PURCHASE AGREEMENT – RESIDENTIAL RESALE – 2019

**43. AUTHORITY OF SIGNORS.** If Buyer or Seller is a corporation, partnership, estate, trust, limited liability company or other entity, the person signing this Agreement on its behalf warrants his authority to do so and to bind the Buyer or Seller for which he is signing.

**44. BUYER AND SELLER AUTHORIZATIONS.** Unless otherwise instructed in writing, with respect to the real estate transaction that is the subject of this Agreement, Seller and Buyer hereby authorize the following: the Title Company, Lender, Escrow Agent and their representatives to provide a copy of any and all loan estimates, closing disclosures, other settlement statements and title documents to the Seller's and Buyer's respective Brokers; the Title Company to deliver any Title Company generated settlement statement(s), in its entirety (Seller and Buyer's information) to both the Seller and Buyer and their respective Brokers; and his respective Broker to be present for the Closing

**45. SURVIVAL OF OBLIGATION.** The following Paragraphs will survive Closing of the Property: 5(D) and (E), 10-14, 20, 21, 23-27, 30, 34-37, 39-41 and 44.

**46. FORCE MAJEURE.** Neither party shall be liable for delay or failure to perform any obligation under this Agreement if the delay or failure is caused by any circumstance beyond their reasonable control, including but not limited to, acts of God, war, civil unrest or industrial action.

**47. ENTIRE AGREEMENT AND AMENDMENTS IN WRITING.** The parties understand that this offer, if accepted in writing by Seller and delivered to Buyer, constitutes a legally binding contract. This Agreement, together with the following addenda and any exhibits referred to in this Agreement, contains the entire Agreement of the parties and supersedes all prior agreements or representations with respect to the Property, which are not expressly set forth herein. **THIS AGREEMENT MAY BE MODIFIED ONLY BY *WRITTEN AGREEMENT* OF THE PARTIES.**

☑ Addendum No. _1_ (NMAR Form 5101 or 2300)
☐ Buyer's Sale Contingency Addendum (NMAR Form 2503)
☐ Buyer's Closing & Funding Sale Contingency (NMAR Form 2503A)
☑ Estimated Property Tax Levy Exhibit _A_
☐ Lead-Based Paint Addendum (NMAR Form 5112)
☐ Public Improvement District Disclosure (NMAR Form 4550)
☐ Other _____

☐ Occupancy Agreement – Buyer/Seller (NMAR Form 2201/2201)
☐ Real Estate Contract Addendum (NMAR Form 2402)
☐ Residential Resale Condominium Addendum (NMAR Form 2302)
☐ Septic System Contingency Addendum (NMAR Form 5120A)
☐ Seller's Financing, Mortgage or Deed of Trust Addendum (NMAR Form 2507)
☐ Other _____

**48. EXPIRATION OF OFFER.** This offer shall expire unless acceptance is delivered to Buyer or Buyer's Broker on or before **February 26 2019**, at **7:00** ☐ a.m. ☑ p.m. Mountain Time. NOTE: UNTIL SELLER ACCEPTS THIS OFFER AND DELIVERS THE AGREEMENT, BUYER MAY WITHDRAW THIS OFFER AT ANY TIME.

### OFFER BY BUYER

**WIRE FRAUD ALERT.** Criminals are hacking email accounts of real estate agents, title companies, settlement attorneys and others, resulting in fraudulent wire instructions being used to divert funds to the account of the criminal. The emails look legitimate, but they are not. Buyer and Seller are advised not to wire any funds without personally speaking with the intended recipient of the wire to confirm the routing number and the account number. Buyer and Seller should not send personal information such as social security numbers, bank account numbers and credit card numbers except through secured email or personal delivery to the intended recipient. Buyer _CR_ _Bra_

Buyer acknowledges that Buyer has read the entire Purchase Agreement and understands the provisions thereof.

| | | | |
|---|---|---|---|
| Buyer Signature | If Entity, Title of Signatory | Offer Date 02/25/2019 | 7:44 PM Time |
| Buyer Signature | If Entity, Title of Signatory | Offer Date 02/25/2019 | 7:54 PM Time |
| Buyer Name (Print) | If Entity, Name of Signatory | Email Address | |
| Buyer Name (Print) | If Entity, Name of Signatory | Email Address | |
| Buyer Address | | City    State | Zip Code |
| Buyer Home Phone | Buyer Cell Phone | Buyer Business Phone | Buyer Fax |

Seller _Arg_ _as_

uthenticaton ID: 0F1C2019-DDBC44E45-A2G5-6A7GDB2ADB1A5





# NEW MEXICO ASSOCIATION OF REALTORS®
## PURCHASE AGREEMENT – RESIDENTIAL RESALE – 2019

Seller acknowledges that Seller has read the entire Purchase Agreement and understands the provisions thereof.
Seller *(select one)*:

☐ **SELLER ACCEPTS** this Offer and agrees to sell the Property for the price and on the terms and conditions specified in this Agreement.

<u>**SELLER**</u>

| | | | |
|---|---|---|---|
| Seller Signature | If Entity, Title of Signatory | Date | Time |
| Seller Signature | If Entity, Title of Signatory | Date | Time |
| Seller Name (Print | If Entity, Name of Signatory | Email Address | |
| Seller Name (Print | If Entity, Name of Signatory | Email Address | |
| Seller Address | | City | State  Zip Code |
| Seller Home Phone | Seller Cell Phone | Seller Business Phone | Seller Fax |

☒ **REJECTS & SUBMITS a Counteroffer** (NMAR Form 5102).

☐ **REJECTS & SUBMITS an Invitation to Offer** (NMAR Form 5103).

**IF SELLER IS REJECTING THIS OFFER AND SUBMITTING EITHER A COUNTER OFFER, OR AN INVITATION TO OFFER, SELLER SHOULD NOT SIGN THIS AGREEMENT, BUT SHOULD INITIAL ALL PAGES.**

INITIALS:   SELLER  _ATG_   _[as]_

---

☐ **REJECTS** this offer.

**IF SELLER IS REJECTING THIS OFFER, SELLER SHOULD NOT SIGN THIS AGREEMENT AND DOES NOT NEED TO INITIAL ANY/ALL PAGES BUT SHOULD INITIAL BELOW.**

INITIAL HERE:  SELLER _____  _____

Buyer  _[eR]_ _[DRO]_

This copyright protected form was created using Instanet Forms and is licensed for use by Beatriz Lozano.

InstanetFORMS

Case 19-01040-t  Doc 1-1  Filed 03/25/19  Entered 03/25/19 17:46:50  Page 50 of 72


Authenticated: DE8B22E6-FBBE0A4D75-A2S5-8455000B0D28A5



# NEW MEXICO ASSOCIATION OF REALTORS®
# PURCHASE AGREEMENT – RESIDENTIAL RESALE – 2019

## THE FOLLOWING IS PROVIDED FOR INFORMATION PURPOSES ONLY.
## BROKERS ARE NOT PARTIES TO THIS AGREEMENT.

### BUYER'S BROKER

| | |
|---|---|
| Buyer's Broker Name | Buyer's Broker's NMREC License No. |
| If different, Buyer's Broker's Qualifying Broker's Name | Buyer's Broker's Qualifying Broker's NMREC License No. |
| Buyer's Brokerage Firm | Office Phone / Fax |
| Buyer's Brokerage Address / City | State / Zip Code |
| Email Address / Cell Number | Broker ☑ is ☐ is not a REALTOR® |

### SELLER'S BROKER

| | |
|---|---|
| **John C Woods** <br> Seller's Broker Name | **49429** <br> Seller's Broker's NMREC License No. |
| **Guy D Gemmer, Jr** <br> If different, Seller's Broker's Qualifying Broker's Name | **17797** <br> Seller's Broker's Qualifying Broker's NMREC License No. |
| **PS Properties** <br> Seller's Brokerage Firm | **(505) 553-2640** Office Phone / **(505) 792-6840** Fax |
| **740 San Mateo Blvd NE 1A** <br> Seller's Brokerage Address | **Albuquerque** City / **NM** State / **87108** Zip Code |
| **jcwoods1@gmail.com** <br> Email Address | **505-550-0899** Cell Number / Broker ☒ is ☐ is not a REALTOR® |

Buyer [CR] [DRO] Seller [HG] [as]

This copyright protected form was created using Instanet Forms and is licensed for use by Beatriz Lozano.

InstanetFORMS

Case 19-01040-t  Doc 1-1  Filed 03/25/19  Entered 03/25/19 17:46:50 Page 51 of 72

.uthentisign ID: DEFBQQXQ-FRRC4FRYS-A2G5-8QESQSBATHBA5





**RED FOX REALTY**



## NEW MEXICO ASSOCIATION OF REALTORS®
## ADDENDUM TO PURCHASE AGREEMENT - 2019
## ADDENDUM NO. _____1_____

This Addendum is part of the ☑ Residential ☐ Commercial ☐ Vacant Land ☐ Farm and Ranch Purchase Agreement
dated ___February___ ___25___ ___2019___ between _____
_____ ("Buyer") and _____
("Seller") and relating to the following Property:

| | | |
|---|---|---|
| 1905 Nancy Lopez Boulevard | Rio Communities | 87002 |
| Address | City | Zip Code |

SUBD: COUNTRY CLUB ESTATES D-5-27 LOT: 17 BLOCK: 1 .20 ACRE
Legal Description
or see metes & bounds description attached as Exhibit___N/A___, _____Valencia_____County, New Mexico.

Buyer and Seller agree as follows:
**Seller agrees to contribute 3% of the purchase price towards the buyers allowable closing costs. This contribution is in addition to paragraph 11 Cost To Be Paid, and may be used towards points, pre-paids and any other costs associated with the buyers closing.**

The Purchase Agreement referred to above is incorporated by reference into this Addendum.

| | | |
|---|---|---|
| Authentisign | 02/25/2019 | 7:44 PM |
| Buyer Signature 02/25/2019 7:44 PM MST | Date | Time |
| Authentisign | 02/25/2019 | 7:54 PM |
| Buyer Signature 02/25/2019 7:54 PM MST | Date | Time |
| *Alicia T. Garcia* | 2-27-19 | 9:35 AM |
| Seller Signature | Date | Time |
| Authentisign | 02/26/2019 | 10:12 PM |
| *Arlene Sanchez - Conservator for Joel M Garcia* | | |
| Seller Signature 02/26/2019 10:12:16 PM MST | Date | Time |

This form and all New Mexico Association of REALTORS® (NMAR) forms are for the sole use of NMAR members and those New Mexico Real Estate Licensees to whom NMAR has granted prior written authorization. Distribution of NMAR forms to non-NMAR members or unauthorized Real Estate Licensees is strictly prohibited. NMAR makes no warranty of the legal effectiveness or validity of this form and disclaims any liability for damages resulting from its use. By use of this form, the parties agree to the limitations set forth in this paragraph. The parties hereby release NMAR, the Real Estate Brokers, their Agents and employees from any liability arising out of the use of this form. You should consult your attorney with regards to the effectiveness, validity or consequences of any use of this form. The use of this form is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by Real Estate Licensees who are members of the National Association of REALTORS® and who subscribe to the Association's strict Code of Ethics.

NMAR Form 5101 (2019 JAN) Page 1 of 1          ©1999 REALTORS® Association of New Mexico

This copyright protected form was created using Instanet Forms and is licensed for use by Beatriz Lozano.          InstanetFORMS

Case 19-01040-t   Doc 1-1   Filed 03/25/19   Entered 03/25/19 17:46:50 Page 52 of 72

Authentisign ID: 6D651288c92E2-4A9A-BCFE-3EDDB2E6EC2F
DILOUIQIITID: USEB20H-906F-47AE-A03F-6566304D664





# NEW MEXICO ASSOCIATION OF REALTORS®
## COUNTEROFFER NO. __1__ – 2019

This Counteroffer is made a part of the ☑Residential ☐Commercial ☐Vacant Land ☐Farm and Ranch Purchase Agreement dated ___February   25   2019___ between _____

_____ , _____ ("Buyer") and _____ **J & A Garcia Trust** _____

_____ ("Seller") and relating to the purchase of the following Property:

**1905 Nancy Lopez Blvd** _____ **Belen** _____ **87002-5954**
Address                                                                          City                        Zip Code

**Subd: Country Club Estates D-5-27 Lot: 17 Block: 1 .20 Acre** _____
Legal Description

or see metes and bounds description attached as Exhibit __N/A__ , _____ **Valencia** _____ County, New Mexico;

the above-described Purchase Agreement is hereinafter referred to as "Purchase Agreement".

I.     **INCORPORATED COUNTEROFFERS.** Counteroffers that are NOT expressly referenced below are NOT incorporated into the Purchase Agreement. Counteroffers _____ N/A _____ are incorporated by reference into the Purchase Agreement, except as expressly modified by this Counteroffer.

II.     **CHANGES TO TERMS OF PURCHASE AGREEMENT.** The terms of the Purchase Agreement are changed as follows:
1. **The seller name is "J & A Garcia Trust"**
2. **The escrow officer and title company will be**
   ,
3. **The seller will pay up to $350 for all inspections**
4. **The buyers will pay for their appraisal upfront and be credited up to $600 for the cost of it by the seller at closing.**
5. **The acceptable response time to the initial offer is extended to the date and time of this counter offer.**
6. **The purchase price will be $183,500**

This form and all New Mexico Association of REALTORS® (NMAR) forms are for the sole use of NMAR members and those New Mexico Real Estate Licensees to whom NMAR has granted prior written authorization. Distribution of NMAR forms to non-NMAR members or unauthorized Real Estate Licensees is strictly prohibited. NMAR makes no warranty of the legal effectiveness or validity of this form and disclaims any liability for damages resulting from its use. By use of this form, the parties agree to the limitations set forth in this paragraph. The parties hereby release NMAR, the Real Estate Brokers, their Agents and employees from any liability arising out of the use of this form. You should consult your attorney with regards to the effectiveness, validity or consequences of any use of this form. The use of this form is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by Real Estate Licensees who are members of the National Association of REALTORS® and who subscribe to the Association's strict Code of Ethics.

NMAR Form 5102 (2019 JAN)  Page 1 of 2        ©2006 New Mexico Association of REALTORS®        Initials: Buyer [CR] [DRC] Seller [ATG] [as]

This copyright protected form was created using Instanet Forms and is licensed for use by John Woods.        InstanetFORMS

AuthentiSign ID: 5066328A-93E2-4A90-BCFF-3EDDB2E55C2F
uthentiSign ID: D5EB2011-25BF-47AE-AC5F-69E83644C634





## NEW MEXICO ASSOCIATION OF REALTORS®
## COUNTEROFFER NO. ___1___ – 2019

**III.** **UNCHANGED TERMS REMAIN THE SAME.** All other terms and conditions of the Purchase Agreement not otherwise modified by this Counteroffer remain unchanged.

**IV.** **EXPIRATION DATE/DELIVERY.** This Counteroffer will expire unless acceptance is delivered in writing to
☐ Buyer or Buyer's Broker or ☑ Seller or Seller's Broker on or before ___02/28/2019___ at ___5___
☐ a.m. ☑ p.m. Mountain Standard Time.

**V.** **WITHDRAW.** Unless acceptance is delivered in accordance with Section IV, this Counteroffer may be withdrawn at any time prior to the Expiration Date.

---

If rejecting or making a subsequent Counteroffer, party receiving this Counteroffer **SHOULD NOT** sign this Counteroffer; but should initial below, which indicates this Counteroffer was seen/reviewed.

**RECEIVING PARTY**

☐ **REJECTS & SUBMITS** Counteroffer _____ (NMAR Form 5102). INITIALS: _____ _____

☐ **REJECTS this Counteroffer.** INITIALS: _____ _____

---

**BUYER AND/OR SELLER'S SIGNATURE BELOW INDICATES BUYER AND/OR SELLER'S ACCEPTANCE OF THIS COUNTEROFFER.**

| | **BUYER** | | |
|---|---|---|---|
| ┌ Authentisign | | 02/27/2019 | 12:26 PM |
| Buyer Signature 2:26:47 PM MST | | Date | Time |
| ┌ Authentisign | | 02/27/2019 | 2:51 PM |
| Buyer Signature 2/27/2019 2:51:09 PM MST | | Date | Time |

| | **SELLER** | | |
|---|---|---|---|
| *Alicia I. Garcia* | | 2-27-19 | 9:16 A.M. |
| Seller Signature | Alicia I Garcia – Trustee of the J & A Garcia Trust | Date | Time |
| *Arlene Sanchez – Conservator for Joel M Garcia* | | 02/26/2019 | 10:02 PM |
| Seller Signature 2/26/2019 10:02:00 PM MST | Arlene Sanchez – Conservator for Joel M Garcia | Date | Time |

This copyright protected form was created using Instanet Forms and is licensed for use by John Woods.

Instanet FORMS

ENDORSED

STATE OF NEW MEXICO
COUNTY OF VALENCIA
THIRTEENTH JUDICIAL DISTRICT

NO. D-1314-CV-201801550

Stephen Guajardo and Roberta Guajardo

    Petitioners,

v.

Alicia I. Garcia,

    Respondent,

### MEMORANDUM OF LIS PENDENS

Know All men that Stephen and Roberta Guajardo, pro se litigents in the cause described below, give notice of lis pendens, by this memorandum filed in the Clerk's Office of the Thirteenth Judicial District Court of the City of Los Lunas, NM, this 25th day of January 2019, which sets forth the following:

There is now pending in the Thirteenth Judicial District Court of the City of Los Lunas, NM a certain cause by Stephen and Roberta Guajardo against Alicia I. Garcia , the object of which is to set aside a deed to Joel and Alicia Garcia , then to assigned to J & A Garcia Trust dated June 2018 and recorded in the Clerks Office of the City of Los Lunas, Valencia County.  The amount of the claim asserted is full One Hundred Percent (100%) Interest of property, and the said property is described as follows:

All that certain lot, piece or parcel of land, with the buildings and the improvements thereon and the appurtenances thereunto belonging, situate, lying and being in the City of Rio Communities, NM and being known, numbered and designated as Country club Estates D-5-27 Lot:17 Block: 1..20 Acre (Lot numbered Seventeen (17), Block numbered one (1) of country club estates, a subdivision in Valencia county, new Mexico, as the same is shown and designated on the replat of a portion of playa verde, unit two, a subdivision in the tome grant valencia county, new Mexico, on the 5th day on February, 1982 in plat cabinet "D", Page 22., which said plat is duly recorded in the Clerk's Office in the Thirteenth Judicial District Court of Los Lunas, NM.



201901186    LISPENDENS
02/01/2019 04:51:40 PM  Total Pages: 3  Fees: 10.00
Peggy Carabajal. County Clerk, Valencia County New Mexico

**EXHIBIT**

D

Land Records Corp. SW ALB10612 VL 201901186.001

The name of the person who estate is intended to be affected by the pending suit is Joel and Alicia Garcia, aka J & A Garcia Trust, 1905 Nancy Lopez Blvd, Rio Communities, NM 87002.

Further the above named Defendants are hereby notified that they have until thirty (30) days from date of completion of this Notice in which to file an answer or other pleading responsive to the Complaint and should said Defendants choose not to file an answer or other responsive pleading to the Complaint on or before thirty (30) days from date of completion of publication of this Notice, judgement or other appropriate relief may be rendered against the above named Defendants.

Witness My hand this 25th day of January 2019.

Stephen and Roberta Guajardo
P. O. Box 602
Belen, NM 87002
PH 757 913 0933
Fax 757 216 9281

STATE OF NEW MEXICO/COUNTY OF VALENCIA

_____A Notary Public in and for the county aforesaid, in the state of New Mexico, do certify that Roberta Guajardo whose signature appears above, dated the 25th day of January 2019, has acknowledged the same before me in the county of the County of this 25th day of January 2019.

My Commission expires on the 31st day of March, 2009.

Notary Public

The name of the person who estate is intended to be affected by the pending suit is Joel and Alicia Garcia, aka J & A Garcia Trust, 1905 Nancy Lopez Blvd, Rio Communities, NM 87002.

Further the above named Defendants are hereby notified that they have until thirty (30) days from date of completion of this Notice in which to file an answer or other pleading responsive to the Complaint and should said Defendants choose not to file an answer or other responsive pleading to the Complaint on or before thirty (30) days from date of completion of publication of this Notice, judgement or other appropriate relief may be rendered against the above named Defendants.

Witness My Hand this 25th day of January 2019.

Stephen and Roberta Guajardo
P. O. Box 602
Belen, NM 87002
PH 757 913 0933
Fax 757 216 9281

STATE OF NEW MEXICO/COUNTY OF VALENCIA

_____A Notary Public in and for the county aforesaid, in the state of New Mexico, do certify that Roberta Guajardo whose signature appears above, dated the 25th day of January 2019, has acknowledged the same before me in the county of the County of this 25th day of January 2019.

My Commission expires on the 31st day of March, 2009.   09/12/21

Notary Public

OFFICIAL SEAL
**Alexia Burkhard**
NOTARY PUBLIC
STATE OF NEW MEXICO
My Commission Expires: 09/12/21

I, Phillip Romero, Clerk of the District Court of Valencia County, New Mexico, hereby certify that the foregoing is true, correct, and full copy of the instrument herewith set out as appears of record in my office.
Dated this _____ day of _____ L 2019
PHILLIP ROMERO
Phillip Romero, Clerk of the District Court
By _____
Deputy

STATE OF NEW MEXICO
COUNTY OF VALENCIA
THIRTEEN JUDICIAL DISTRICT

FILED ENDORSED
DISTRICT COURT CLERK

2018 DEC 20 PM 1: 39

PHILLIP ROMERO

BY_____DEPUTY

STEPHEN AND ROBERTA GUAJARDO

      Plaintiff,

**D1314 CV 2018 1550**
No._____

Vs.

ALICIA I. GARCIA

      Defendants

## **COMPLAINT FOR DECLATORY JUDGMENT, PRELIMINARY AND PERMANENT INJUNCTION AND BREECH OF CONTRACT, DEFAMATION ,SLANDER AND EMERGENCY STAY OF EVICTION PENDING HEARING**

COMES NOW, Stephen and Roberta Guajardo by Pro-Se Litigants and states the following for its Complaint for Declaratory Judgment and Preliminary and Permanent Injunction:

### **PARTIES, JURISDICTION AND VENUE**

1. Plaintiff Stephen and Roberta Guajardo, is a Rio Community resident.

2. Defendant Alicia I. Garcia is a Rio Communities resident.

3. This Court has jurisdiction over the matter pursuant to NMSA 1978. 44-6-2 (Declaratory Judgment Act).

4. Venue is proper in this court.

### **GENERAL ALLEGATIONS**

1. Defendant Alicia I. Garcia purchased property at 2017 Embarcadero Court Rio Communities, NM 87002 on 12/1/2014 for her step daughter Roberta Guajardo as she explained to friends and relatives as she showed the home.



EXHIBIT
F

2. Alicia I. Garcia did not have enough money to purchase the home for the asking price of $161,000 and therefore contributed $111,000 towards the purchase of the home and the remaining balance was provided by Stephen and Roberta Guajardo.

3. Alicia I. Garcia failed to add Stephen and Roberta Guajardo as a Joint Venture or Joint Tenant, in fact Alicia I. Garcia allowed the Guajardos to pay towards the house that was intended for them however, took the money and closed and assumed all ownership. Basically stealing $50,000 from the Guajardo family.

4. The downpayment from Stephen and Roberta Guajardo was made payayble to Stewart Title for purchase of 2017 Embarcadero Court Rio Communities, NM 87002 and was not given as a gift.

5. On 12/2/2014 after receiving a copy of the closing papers Roberta Guajardo immediately faxed Alicia Garcia a Real Estate Contract to obtain some form of proof of ownership.

6. Alicia I. Garcia agreed to 59 payments of $1429.30 at 6% interest and 1 balloon on 2/1/2020 for $50,000.

7. Payments have remained steady until July 1, 2018 when Alicia Garcia after years of working along with Alicia Garcia and Joel Garcia on their trust and will and all parties agreeing not to put the real estate in question into the trust, Alicia Garcia out of retaliation put the home in trust which causes legal problems for Stephen and Roberta Guajardo.

8. The Guajardo family was advised by 2 licensed social workers that had several years of knowledge about Alicia Garcia's husband and Roberta Guajardos fathers health and welfare. These Social Workers encouraged the Guajardos to file for guardianship of Joel Garcia. Therefore the Guajardo family filed for guardianship and therefore, now Alicia Garcia (stepmother) and her family have waged war on the Guajardos to include isolating her father (only child) from Roberta and trying to kick her out of her house in retaliating for following the social workers recommendations.

9. Alicia Garcia refuses to allow payments to be made and is using bullying tacktics of "either pay $89000, which is the incorrect amount and has been disputed or vacate by midnight on December 20, 2018).

10. Alicia Garcia has made it impossible for Stephen and Roberta Guajardo to obtain a private mortgage because Alicia Garcia never recorded the Real Estate Contract, as required in the conract.

11. Alicia Garcia breached the Real Estate Contract when she reassigned the title without proper notice and without consent from all parties.

12. Alicia Garcia called daily for several years asking for Stephen and Roberta Guajardo to relocate their whole life to move to New Mexico to be closer to Joel Garcia.

13. Alicia Garcia picked the home on 2017 Embarcadero Court Rio Communities NM 87002, the Guajardo family did not have a choice of homes.

14. Alicia Garcia has made living in the home at 2017 Embarcadero Ct, Rio Communities torture by contacting all the neighbors and stating to them that "Roberta Stole her father" and referring to the Guajardos as "the enemy".

15. Alicia Garcia has not paid for several items and care that she promised.
a. Adjustable beds (2) (Alicia has destroyed them and put them out in the weeds)
b. Wheelchair
c. Port a potty
d. Clothes
e. Dishwasher
f. Refrigerator
g. Exercise bike
h. Supplies and labor pulling out carpet (that had urine on it) and pulling up tile that was installed incorrectly by an independent contractor.
i. Chihuahua, we agreed that if she could not take care of her she would be returned to us.
j. Sheets for bed

k. Gas to and from Dr. Appointments
l. Groceries for 3 years (3 meals a day for 30 days x 3 years) (Alicia would only give me $100 if that
m. $250 cash loan at Isleta Casino
n. Damage to vehicle I bought from her, has body damage, it has a bad radiator and needed a new battery
o. Alicia Garcia promised me land in Carrizozo NM
p. Alicia Garcia promised me jewelry
q. Daily care for 3 years for Alicia Garcia
r. Damages for having us move to New Mexico to be closer to father then isolating him from me
s. Damages for slandering and defaming us
t. Damages for us losing our home and investment properties due to the move to New Mexico
u. Alicia Garcia has moved my father 60 miles from us (we live 5 houses down from their house now)
v. Alicia Garcia has made criminal false allegations to the Los Lunas Sheriffs department that "she feared that I was trying to kill my dad"
w. Alicia Garcia made criminal false allegations to the Adult Protective Services that I abused her

16.     The Guajardos only owe 13 more payments of $1429.30 and 1 final payment of $50,000. Alicia Garcia is trying to strong arm the Guajardos and comes to court with unclean hands, trying to evict them from their home when it is almost paid off.
17.     Alicia Garcia is trying to take advantage of the Guajardo family by trying to evict and sell their home months before payoff for an unjust reward.

## COUNT 1-DECLATORY JUDGMENT

1. Alicia Garcia has made several criminal allegations against the Guajardos due to revenge which has caused slander and defamation.

2. Alicia Garcia has conspired to try to steal the property at 2017 Embarcadero Ct, Rio Communities, NM 87002 by not adding the Guajardos as a joint venture at the time of purchase and by not recording the deed and now trying to cancel a contract that she never perfected by not recording it as required by law.

3. The Guajardos pray for a declaratory judgment that Alicia Garcia has committed fraud on the court, defamation, slander and attempted to

keep The Guajardos from their father and try to illegally evict them from their home and cancel a contract that was never perfected.

## COUNT II-INJUCTIVE RELIEF

1. We ask the court to have Alicia Garcia rescind her eviction and cancellation of the Real Estate Contract.

2. We ask for restitution, damages , monies owned on all counts and court costs.

3. We ask that Alicia Garcia have a new contract written from the trust to the Guajardos and the Instrument be filed in court

4. We ask that Alicia Garcia files this new contract with an escrow agent so there is no involvement between the Guajardo family and Alicia Garcia.

5. Alicia Garcia has provided false information to the court and many official offices and has committed contempt in almost all orders in relationship to a separate guardianship case with no accountability from the court.

6. We ask the court to court order Alicia Garcia to stop defaming and slandering the Guajardos in the neighborhood that they live.

7. We ask the court to place a stay of eviction until we can be heard in a hearing before the court.

## STAY OF EVICTION

We ask the court for a Stay of Eviction until the merits of the case can be brought before a hearing.  Roberta Guajardo is battling stage 4 cancer and her grandchildren age 1 and age 8 currently live with her and therefore an eviction without a hearing on the merits would cause irreparable damage.

In fact the thought that a great grandmother would throw out her 2 year and 8 year old great grandchildren before Christmas is heartless and evil.

## PRAYER FOR RELIEF

The Guajardo family prays for the judgments described herein, for its costs, and for such other relief as the Court deems just and proper.

Respectfully submitted,

Stephen and Roberta Guajardo, Pro se

Certified copy by email to:

Alicia Garcia
Eric Sommer, attorney

STATE OF NEW MEXICO
COUNTY OF VALENCIA
THIRTEEN JUDICIAL DISTRICT COURT

STEPHEN AND ROBERTA GUAJARDO,

       Plaintiff,

v.

                                 NO. D-1314-CV-2018-1550

ALICIA I. GARCIA,

       Defendant,

## Amended Notice of Lis Pendens

Roberta Guajardo, pro se plaintiff in the action described above, hereby amends the "Memorandum of Lis Pendens", dated January 25, 2019 she signed and recorded in the records of the County Clerk's Office for the County of Valencia on February 1, 2019, as Doc. No. 201901186 (the "Memorandum") as follows:

1.    The Memorandum is amended to hereby release from the effect thereof, the lis pendens described in the Memorandum, upon the real property known as 1905 Nancy Lopez Blvd, Rio Communities, NM, 87002, and having the following legal description:

*Lot numbered Seventeen (17), Block numbered One (1) of Country Club Estates, a subdivision in Valencia County New Mexico, as the same is shown and so designated as the Replat of a portion of Playa Verde, Unit Two, a subdivision in the Tome Grant, Valencia County, New Mexico, on the 5th day of February, 1982, in Plat Cabinet "D", Page 22.*

2.    The Memorandum is hereby further amended to reflect that notice is hereby given that the above –named plaintiffs have filed in the District Court in and for the County of Valencia an action against the above-named defendant, the object of which, among other things, is to set aside a deed to the real property to Joel and Alicia Garcia, then conveyed to the J & A Garcia Trust dated June 5, 2018 and recorded in the records of the County Clerk's Office for the County of Valencia on June 28, 2018 as Doc. No. 201886729. The subject real property is described in the aforementioned deed is 1700 Embarcadero Court, Rio Communities, NM, 87002, having the following legal description:



EXHIBIT
F

15651-001

*Lot numbered Five (5), as such lot is shown and so designated on the plat of Embarcadero, a Replat of Tract B, Country Club Estates, a subdivision in Valencia County, New Mexico, filed in the Office of the Valencia County, New Mexico, on June 30, 1987, in Plat Cabinet "E", Page 173.*

3.　　The action is now pending and the outcome is undetermined.


By: _____
　　　Roberta Guajardo




**Acknowledgement**

STATE OF NEW MEXICO　　　)
　　　　　　　　　　　　　　　) ss.
COUNTY OF VALENCIA　　　　)

　　　On this ___ day of March 2019, Roberta Guajardo, personally appeared before me and acknowledged the foregoing instrument.



　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　NOTARY PUBLIC

　　　　　　　　　　　　　　My Commission Expires: _____

# HURLEY, TOEVS, STYLES, HAMBLIN & PANTER, PA

ATTORNEYS

THOMAS F. BLUEHER
LALITA A. DEVARAKONDA
VINCENT M. HASLAM
GREGORY W. MACKENZIE
DANIELLE R. PANTER
MARK STYLES
THOMAS H. TOEVS

RANDOLPH L. HAMBLIN (RETIRED)
PATRICK W. HURLEY (RETIRED)

Mailing Address:
PO Box 31670
Albuquerque, NM 87190

Physical Address:
4155 Montgomery Blvd., NE
Albuquerque, NM 87109

(505) 888-1188 Main
(505) 888-9216 Fax

August 30, 2018

**VIA U.S. MAIL AND E-MAIL**

Stephen D. and Roberta Garcia-Guajardo
Post Office Box 602
Belen, NM 87002
robertagarcia757@gmail.com

## NOTICE OF DEFAULT
## TO ROBERTA L. GARCIA-GUAJARDO AND STEPHEN D. GUAJARDO
## UNDER CONTRACT FOR DEED/PURCHASE AGREEMENT

YOU ARE NOTIFIED:

You are in default under that certain *Contract for Deed/Purchase Agreement* ("Contract") dated December 2, 2014, in which Joel Garcia and Alicia Garcia, a married couple, as Sellers, entered into a contract for deed with you, as Buyers, regarding residential property located in Belen, Valencia County, New Mexico, 87002 described as follows:

Lot numbered five (5) of tract B as shown on the plat of County Club Estates, a replat of a portion of Playa Verde, Unit 2, and subdivision of a portion of the Tome Grant, Valencia County, New Mexico filed of record February 5, 1982, and recorded in cabinet D, Page 22, in the office of the County Clerk of Valencia County, New Mexico, and now known as Embarcadero, a replat of tract B, Country Club Estates, as such replat is filed in BK. E, PG 173

The default is as follows:



EXHIBIT
G

Case 19-01040-t    Doc 1-1    Filed 03/25/19    Entered 03/25/19 17:46:50    Page 66 of 72

# HURLEY, TOEVS, STYLES, HAMBLIN & PANTER, PA
## ATTORNEYS

Non-payment of the installment for the contract for deed payments of $1,429.30 per month for the payments due on July 1, 2018, and August 1, 2018, plus all late fees as provided by the contract in the total amount of $50.00.

You are hereby notified that you have 30 days to cure the default. If you do not remedy the default within 30 days after your receipt of this notice, Sellers reserve all rights as provided under the above-stated Contract.

Under the Contract, because you have failed to timely pay the stated installment payments and late fees, Sellers have hired legal counsel. Under the Contract, you are responsible for paying Sellers' legal fees in pursuing the collection of your monthly payment. The amount due as a result is $225.00. The name, mailing address, street address or location and telephone number of the attorneys authorized by the Seller to accept payments pursuant to this notice are:

> HURLEY TOEVS STYLES HAMBLIN
> & PANTER PA
> Gregory W. MacKenzie, Esq.
> Lalita Devarakonda, Esq.
> PO Box 31670
> Albuquerque, NM 87190-3167
> (505) 888-1188

STREET ADDRESS
200 WEST MARCY STREET
SUITE 129
SANTA FE, NM 87501

MAILING ADDRESS
POST OFFICE BOX 1984
SANTA FE, NM 87504-1984

t  505.982.4676
f  505.988.7029

www.SommerUdall.com

Sommer, Udall, Hardwick & Jones, P.A.

SOMMER | UDALL | LAW FIRM

Eric M. Sommer
Jack N. Hardwick
Cullen Hallmark
Kurt A. Sommer

Lisa G. Adelman
Mark Kriendler Nelson
Jeremy R. Jones
Jacqueline Berg

Patrick D. Barry
Joseph P. Walsh
Estevan R. Sanchez

*Of Counsel to the Law Firm*
Kenneth Bateman
Robert P. Worcester
Janet McL. McKay

Joseph A. Sommer
(1922 – 2006)
Kimball R. Udall
Retired

November 19, 2018

## *Via: Delivery by Federal Express (hand-delivery)*

## *By: email: robertagarcia757@gmail.com*

Stephen D. Guajardo & Roberta Garcia-Guajardo
2017 Embarcadero Court
Belen, NM 87002

> Re:    Contract for Deed/Purchase Agreement dated December 2, 2014 ("Contract")

Dear Mr. Guajardo & Mrs. Garcia-Guajardo:

We represent Alicia I. Garcia. This letter concerns the Contract referenced above.

This letter and all subsequent communication from us are attempts to collect the debt described herein, and any information obtained from you as a result of your communications with us will be used for that purpose.

As you know, the J A Garcia Trust ("the Trust") now holds all right, title and interest in the property located at 2017 Embarcadero Court ("the property") by virtue of an Assignment of the Contract and Warranty Deed from Joel M. Garcia and Alicia I. Garcia, the Sellers under the Contract.

You have failed to cure the default specified in the notice of default dated August 30, 2018, that was previously given to you ("the notice").

In addition, you did not comply with the Court's order in Cause No. D-1314-PQ-2018-00058, which required you to "pay the monthly payments due on the Contract…including all outstanding monthly payments that are due". In addition, you have not provided any proof or documentation establishing that you made any

15651-001


EXHIBIT
H



monthly payments since June 2018 as you represented to the Court in the pending conservatorship proceeding.

Given the above, Alicia Garcia, as Trustee, hereby declares the remaining unpaid principal balance, all accrued interest, late fees, and legal fees immediately due and payable. The current balance due is $86,577.66 which includes $83,593.56 in unpaid principal, $2,334.10 is accrued interest from June 2, 2018 through November 18, 2018, $150.00 is for 6 months of late fees ($25 per month), and $500.00 for legal fees in preparing this letter and the prior notice. Interest is accruing at a 6% per annum, or $13.73 per day. . Attached is a spreadsheet reflecting how the balance was established, giving you due credit for the payments that have been made.

Further, as provided in the contract, Mrs. Garcia, as Trustee, hereby cancels it. Consequently, the Contract is terminated. Pursuant to the provision that gives the Trust the option to "reclaim" the property, the Trust requests that you vacate the home and deliver possession of the property to Mrs. Garcia, as Trustee. Since the contract does not specify a time, we request that you vacate the home by 11:59 p.m. on December 20, 2018.

If you pay the unpaid balance, namely $86,577.66 by December 20, 2018, the Trust will convey the property as contemplated by the Contract. Otherwise, if you fail to vacate the property, you will give us no choice but to file an appropriate action in Court to enforce the Trust's rights, including, recovery of reasonable attorney's fees and costs.

If the Internal Revenue Service has perfected a lien for your unpaid federal taxes and a lien as attached to the property, any legal action will require it being made as a party to the litigation to ensure that the title to the property is free of encumbrances.

If there are no liens on the property that have to be cleared, and if you vacate the property so that it can be sold, the Trust would consider agreeing to pay you some sum of money upon the sale of the home. This would be dependent on you leaving the home in a marketable condition without damage, and leaving the home in a reasonably clean condition. If that interests you, please send Mrs. Garcia an email by December 1, 2018 to AliciaJoelGarcia@gmail.com. The condition upon which this option is available is that a written agreement is reached by the Trust and you no later than December 15, 2018. If an agreement is not reached by December 15, 2018, we will expect you to vacate the property by mid-night on December 20, 2018.

15651-001

Case 19-01040-t   Doc 1-1   Filed 03/25/19   Entered 03/25/19 17:46:50 Page 69 of 72



Finally, if you do not dispute either the entire debt or a portion of the debt within thirty (30) days after you received this letter, we will assume the entire debt is valid. If you tell us within writing that you may dispute any or all of this debt, we will mail you a written verification. If you ask us within thirty (30) days, we will give you the name and address of the original creditor(s) if different from the names listed in this letter. If you dispute any portion of this debt, it does not extend your deadline to comply with the demand made in this letter. You may have been contacted previously regarding collection of this debt. This letter attempts to collect the same debt. Any information received will be used for that purpose.

This letter is in addition to, but not in lieu of, any prior demands sent to you in connection with this matter. Satisfaction of one demand letter does not excuse a failure to satisfy another demand letter. Any payment you make will be credited first to the amount required in the earliest demand letter, with any surplus credited to the amount required in any subsequent demand letter. Unless the entire amount required in each demand letter is paid within the time stated in that letter, Mrs. Garcia may exercise the remedies stated in said letter.

Thank you.

Very truly yours,

Eric. M. Sommer

cc: Alicia Garcia

15651-001

# Loan Amortization Schedule for Roberta and Stephen Guajardo

| | | | | | Balance due by 12/20/18 | |
|---|---|---|---|---|---|---|
| Loan amount $161K less $40K Down | | LOAN SUMMARY | | | Ending loan balance > 6/1/18 pmt | $83,593.56 |
| Loan amount | | $121,000.00 | Scheduled payment | $1,429.30 | Late fees $25 for 6 late payments | $ 150.00 |
| Annual interest rate | | 6.00% | Scheduled number of payments | 60 | Legal fees per contract | $ 500.00 |
| Loan period in years | | 5 | Actual number of payments | .61 | Interest (7/1/18 through 12/20/18) | $2,334.10 |
| Number of payments per year | | 12 | Total early payments | $0.00 | | $ 86,577.66 |
| Start date of loan | | 2/1/2015 | Total interest | $28,246.56 | | |

| PMT NO | PAYMENT DATE | BEGINNING BALANCE | SCHEDULED PAYMENT | TOTAL PAYMENT | PRINCIPAL | INTEREST | ENDING BALANCE | CUMULATIVE INTEREST |
|---|---|---|---|---|---|---|---|---|
| 1 | 2/1/2015 | $121,000.00 | $1,429.30 | $1,429.30 | $824.30 | $605.00 | $120,175.70 | $605.00 |
| 2 | 3/1/2015 | $120,175.70 | $1,429.30 | $1,429.30 | $828.42 | $600.88 | $119,347.28 | $1,205.88 |
| 3 | 4/1/2015 | $119,347.28 | $1,429.30 | $1,429.30 | $832.56 | $596.74 | $118,514.71 | $1,802.61 |
| 4 | 5/1/2015 | $118,514.71 | $1,429.30 | $1,429.30 | $836.73 | $592.57 | $117,677.99 | $2,395.19 |
| 5 | 6/1/2015 | $117,677.99 | $1,429.30 | $1,429.30 | $840.91 | $588.39 | $116,837.08 | $2,983.58 |
| 6 | 7/1/2015 | $116,837.08 | $1,429.30 | $1,429.30 | $845.11 | $584.19 | $115,991.96 | $3,567.76 |
| 7 | 8/1/2015 | $115,991.96 | $1,429.30 | $1,429.30 | $849.34 | $579.96 | $115,142.62 | $4,147.72 |
| 8 | 9/1/2015 | $115,142.62 | $1,429.30 | $1,429.30 | $853.59 | $575.71 | $114,289.04 | $4,723.44 |
| 9 | 10/1/2015 | $114,289.04 | $1,429.30 | $1,429.30 | $857.85 | $571.45 | $113,431.18 | $5,294.88 |
| 10 | 11/1/2015 | $113,431.18 | $1,429.30 | $1,429.30 | $862.14 | $567.16 | $112,569.04 | $5,862.04 |
| 11 | 12/1/2015 | $112,569.04 | $1,429.30 | $1,429.30 | $866.45 | $562.85 | $111,702.58 | $6,424.88 |
| 12 | 1/1/2016 | $111,702.58 | $1,429.30 | $1,429.30 | $870.79 | $558.51 | $110,831.80 | $6,983.40 |
| 13 | 2/1/2016 | $110,831.80 | $1,429.30 | $1,429.30 | $875.14 | $554.16 | $109,956.65 | $7,537.55 |
| 14 | 3/1/2016 | $109,956.65 | $1,429.30 | $1,429.30 | $879.52 | $549.78 | $109,077.14 | $8,087.34 |
| 15 | 4/1/2016 | $109,077.14 | $1,429.30 | $1,429.30 | $883.91 | $545.39 | $108,193.22 | $8,632.72 |
| 16 | 5/1/2016 | $108,193.22 | $1,429.30 | $1,429.30 | $888.33 | $540.97 | $107,304.89 | $9,173.69 |
| 17 | 6/1/2016 | $107,304.89 | $1,429.30 | $1,429.30 | $892.78 | $536.52 | $106,412.11 | $9,710.21 |
| 18 | 7/1/2016 | $106,412.11 | $1,429.30 | $1,429.30 | $897.24 | $532.06 | $105,514.88 | $10,242.28 |
| 19 | 8/1/2016 | $105,514.88 | $1,429.30 | $1,429.30 | $901.73 | $527.57 | $104,613.15 | $10,769.85 |
| 20 | 9/1/2016 | $104,613.15 | $1,429.30 | $1,429.30 | $906.23 | $523.07 | $103,706.92 | $11,292.92 |
| 21 | 10/1/2016 | $103,706.92 | $1,429.30 | $1,429.30 | $910.77 | $518.53 | $102,796.15 | $11,811.45 |
| 22 | 11/1/2016 | $102,796.15 | $1,429.30 | $1,429.30 | $915.32 | $513.98 | $101,880.83 | $12,325.43 |
| 23 | 12/1/2016 | $101,880.83 | $1,429.30 | $1,429.30 | $919.90 | $509.40 | $100,960.93 | $12,834.83 |
| 24 | 1/1/2017 | $100,960.93 | $1,429.30 | $1,429.30 | $924.50 | $504.80 | $100,036.44 | $13,339.64 |
| 25 | 2/1/2017 | $100,036.44 | $1,429.30 | $1,429.30 | $929.12 | $500.18 | $99,107.32 | $13,839.82 |
| 26 | 3/1/2017 | $99,107.32 | $1,429.30 | $1,429.30 | $933.76 | $495.54 | $98,173.56 | $14,335.36 |
| 27 | 4/1/2017 | $98,173.56 | $1,429.30 | $1,429.30 | $938.43 | $490.87 | $97,235.13 | $14,826.23 |
| 28 | 5/1/2017 | $97,235.13 | $1,429.30 | $1,429.30 | $943.12 | $486.18 | $96,292.00 | $15,312.40 |
| 29 | 6/1/2017 | $96,292.00 | $1,429.30 | $1,429.30 | $947.84 | $481.46 | $95,344.16 | $15,793.86 |
| 30 | 7/1/2017 | $95,344.16 | $1,429.30 | $1,429.30 | $952.58 | $476.72 | $94,391.58 | $16,270.58 |
| 31 | 8/1/2017 | $94,391.58 | $1,429.30 | $1,429.30 | $957.34 | $471.96 | $93,434.24 | $16,742.54 |
| 32 | 9/1/2017 | $93,434.24 | $1,429.30 | $1,429.30 | $962.13 | $467.17 | $92,472.11 | $17,209.71 |
| 33 | 10/1/2017 | $92,472.11 | $1,429.30 | $1,429.30 | $966.94 | $462.36 | $91,505.17 | $17,672.07 |
| 34 | 11/1/2017 | $91,505.17 | $1,429.30 | $1,429.30 | $971.77 | $457.53 | $90,533.40 | $18,129.60 |

| PMT NO | PAYMENT DATE | BEGINNING BALANCE | SCHEDULED PAYMENT | TOTAL PAYMENT | PRINCIPAL | INTEREST | | ENDING BALANCE | CUMULATIVE INTEREST |
|---|---|---|---|---|---|---|---|---|---|
| 35 | 12/1/2017 | $90,533.40 | $1,429.30 | $1,429.30 | $976.63 | $452.67 | | $89,556.76 | $18,582.26 |
| 36 | 1/1/2018 | $89,556.76 | $1,429.30 | $1,429.30 | $981.52 | $447.78 | | $88,575.25 | $19,030.05 |
| 37 | 2/1/2018 | $88,575.25 | $1,429.30 | $1,429.30 | $986.42 | $442.88 | | $87,588.82 | $19,472.92 |
| 38 | 3/1/2018 | $87,588.82 | $1,429.30 | $1,429.30 | $991.36 | $437.94 | | $86,597.47 | $19,910.87 |
| 39 | 4/1/2018 | $86,597.47 | $1,429.30 | $1,429.30 | $996.31 | $432.99 | | $85,601.16 | $20,343.86 |
| 40 | 5/1/2018 | $85,601.16 | $1,429.30 | $1,429.30 | $1,001.29 | $428.01 | | $84,599.86 | $20,771.86 |
| 41 | 6/1/2018 | $84,599.86 | $1,429.30 | $1,429.30 | $1,006.30 | $423.00 | loan balance | $83,593.56 | $21,194.86 |
| 42 | 7/1/2018 | $83,593.56 | $1,429.30 | $1,429.30 | $1,011.33 | $417.97 | interest | $82,582.23 | $21,612.83 |
| 43 | 8/1/2018 | $82,582.23 | $1,429.30 | $1,429.30 | $1,016.39 | $412.91 | interest | $81,565.84 | $22,025.74 |
| 44 | 9/1/2018 | $81,565.84 | $1,429.30 | $1,429.30 | $1,021.47 | $407.83 | interest | $80,544.37 | $22,433.57 |
| 45 | 10/1/2018 | $80,544.37 | $1,429.30 | $1,429.30 | $1,026.58 | $402.72 | interest | $79,517.79 | $22,836.29 |
| 46 | 11/1/2018 | $79,517.79 | $1,429.30 | $1,429.30 | $1,031.71 | $397.59 | | $78,486.08 | $23,233.88 |
| 47 | 12/1/2018 | $78,486.08 | $1,429.30 | $1,429.30 | $1,036.87 | $392.43 | thru 20th = $262.92 | $77,449.21 | $23,626.31 |
| 48 | 1/1/2019 | $77,449.21 | $1,429.30 | $1,429.30 | $1,042.05 | $387.25 | | $76,407.16 | $24,013.56 |
| 49 | 2/1/2019 | $76,407.16 | $1,429.30 | $1,429.30 | $1,047.26 | $382.04 | | $75,359.89 | $24,395.59 |
| 50 | 3/1/2019 | $75,359.89 | $1,429.30 | $1,429.30 | $1,052.50 | $376.80 | | $74,307.39 | $24,772.39 |
| 51 | 4/1/2019 | $74,307.39 | $1,429.30 | $1,429.30 | $1,057.76 | $371.54 | | $73,249.63 | $25,143.93 |
| 52 | 5/1/2019 | $73,249.63 | $1,429.30 | $1,429.30 | $1,063.05 | $366.25 | | $72,186.58 | $25,510.18 |
| 53 | 6/1/2019 | $72,186.58 | $1,429.30 | $1,429.30 | $1,068.37 | $360.93 | | $71,118.21 | $25,871.11 |
| 54 | 7/1/2019 | $71,118.21 | $1,429.30 | $1,429.30 | $1,073.71 | $355.59 | | $70,044.50 | $26,226.70 |
| 55 | 8/1/2019 | $70,044.50 | $1,429.30 | $1,429.30 | $1,079.08 | $350.22 | | $68,965.42 | $26,576.92 |
| 56 | 9/1/2019 | $68,965.42 | $1,429.30 | $1,429.30 | $1,084.47 | $344.83 | | $67,880.95 | $26,921.75 |
| 57 | 10/1/2019 | $67,880.95 | $1,429.30 | $1,429.30 | $1,089.90 | $339.40 | | $66,791.06 | $27,261.16 |
| 58 | 11/1/2019 | $66,791.06 | $1,429.30 | $1,429.30 | $1,095.34 | $333.96 | | $65,695.71 | $27,595.11 |
| 59 | 12/1/2019 | $65,695.71 | $1,429.30 | $1,429.30 | $1,100.82 | $328.48 | | $64,594.89 | $27,923.59 |
| 60 | 1/1/2020 | $64,594.89 | $1,429.30 | $1,429.30 | $1,106.33 | $322.97 | | $63,488.56 | $28,246.56 |